SHORT RECORD
NO. 24-8013
FILED 04/08/2024

No.

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

T-MOBILE US, INC.,

*Petitioner,*

v.

ANTHONY DALE, BRETT JACKSON, JOHNNA FOX,
BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT
ANDERSON, and CHAD HOHENBERY on behalf of themselves
and all others similarly situated,

*Respondents.*

---

On Petition To Appeal From The United States District Court
For The Northern District Of Illinois
Case No. 22-cv-3189 | The Honorable Thomas M. Durkin

---

## PETITION FOR PERMISSION TO APPEAL
## UNDER 28 U.S.C. § 1292(B)

---

Josh Krevitt
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

Theodore J. Boutrous Jr.
Daniel G. Swanson
Rodney J. Stone
Daniel R. Adler
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000
tboutrous@gibsondunn.com

*Counsel for Petitioner T-Mobile US, Inc.*
(additional counsel listed on inside cover)

Clifford C. Histed
Michael E. Martinez
K&L GATES LLP
70 West Madison Street
Suite 3300
Chicago, IL  60602
(312) 807-4448

Rachel S. Brass
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
Suite 2600
San Francisco, CA  94111
(415) 393-8200

Amir C. Tayrani
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 887-3692

# CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, I disclose:

- T-Mobile US, Inc. (NASDAQ: TMUS), a corporation organized under the laws of Delaware, is a publicly traded company listed on the NASDAQ Global Select Market of NASDAQ Stock Market LLC. Deutsche Telekom Holding B.V., a limited liability company (besloten vennootschap met beperkte aansprakelijkheidraies) organized and existing under the laws of the Netherlands ("DT B.V."), owns more than 10% of the shares of T-Mobile US, Inc. DT B.V. is a direct, wholly owned subsidiary of T-Mobile Global Holding GmbH, a Gesellschaft mit beschränkter Haftung organized and existing under the laws of the Federal Republic of Germany ("Holding"). Holding, is in turn a direct, wholly owned subsidiary of T-Mobile Global Zwischenholding GmbH, a Gesellschaft mit beschränkter Haftung organized and existing under the laws of the Federal Republic of Germany ("Global"). Global is a direct, wholly owned subsidiary of Deutsche Telekom AG, an Aktiengesellschaft

organized and existing under the laws of the Federal Republic of Germany ("Deutsche Telekom"). The principal trading market for Deutsche Telekom's ordinary shares is the trading platform "Xetra" of Deutsche Börse AG. Deutsche Telekom's ordinary shares also trade on the Frankfurt, Berlin, Düsseldorf, Hamburg, Hannover, München, and Stuttgart stock exchanges in Germany. Deutsche Telekom's American Depositary Shares, each representing one ordinary share, trade on the OTC market's highest tier, OTCQX International Premier (ticker symbol: DTEGY).

- T-Mobile is represented in the district court by Gibson, Dunn & Crutcher LLP and K&L Gates LLP. Both firms will represent T-Mobile in this Court.

Dated: April 8, 2024      Respectfully submitted,

           */s/ Theodore J. Boutrous Jr.*
            Theodore J. Boutrous Jr.

*Counsel for Petitioner*
*T-Mobile US, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................ 1

JURISDICTION ................................................................. 6

QUESTION PRESENTED .................................................. 6

STATEMENT ..................................................................... 6

    I.     T-Mobile Merges With Sprint After Approval By The
DOJ, The FCC, And Two Federal District Courts ................. 6

    II.    AT&T And Verizon Allegedly Increase Their Prices,
And Their Customers Sue T-Mobile For Its
Competitors' Price Increases .................................................. 8

REASONS FOR GRANTING THE PETITION ..................... 10

    I.     Whether Plaintiffs Have Plausibly Alleged Antitrust
Standing Is A Controlling Question Of Law ......................... 10

    II.    There Is Substantial Ground For Difference Of Opinion
About Whether Plaintiffs Have Plausibly Alleged
Antitrust Standing ................................................................ 13

    III.   An Immediate Appeal Could Materially Advance The
Litigation .............................................................................. 27

CONCLUSION ................................................................... 28

CERTIFICATE OF COMPLIANCE ..................................... 30

CERTIFICATE OF SERVICE .............................................. 31

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) .............................................................. 13

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
19 F.4th 127 (2d Cir. 2021) ..................................................... 18, 19, 28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2008) ................................................................. 4, 22, 24

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council
of Carpenters*,
459 U.S. 519 (1983) ....................................... 4, 11, 12, 14, 15

*Atl. Richfield Co. v. USA Petrol. Co.*,
495 U.S. 328 (1990) .............................................................................. 17

*Austin v. Blue Cross & Blue Shield of Ala.*,
903 F.2d 1385 (11th Cir. 1990) ................................................... 18, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................. 4, 23, 25

*Boone v. Ill. Dep't Corr.*,
71 F.4th 622 (7th Cir. 2023) ............................................................. 12

*In re Cardizem CD Antitrust Litig.*,
332 F.3d 896 (6th Cir. 2003) .............................................................. 11

*Cargill, Inc. v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986) ....................................................................... 17, 26

*City of Pittsburgh v. West Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998) .............................................................. 11

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ...................................................................... 16, 25

Page(s)

*Gunn v. Cont'l Cas. Co.*,
 968 F.3d 802 (7th Cir. 2020).............................................................. 12

*Gypsum Co. v. Ind. Gas Co.*,
 350 F.3d 623 (7th Cir. 2003).................................................3, 9, 21, 22

*Herrera v. Cleveland*,
 8 F.4th 493 (7th Cir. 2021) ................................................................ 12

*Holmes v. SIPC*,
 503 U.S. 258 (1992)............................................................................ 15

*J. Truett Payne Co. v. Chrysler Motors Corp.*,
 451 U.S. 557 (1981)............................................................................ 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 572 U.S. 118 (2014)............................................................................ 16

*Loeb Indus., Inc. v. Sumitomo Corp.*,
 306 F.3d 469 (7th Cir. 2002).............................................................. 22

*McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*,
 937 F.3d 1056 (7th Cir. 2019)............................................................ 12

*Motorola Mobility LLC v. AU Optronics Corp.*,
 775 F.3d 816 (7th Cir. 2015).............................................................. 11

*New York v. Deutsche Telekom AG*,
 439 F. Supp. 3d 179 (S.D.N.Y. 2020)...............................7, 18, 24, 26

*Novell, Inc. v. Microsoft Corp.*,
 505 F.3d 302 (4th Cir. 2007).............................................................. 11

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
 859 F.2d 1007 (1st Cir. 1988) ............................................................ 13

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp.
 PLC*,
 22 F.4th 103 (2d Cir. 2021)...............................................4, 17, 18, 26

# TABLE OF AUTHORITIES

*(continued)*

Page(s)

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs.*,
  86 F.3d 656 (7th Cir. 1996)....................................................................11

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
  902 F.3d 735 (7th Cir. 2018)..................................................................12

*In re Text Messaging Antitrust Litig.*,
  630 F.3d 622 (7th Cir. 2010)...........................................................12, 26

*United States v. Deutsche Telekom AG*,
  2020 WL 1873555 (D.D.C. Apr. 14, 2020).............................................7

*Warren Gen. Hosp. v. Amgen Inc.*,
  643 F.3d 77 (3d Cir. 2011) ...................................................................13

*White v. Nix*,
  43 F.3d 374 (8th Cir. 1994)...................................................................28

**Statutes**

28 U.S.C. § 1292(b) ....................................................................................6

## INTRODUCTION

The federal antitrust laws strictly limit who may bring damages claims: only those injured directly by anticompetitive behavior. Courts have long relied on that proximate-cause limitation to prevent infinitely elastic theories of antitrust liability from unleashing costly and unwarranted discovery. The district court broke with that precedent, declining to dismiss this suit in which AT&T and Verizon customers allege that T-Mobile's merger with Sprint caused AT&T and Verizon to increase their prices. Plaintiffs seek treble damages for these supposed overcharges and to unwind the $26 billion merger, which was announced in 2018, reviewed extensively by government agencies and federal courts, and closed four years ago. The court below decided that Plaintiffs had plausibly alleged in their complaint that T-Mobile's merger proximately caused AT&T's and Verizon's claimed price increases and had therefore established antitrust standing.

Until the decision below, no court had ever held that a merger can be challenged by customers of the merged defendant's *competitors,* much less that allegations of the competitors' post-merger pricing decisions are

enough to plead standing. To the contrary, both the Second and Eleventh Circuits have rejected analogous theories, concluding that plaintiffs cannot use the antitrust laws to hold defendants liable for the independent pricing decisions of third parties. The district court acknowledged that "the Second and Eleventh Circuits have taken a different approach," Dkt. 176 ("Certification Order") at 6, and certified its motion-to-dismiss order so that this Court can decide whether customers of AT&T and Verizon have antitrust standing to challenge the T-Mobile-Sprint merger. Because this case satisfies all of the requirements of 28 U.S.C. § 1292(b), this Court should grant review.

The antitrust-standing question is a pure and controlling question of law: If this Court agrees with T-Mobile, that would end the case, eliminating the need for discovery and trial—both certain to be burdensome for the parties, dozens of nonparties, and the judiciary in a case where Plaintiffs are seeking to unwind the combined network and business assets of a long-ago consummated merger and recover billions of dollars in treble damages on behalf of nonparties AT&T's and Verizon's wireless subscribers, who account for the majority of the country's adult

population.

The district court was also correct in deciding that the question whether Plaintiffs have standing to challenge the T-Mobile-Sprint merger is one as to which "there are substantial grounds for a difference of opinion," "plenty of room for debate," and, at the very least, "reasonable minds could differ." Certification Order at 5-7.

As the district court recognized, this Court has yet to squarely address antitrust standing in this setting. In particular, this Court "has never had occasion to consider whether" its "narrow" language about antitrust standing in *Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623 (7th Cir. 2003)—on which the district court relied in denying T-Mobile's motion to dismiss—"has continuing force under the modern pleading standard or when applied outside the cartel context." Certification Order 7-8. This case presents an ideal opportunity for the Court to do so.

The absence of support for Plaintiffs' standing theory is unsurprising, given that the Supreme Court has consistently held that "tenuous and speculative" connections "between the alleged antitrust violation and the [plaintiff's] alleged injury" are insufficient to establish

antitrust standing. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 545 (1983). Plaintiffs must instead show that their injuries resulted "direct[ly]" from the alleged anticompetitive conduct. *Id.* at 541.

Applying that proximate-cause standard, lower courts have consistently rejected—including on the pleadings—attempts to establish antitrust standing based on injuries flowing from third parties' conduct, because "[s]uch independent decisions snap the chain of causation linking [p]laintiffs' injury to the [defendants'] misconduct." *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 116 (2d Cir. 2021).

Plaintiffs' theory of antitrust standing is also impossible to reconcile with the Supreme Court's case law requiring plaintiffs to allege *plausible* (not merely possible) claims to survive a motion to dismiss and "unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007). Plaintiffs allege that they should be permitted to recover from T-Mobile because "AT&T and Verizon have charged higher prices for nationwide

wireless plans" "[a]s a result" of the T-Mobile-Sprint merger, Dkt. 1 ¶ 122—even though that merger was approved after extensive scrutiny by federal and state regulators and two federal district courts and has been subject to years of ongoing court-appointed monitoring, and even though there are many other possible explanations for the alleged price increases, including inflation, the carriers' massive investment in next-generation networks, and greatly increased consumer usage on those new networks. Plaintiffs' theory is entirely speculative, and the district court's ruling permitting those tenuous allegations to survive a motion to dismiss opens the door to challenges in this Circuit to any completed merger based on competitors' causally unconnected post-merger price increases—which, in an inflationary environment such as this, are likely to be common across a range of industries.

Section 1292(b) was designed to ensure the availability of appellate review in just this type of case—one presenting an important legal question that, if decided in the defendant's favor, would end the litigation and stave off enormous discovery burdens. The Court should grant the petition.

## JURISDICTION

This Court has discretion to permit an interlocutory appeal when a district court has certified that an otherwise non-appealable order involves "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). On March 27, 2024, the district court certified its order denying T-Mobile's motion to dismiss under Section 1292(b).

This petition is timely because it is being filed within 10 days of the Certification Order. 28 U.S.C. § 1292(b).

## QUESTION PRESENTED

Do customers of AT&T and Verizon have antitrust standing to challenge the merger of T-Mobile and Sprint?

## STATEMENT

### I. T-Mobile Merges With Sprint After Approval By The DOJ, The FCC, And Two Federal District Courts.

In 2018, wireless carriers T-Mobile and Sprint announced that they intended to merge. Certification Order at 1. To secure regulatory approval, they made a long list of binding commitments, including not

increasing prices for three years after the merger and rolling out 5G service faster and more broadly than either could have done alone. Dkt. 79-3 ¶¶ 5, 26-29, 209.

The FCC decided that the proposed transaction "would serve the public interest." Dkt. 79-3 ¶ 385. The DOJ concluded the merger would "provide substantial long-term benefits for American consumers." Dkt. 79-15 at 2. And a federal court reached the same conclusion, approving an agreement with the DOJ that placed T-Mobile under a seven-year-long monitorship. *United States v. Deutsche Telekom AG*, 2020 WL 1873555, at *5 (D.D.C. Apr. 14, 2020).

Fourteen state attorneys general nevertheless sued to block the merger. Dkt. 79-18. After trial, the district court issued an exhaustive opinion finding that the merger would not substantially lessen competition and would benefit wireless customers. *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179 (S.D.N.Y. 2020). The court specifically rejected the argument that the merger would inevitably result in higher prices and worse service, especially given T-Mobile's "longstanding business strategy" of consumer-friendly pricing and innovation. *Id.* at

245-46.  The state attorneys general agreed not to appeal in exchange for further binding commitments, including a two-year extension of T-Mobile's price freeze.  Dkt. 1 ¶ 102; Dkt. 79-5 ¶ 1.

## II.   AT&T And Verizon Allegedly Increase Their Prices, And Their Customers Sue T-Mobile For Its Competitors' Price Increases.

In 2022, four years after the merger was announced and two years after it closed, AT&T and Verizon customers filed this putative antitrust class action, claiming that the merger reduced competition and caused them to pay more for wireless service because, "as a result" of the merger, AT&T and Verizon decided to increase their prices several years later. Dkt. 1 ¶ 122.  "Plaintiffs seek to unwind the merger, create a new fourth competitor in the market, and recover damages for overcharges they allegedly paid."  Certification Order at 2.

T-Mobile moved to dismiss the complaint, arguing that AT&T and Verizon customers lack antitrust standing to sue T-Mobile.  Dkt. 79 at 10-24.  The district court denied the motion, reasoning that "Plaintiffs allege how the merger reduced competition in the retail mobile wireless market and as a result, market participants AT&T and Verizon charged

higher prices." Dkt. 114 at 25 (emphasis omitted). In so ruling, the district court relied in part on *Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, which the court described as establishing that, "[i]n *a cartel* case, an allegation that a fringe firm customer was injured through the elevation of price in the market where the cartel cut output is sufficient to satisfy antitrust standing." Dkt. 114 at 25 (emphasis added).

Supported by *amicus* briefs from the U.S. Chamber of Commerce and CTIA, T-Mobile moved to certify the ruling under 28 U.S.C. § 1292(b). Dkt. 121. The district court granted the motion, concluding that "there are substantial grounds for a difference of opinion on whether Plaintiffs have plausibly alleged antitrust standing." Certification Order at 5. The court reasoned that *Gypsum*'s "narrow" holding does not "expressly authorize[] Plaintiffs' claims here" and emphasized that this Court "has never had occasion to consider whether *Gypsum*'s brief statement" about antitrust standing "has continuing force under the modern pleading standard or when applied outside the cartel context." *Id.* at 8. The court further acknowledged that "both the Second and Eleventh Circuits held that similarly-situated plaintiffs could not

plausibly allege the requisite direct link" to establish antitrust standing, which "shows that reasonable minds could differ on this issue," and that this Court "may very well join" those courts "and side with T-Mobile," ending the case on the pleadings. *Id.* at 7-8.

## REASONS FOR GRANTING THE PETITION

The district court correctly decided that its motion-to-dismiss ruling meets all of Section 1292(b)'s requirements. The antitrust-standing question is: (1) purely legal and therefore fit for resolution on the pleadings; (2) controlling because if AT&T and Verizon customers lack antitrust standing, Plaintiffs may not proceed with this suit; (3) contestable because, as the district court acknowledged, its ruling is inconsistent with the only appellate decisions to address analogous antitrust-standing theories; and (4) a means of resolving this sprawling case once and for all, sparing the parties, an array of nonparties, and the judiciary from massive litigation burdens that would be wholly unnecessary if Plaintiffs lack antitrust standing.

## I. Whether Plaintiffs Have Plausibly Alleged Antitrust Standing Is A Controlling Question Of Law.

A question is "'controlling' if its resolution is quite likely to affect

the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs.*, 86 F.3d 656, 659 (7th Cir. 1996). The antitrust-standing question here satisfies that standard. To plead antitrust standing, Plaintiffs must plausibly allege that their injuries—the higher prices they are allegedly paying to AT&T and Verizon—were proximately caused by T-Mobile's supposedly anticompetitive conduct in merging with Sprint. *Associated Gen. Contractors*, 459 U.S. at 535-37. If Plaintiffs have failed to plausibly allege a "direct link" between the merger and the higher prices AT&T and Verizon have allegedly decided to charge them, their complaint must be dismissed for lack of antitrust standing. *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 268 (3d Cir. 1998).

For that reason, courts of appeals, including this one, regularly determine that questions of antitrust standing are controlling questions worthy of Section 1292(b) review. *E.g.*, *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 817, 820-21 (7th Cir. 2015); *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 307-08 (4th Cir. 2007); *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 905 (6th Cir. 2003). The district court

reached the same conclusion here, explaining that "Plaintiffs do not contest that the question is controlling." Certification Order at 3.

Plaintiffs did contest, however, whether antitrust standing is a purely legal question, arguing it is a mixed question of law and fact. Dkt. 144 at 9-10. The district court correctly rejected that argument because courts routinely decide questions of antitrust standing as a matter of law at the motion-to-dismiss stage. Certification Order at 3-4 (citing *Associated Gen. Contractors*, 459 U.S. 519; *McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*, 937 F.3d 1056 (7th Cir. 2019)); *see also, e.g.*, *Supreme Auto Transport, LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735 (7th Cir. 2018). And because "[a] Rule 12(b)(6) motion tests 'the legal sufficiency of a complaint,'" *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020), this Court regularly concludes that the question whether a plaintiff has alleged sufficient facts to satisfy an element of a claim is a controlling question of law warranting Section 1292(b) review. *E.g.*, *Boone v. Ill. Dep't Corr.*, 71 F.4th 622, 625-26 (7th Cir. 2023); *Herrera v. Cleveland*, 8 F.4th 493, 495 (7th Cir. 2021); *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 624 (7th Cir. 2010).

In short, "'[t]he issue of antitrust standing is a legal issue,'" *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 83 (3d Cir. 2011), fit for certification under Section 1292(b).

## II. There Is Substantial Ground For Difference Of Opinion About Whether Plaintiffs Have Plausibly Alleged Antitrust Standing.

To be eligible for Section 1292(b) review, a question "must be *contestable*." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). In other words, the proposed appeal must present "'one or more difficult and pivotal questions of law not settled by controlling authority.'" *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1010 n.1 (1st Cir. 1988). The antitrust-standing question here readily meets that standard. Although the question is unsettled in this Circuit, the district court's decision departs from Supreme Court precedent on antitrust standing, proximate causation, and pleading sufficiency and, as the district court acknowledged, directly conflicts with the decisions of multiple courts of appeals.

**A.** Plaintiffs' theory of antitrust standing—that they can sue T-Mobile because AT&T and Verizon supposedly raised their prices "as a

result" of the T-Mobile-Sprint merger, Dkt. 1 ¶ 122—is inconsistent with Supreme Court decisions circumscribing the scope of antitrust standing. The Court has held that antitrust plaintiffs must plead that the defendant engaged in anticompetitive conduct and that the conduct *directly* harmed them. *See Associated Gen. Contractors*, 459 U.S. at 535-37. In other words, antitrust claims are limited by a strict application of proximate causation; only injuries suffered at the "first step" in the causal chain create antitrust standing. *Id.* at 534. Here, as the district court acknowledged, "reasonable minds" could contest its conclusion that the T-Mobile-Sprint merger and the higher prices AT&T and Verizon supposedly decided to charge their subscribers years later all happened in a single indivisible step. Certification Order at 7.

Courts routinely reject similar efforts to stretch proximate causation. For example, in *Associated General Contractors*—the Supreme Court's seminal antitrust-standing decision—the Court held on a motion to dismiss that labor unions lacked antitrust standing to sue an association of building contractors for supposedly coercing landowners into "divert[ing] business from certain union contractors to nonunion

contractors," which, in turn, injured the union.   459 U.S. at 540-41.

Emphasizing that "'Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation,'" *id.* at 534, the Court held that the chain of causation posited by the plaintiffs was too attenuated to support an antitrust claim.  *Id.* at 532-33, 542-45.  Because the "general tendency of the law, in regard to damages at least, is not to go beyond the first step," a plaintiff lacks antitrust standing to recover for "'indirect, remote, and consequential'" harms and must instead establish a "direct[]" link between the plaintiff's injury and the defendant's anticompetitive conduct.  *Id.* at 534, 541.

The Supreme Court has repeatedly reaffirmed this proximate-cause framework in the antitrust setting and beyond.  *See, e.g.*, *Holmes v. SIPC*, 503 U.S. 258, 268 (1992) (antitrust plaintiff's "right to sue . . . require[s] a showing that the defendant's violation not only was a 'but for' cause of his injury but was the proximate cause as well").  In securities cases, the Court looks to "the common-law roots of the securities fraud action (and the common-law requirement that a plaintiff show actual damages)" to

support "the need to prove proximate causation." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344-46 (2005). And under the Lanham Act, a plaintiff's injury must be "surely attributable to . . . the defendant's conduct," not "purely derivative" of conduct by (or harm to) a third party. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133, 140 (2014). This proximate-cause requirement, the Court has made clear, is no less exacting in antitrust cases than in cases brought under other federal statutes. *Id.* at 126.

Plaintiffs' standing theory is incompatible with these Supreme Court decisions. Plaintiffs do not allege they suffered harms that are directly attributable to the T-Mobile-Sprint merger. They are instead seeking to recover for independent pricing decisions—likely influenced by myriad economic factors and business considerations—made by T-Mobile's competitors, AT&T and Verizon, years after the merger closed.

Plaintiffs' theory depends on the untenable assumption that mergers proximately cause every subsequent price increase by every participant in the relevant market. But courts have long rejected that market-wide theory of harm, which would make every merger a magnet

for industry-wide antitrust claims and treble-damages awards. In *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990), for example, the Supreme Court rejected the theory that "[t]he removal of some elements of price competition distorts the markets, and harms all the participants." *Id.* at 339 n.8; *accord, e.g.*, *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 109-10 (1986); *see also J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 561-63 (1981) (rejecting theory of "automatic damages" in Robinson-Patman Act cases). These cases make clear that merely alleging that the plaintiff is a customer in an alleged market with diminished price competition supposedly attributable to the defendant's merger is insufficient, by itself, to establish a direct causal link to the merger and open the courthouse doors to an antitrust suit.

The court that rejected the lawsuit brought by the state attorneys general explained as much: "Anticompetitive results such as higher prices . . . produced by coordinated or unilateral effects of a merger do not just 'happen'; they are not self-executing outcomes spontaneously set in motion upon the creation of a presumed level of market concentration of fewer competitors, or the large market shares amassed by particular

participants." *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 245 (S.D.N.Y. 2020). Instead, "if such consequences do occur after a merger, they necessarily embody the actions taken, directly or indirectly, by decisionmakers in the relevant market." *Id.* Here, if prices have in fact increased, those decisionmakers are AT&T and Verizon—not T-Mobile.

**B.** Lower courts applying the Supreme Court's antitrust-standing decisions have consistently rejected Plaintiffs' sweeping conception of the doctrine. Until the ruling below, no court had ever held that customers of a defendant's competitor have antitrust standing to challenge a merger based on the *competitor's* supposedly merger-induced price increases. And the only courts of appeals to address theories analogous to Plaintiffs' have held that plaintiffs lack antitrust standing to sue defendants for the consequences of decisions made by third parties over which the defendants had no control. *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103 (2d Cir. 2021); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127 (2d Cir. 2021); *Austin v. Blue Cross & Blue Shield of Ala.*, 903 F.2d 1385 (11th Cir. 1990).

In *Schwab*, the Second Circuit affirmed the dismissal of a complaint against banks that were involved in setting LIBOR—but that did no business with the plaintiffs—because "third parties who independently chose to reference LIBOR in their bonds before selling those bonds to Plaintiffs broke the causal chain linking Plaintiffs' harm to Defendants' misconduct." 22 F.4th at 109. The court reasoned that "Plaintiffs who purchased LIBOR-based bonds from third parties did not suffer an antitrust injury *that was proximately caused* by Defendants' alleged conspiracy," and that "umbrella standing of the sort urged by [Plaintiffs] would yield liability that is far too sweeping." *Id.* at 114, 117.

The Second Circuit reached the same conclusion in *American Express*, where it held that merchants that did not accept Amex cards lacked antitrust standing to sue American Express for policies that supposedly allowed its competitors to charge higher fees. 19 F.4th at 140-41. The court reasoned that the plaintiffs' injuries "were not proximately caused by Amex" and that "the alleged antitrust violation was instead a 'remote' cause of the injuries" because, "at the first step, Amex restrained trade to raise its prices" and "only later did its competitors follow suit."

*Id.* at 135, 141.

The Eleventh Circuit rejected a similar theory in *Austin*. There, hospital patients sued an insurer for extracting price concessions from hospitals that then charged higher prices to other insurers and their policyholders. 903 F.2d at 1392. The court deemed these claims—which sought to hold the insurer responsible for the hospitals' pricing decisions—too "indirect" to proceed because the "determination of antitrust damages would require the construction of complex and highly speculative economic models" accounting for the pricing decisions of businesses not before the court. *Id.* at 1392-93.

This trio of decisions makes clear that antitrust standing's proximate-cause requirement applies not only when damages are passed on from a third party to the plaintiff (such as in *Associated General Contractors*) but also when a plaintiff seeks to hold a defendant liable for a third party's pricing decisions. That is precisely what Plaintiffs aim to do here.

Both the district court and Plaintiffs acknowledged the conflict between the decision below and the only appellate cases directly on point.

In granting certification, the district court explained that "[t]he fact that both the Second and Eleventh Circuits held that similarly-situated plaintiffs could not plausibly allege the requisite direct link shows that reasonable minds could differ on this issue." Certification Order at 7. And in opposing T-Mobile's motion to transfer this case to the Southern District of New York, Plaintiffs emphasized that courts there "routinely dismiss antitrust claims that arise from transactions with non-defendants, such as those brought by plaintiffs here." Dkt. 59 at 8.

Plaintiffs nevertheless insisted below that this contrary authority was irrelevant because this Court had supposedly already resolved the standing question, staking their opposition to certification on a single sentence from *Gypsum*: "the potential to establish injury through elevation of price in the affected market satisfies any distinct 'antitrust standing' requirement." 350 F.3d at 628. As the district court explained, however, that language means, at most, that in a cartel case like *Gypsum*, cartel members who agreed to cut output may be liable for higher prices charged by non-cartel members. Certification Order at 8. But "this is not a cartel case," and *Gypsum* "was decided years before the clarification

21

of the pleading standard in *Twombly*." *Id.* at 7-8.

Because this Court has "never has occasion to consider whether *Gypsum*'s brief statement . . . has continuing force under the modern pleading standard or when applied outside the cartel context," all the district court could ultimately say about *Gypsum* is that it does "not *foreclose* the possibility that a plaintiff who does not transact directly with a merging entity has antitrust standing." Certification Order at 7 (emphasis added). That is a far cry from saying that *Gypsum* expressly authorizes Plaintiffs' claim. *Id.* at 7-8. The district court might also have added that the sentence in *Gypsum* on which Plaintiffs have focused so much attention is dicta because this Court declined to resolve the "potentially difficult" antitrust-standing questions it had left open in another case, *Loeb Industries, Inc. v. Sumitomo Corp.*, 306 F.3d 469 (7th Cir. 2002). *Gypsum*, 350 F.3d at 627.

**C.** In addition to contravening antitrust-standing principles, Plaintiffs' attenuated causation allegations do not satisfy the modern pleading standards articulated by the Supreme Court in *Twombly*. *See also Iqbal*, 556 U.S. at 678.

*Twombly* held that antitrust plaintiffs must allege "something beyond the mere possibility" of an agreement in restraint of trade to state a claim under Section 1 of the Sherman Act. 550 U.S. at 557-58. Their allegations must be "plausible" and include "enough factual matter (taken as true) to suggest that an agreement was made" and "to raise a right to relief above the speculative level." *Id.* at 555-56.

Plaintiffs have not met that plausibility standard here: They allege they paid higher prices for wireless service "[a]s a result" of T-Mobile's merger, Dkt. 1 ¶ 122, even though, years earlier, that merger was scrutinized and approved by state regulators, federal regulators, and two federal courts, and even though in the two years after the merger AT&T and Verizon may have made pricing decisions based on intervening economic factors and strategic business decisions having nothing to do with the merger.

While it may be theoretically *possible* that the T-Mobile-Sprint merger led to a reduction in competition that, in turn, prompted AT&T and Verizon to decide to raise their prices, it is also possible—indeed, more plausible given the attenuated connection alleged by Plaintiffs—

that those pricing decisions are attributable to rising costs amid widespread inflation, capital expenditures required to build new 5G networks, COVID-related demand increases and supply-chain disruptions, or any number of other intervening factors that arose in the two years after the merger. *E.g.*, Dkt. 1 ¶ 108 & nn.169-70. In addition, Plaintiffs' allegations are implausible because they directly contradict the findings of the federal district court that found the merger unlikely to substantially lessen competition, *New York*, 439 F. Supp. 3d at 245-46, and because no regulator has sought post-merger relief based on the regular reports of a court-appointed monitor.

This Court should grant review not only because those implausible allegations are insufficient to "unlock the doors to discovery," *Iqbal*, 556 U.S. at 678, but also to provide guidance to litigants in future cases. Indeed, many of the decisions on which the parties and the district court have focused—including *Gypsum* and *Loeb*—were decided before *Twombly* and *Iqbal* and, as the district court acknowledged, do not apply modern pleading standards. *See* Certification Order at 7-8.

The importance of policing plausibility and the appropriateness of

certification in this sprawling putative class action are underscored by the *in terrorem* quality of "the unusually high cost of discovery in antitrust cases." *Twombly*, 550 U.S. at 558-59; *see also id.* ("the threat of discovery expense will push cost-conscious defendants to settle even anemic cases"). Nor was *Twombly* the first time the Supreme Court sounded the alarm about discovery costs in major class actions. In *Dura*, for example, the Court insisted on specific allegations of "economic loss and proximate cause" in securities cases to discourage the "abusive" filing of "largely groundless claim[s]." 544 U.S. at 347.

Permitting Plaintiffs' claims to survive a motion to dismiss would clear the path to onerous discovery directed not only at T-Mobile but also at AT&T and Verizon, the nonparties whose actions and motivations are central to Plaintiffs' allegations, and other wireless providers like DISH. *See, e.g.*, Dkt. 154 at 1-2 (status report describing discovery served on third parties); Dkt. 156 (order permitting each side to take up to 90 depositions in discovery expected to run through the end of 2025). As the district court recognized, Section 1292(b) review is appropriate before "'the expense'" of "'bulky, burdensome discovery'" is imposed on

T-Mobile, dozens of nonparties, and the judiciary. *See* Certification Order at 4 (quoting *Text Messaging*, 630 F.3d at 625).

**D.** The perverse incentives created by Plaintiffs' unprecedented theory of antitrust standing provide an additional basis for concluding that Plaintiffs' claims should not be permitted to survive a motion to dismiss.

Competitors cannot challenge a merger simply because of "a threat of losses from increased competition." *Cargill*, 479 U.S. at 116. Thus, AT&T and Verizon could not have directly challenged the merger of the much smaller T-Mobile and Sprint, which the court overseeing the lawsuit brought by state attorneys general described as a procompetitive development that would result in a combined entity ready "to take on its new market peers and rivals in head-on competition." *New York*, 439 F. Supp. 3d at 245. But Plaintiffs' theory would permit market leaders to do indirectly what they cannot do directly—by giving their *customers* antitrust standing to challenge a merger that allegedly "result[ed]" in those same companies' price increases. Dkt. 1 ¶ 122. On Plaintiffs' theory, any merger creating a formidable competitor would incentivize

26

its rivals to encourage litigation by raising prices, knowing their customers could sue the merged company to unwind the merger and seek a treble-damages windfall based on those price increases—even if, as in this case, the defendant maintained or reduced its own prices.

In short, this is not the average case or even the average antitrust case. It is a case seeking to unwind a multi-billion-dollar merger—years after it was approved by federal regulators and two federal courts and officially closed—based on novel arguments that conflict with two distinct bodies of case law, one addressing the outer limits of antitrust standing, the other the showing a plaintiff must make to allege a plausible claim. This is exactly the kind of case where, at a minimum, "there is plenty of room for debate" about the district court's ruling and where interlocutory review is warranted. Certification Order at 6.

## III.  An Immediate Appeal Could Materially Advance The Litigation.

Finally, an interlocutory appeal is warranted because a reversal by this Court would end the case. Courts have often dismissed analogous antitrust suits because the connection between the defendant's conduct and the plaintiff's alleged injury was too attenuated. *E.g.*, *Schwab*, 22

F.4th at 117, 125; *Am. Express*, 19 F.4th at 139-43. If this Court agrees with T-Mobile, then the result would be the same here: dismissal and the end of this litigation. As the district court observed, Plaintiffs concede as much. Certification Order at 3.

The possibility of an end to litigation is an especially important consideration in complex antitrust cases like this one. Although interlocutory review should be available "only in exceptional cases," Section 1292(b) was *designed* for "antitrust and similar protracted cases." *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994). An immediate appeal here could eliminate the burdens of discovery and trial on the parties, nonparties, and the judiciary alike—burdens that promise to be especially heavy in a case purportedly worth billions of dollars, brought on behalf of millions of AT&T and Verizon wireless subscribers, and that seeks to unwind one of the most successful and closely scrutinized mergers in recent memory, more than four years after its completion.

## CONCLUSION

The Court should grant the petition.

Dated: April 8, 2024                    Respectfully submitted,


                                    /s/ *Theodore J. Boutrous Jr.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Federal Rule of Appellate Procedure 5(c)(1) because it contains 5,198 words, excluding the portions exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook font.

Dated: April 8, 2024                    Respectfully submitted,


                          /s/ *Theodore J. Boutrous Jr.*
                          Theodore J. Boutrous Jr.

**CERTIFICATE OF SERVICE**

I certify that on April 8, 2024, I caused this petition to be filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by sending it via email to USCA7_Clerk@ca7.uscourts.gov. I further certify that on the same day, I caused the petition to be served by email and by mail delivery on counsel for Plaintiffs, as follows:

Brendan P. Glackin
  bglackin@lchb.com
Lin Yee Chan
  lchan@lchb.com
Jules A. Ross
  jross@lchb.com
Nicholas W. Lee
  nlee@lchb.com
Sarah D. Zandi
  szandi@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

Gary Smith, Jr.
  GSmith@hausfeld.com
HAUSFELD
600 Montgomery Street, Suite
3200
San Francisco, CA 94111

Marcus Hill Brakefield
  hbrakefield@hausfeld.com
Swathi Bojedla
  sbojedla@hausfeld.com
HAUSFELD
888 16th St NW, Suite 300
Washington, DC 20006

Eric L. Cramer
  ecramer@bm.net
Jeremy Gradwohl
  jgradwohl@bm.net
Najah Jacobs
  njacobs@bm.net
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103

Joshua P. Davis
   jdavis@bm.net
BERGER MONTAGUE PC
59A Montford Avenue
Mill Valley, CA 94941


Kyla Gibboney
   kgibboney@bm.net
Pollock Julie
   jpollock@bm.net
BERGER MONTAGUE PC
505 Montgomery Street, Suite
625
San Francisco, CA 94111

Robert E. Litan
   rlitan@bm.net
BERGER MONTAGUE PC
1001 G Street, NW, Suite 400
East
Washington DC, DC 20001


Kenneth N. Flaxman
   knf@kenlaw.com
Joel A. Flaxman
   jaf@kenlaw.com
KENNETH N. FLAXMAN P.C.
200 South Michigan Avenue,
Suite 201
Chicago, IL 60604-6107

_/s/ Theodore J. Boutrous Jr._
Theodore J. Boutrous Jr.

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY, on behalf of themselves and all others similarly situated, | No. 1:22-cv-03189 |
| Plaintiffs, | Judge Thomas M. Durkin |
| v. | |
| DEUTSCHE TELEKOM AG, T-MOBILE US, INC., and SOFTBANK GROUP CORP., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, representing a proposed class of AT&T and Verizon customers, filed this suit under the federal antitrust statutes challenging the April 2020 merger between T-Mobile and Sprint. Defendant SoftBank Group Corp. ("SBG") moves to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) and joins Defendant T-Mobile US, Inc. ("T-Mobile") in moving to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, SBG's motion to dismiss for lack of jurisdiction and improper venue [76] is granted, and T-Mobile and SBG's motion to dismiss for failure to state a claim [78] is denied.

**Background**

On April 29, 2018, wireless service providers T-Mobile and Sprint ("Merging Entities") announced an agreement to merge. R. 1 ¶ 46. What followed was significant

scrutiny by the Federal Communications Commission ("FCC"), the U.S. Department of Justice ("DOJ") Antitrust Division, 14 State Attorneys General, two federal judges, and others. R. 1 ¶¶ 63–64, 67–68; *see also* R. 79-3 ("FCC Order"); R. 79-4 ("DOJ Complaint"); R. 79-5 ("Settlement Agreement"); R. 79-14 ("Proposed Final Judgment"); R. 79-17 ("Final Judgment Order"); R. 79-20 ("Bradt Dismissal"); *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 186 (S.D.N.Y. 2020); *United States v. Deutsche Telekom AG*, No. 19-2232, 2020 WL 1873555, at *5 (D.D.C. Apr. 14, 2020); *Bradt v. T-Mobile US, Inc.*, No. 19-cv-07752, 2020 WL 1809716, at *1 (N.D. Cal. Feb. 28, 2020).[1]

First, on June 18, 2018, the Merging Entities applied for FCC approval. After investigating the potential impact of the proposed transaction, the FCC concluded that "as conditioned, the transaction would not substantially lessen competition and would be in the public interest." FCC Order ¶ 11; *see also id.* ¶¶ 21–24, 385. The Merging Entities committed "to offer T-Mobile and Sprint legacy rate plans available as of February 4, 2019 for three years following consummation of the transaction or

---

[1] Plaintiffs oppose the Court taking judicial notice of certain parts of certain of these documents and filings. *See* R. 87-1; R. 87-2. Essentially, Plaintiffs oppose judicial notice of the factual findings made by the FCC and federal courts. *Id.* The Court relies on these court filings and public records in relaying the history of the merger at issue in order to set the stage for the case at bar. Regardless of whether or not the documents are incorporated by reference into the complaint, the Court can certainly take judicial notice of the fact that these filings and records exist and that the courts and the FCC held what they held. *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 794 (N.D. Ill. 2017). Moreover, it is well settled that "[c]ourts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017); *see also* Fed. R. Evid. 201(b)(2).

until better plans that offer a lower price or more data are made available," *id.* ¶ 209, divest Sprint's Boost Mobile business and provide a wholesale agreement to the buyer with terms to "ensure that New Boost will be an aggressive competitor," *id.* ¶ 25, and "build out" and "deploy" 5G service to certain percentages of the U.S. population and at certain speeds on a specified schedule for the next six years, *id* ¶¶ 26–29. Accordingly, on October 16, 2019, the FCC approved the transfer of Sprint's licenses. *Id.* ¶¶ 5, 384.

Further, the DOJ Antitrust Division conducted a fifteen-month review of the merger's likely effect on competition and U.S. consumers. R. 1 ¶ 63. On July 26, 2019, the DOJ filed a civil antitrust complaint along with a Proposed Final Judgment that contained the terms of the settlement. *See id.* ¶ 64; DOJ Complaint; Proposed Final Judgment. The Merging Entities agreed, among other things, to divest Boost Mobile and other Sprint assets to DISH and to lease network access to DISH for seven years, while DISH built out its 5G network. R. 1 ¶ 64; Proposed Final Judgment at 6–20. On April 1, 2020, the court approved the Proposed Final Judgment in light of the conditions imposed by the FCC and the DOJ. *Deutsche Telekom AG*, 2020 WL 1873555, at *5, *6.

Additionally, on June 19, 2019, State Attorneys General from thirteen States and the District of Columbia sued to enjoin the merger in the Southern District of New York. R. 1 ¶ 67; *see also Deutsche Telekom*, 439 F. Supp. 3d at 186. They alleged that the proposed merger would substantially lessen competition in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. *Id.* After a two-week bench trial, the

court entered judgment in favor of the defendants and denied the request to enjoin the merger. *Id.* at 187–89. Following the court's decision, in early March 2020, T-Mobile and Sprint settled with the State Attorneys General for Illinois and eleven other states. *See* Settlement Agreement. The Merging Entities made additional commitments, including an extension of the consumer pricing commitments from three years to five, low-cost plans, and a nationwide broadband Internet access program. *Id.* at ¶¶ 1–4. The Settlement Agreement remains in force through April 2025, and all disputes arising out of the agreement are to be heard in the Southern District of New York. *Id.* ¶¶ 9, 17.

Moreover, on November 25, 2019, a group of consumers of national mobile service providers sued to enjoin the merger in the Northern District of California. *See Bradt*, 2020 WL 1809716, at *1. After the Southern District of New York court denied the States' request to enjoin the merger, the *Bradt* court denied the motion for a temporary restraining order, and the plaintiffs subsequently dismissed their claims with prejudice. *See id.* at *3; Bradt Dismissal.

The merger closed on April 1, 2020. Just over two years later, Plaintiffs brought this putative class action on behalf of themselves and other AT&T and Verizon customers against Deutsche Telekom AG, T-Mobile, and SBG. In Plaintiffs' telling, the concerns that the merger would cause price increases and harm consumers have come to fruition. Specifically, they allege that the reduced competition following the merger has caused class members to pay billions of dollars more for wireless services than they would have without the merger, in violation of

Section 7 of the Clayton Act (15 U.S.C. § 18) and Section 1 of the Sherman Act (15 U.S.C. § 1). With this action, Plaintiffs seek to unwind the T-Mobile-Sprint merger, create a viable fourth competitor in the marketplace, and recover damages for the overcharges they allegedly paid. As described above, this suit was not filed on a blank slate. The merger was reviewed several times over before it was consummated. However, this case does not focus on the wisdom of the merger, but rather its consequences.

This Court previously denied T-Mobile's motion to transfer the case to the Southern District of New York. *See* R. 63. Since then, certain defendants filed motions to dismiss. SBG moves to dismiss for lack of personal jurisdiction and improper venue under Rules 12(b)(2) and 12(b)(3). R. 76. And both SBG and T-Mobile ("Defendants") move to dismiss for failure to state a claim under Rule 12(b)(6). R. 78. The Court held oral argument on both motions. *See* R. 110 ("Tr.").

## Legal Standard

When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that jurisdiction exists. *See Purdue Res. Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Court must read the complaint "liberally, in its entirety, and with every inference drawn in favor" of the plaintiff to determine whether it has set forth a prima facie case for personal jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 877–78 (7th Cir. 2006). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go

beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. Likewise, when a defendant moves for dismissal under Rule 12(b)(3), the plaintiff bears the burden of showing that venue is proper. *Brunswick Corp. v. Thorsell*, No. 13 C 9222, 2014 WL 1612668, at *2 (N.D. Ill. Apr. 21, 2014) (citing *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981)). The Court takes the allegations in the complaint as true unless they are contradicted by the defendant's affidavits and may look beyond the complaint to determine if venue is proper. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016).

Additionally, a Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Discussion

### I.      SBG's Motion to Dismiss

An antitrust plaintiff can establish personal jurisdiction and venue through (1) "the rules that govern in the general case," namely Federal Rule of Civil Procedure 4(k) for personal jurisdiction and 28 U.S.C. § 1391 for venue, or (2) Section 12 of the Clayton Act, 15 U.S.C. § 22. *See KM Enters. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013). SBG contends that it is not subject to personal jurisdiction in the Northern District of Illinois and that venue is improper under Section 12.[2] The Court begins its analysis with the latter argument.

### A. Section 12 of the Clayton Act

Section 12 "sets venue anywhere the corporation is an 'inhabitant,' is 'found,' or 'transacts business,'" and "provides for nationwide (indeed, worldwide) service of process and therefore nationwide personal jurisdiction." *Id.* (quoting 15 U.S.C. § 22). Relevant here, the phrase "transacts business" refers to "the practical, everyday business or commercial concept of doing business or carrying on business," but that

---

[2] SBG does not assert that personal jurisdiction is improper under Section 12, only venue.

business must be of a "substantial character." *Id.* at 731 (quoting *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948)).

SBG is a foreign corporation that has no physical presence in Illinois, is not registered to conduct business in Illinois, and does not have a registered agent in Illinois. R. 77-1 ¶¶ 6–7. Further, Mamoru Fujimura, the Head of the Overseas Business Group II at SBG, attests that the company does not conduct and has never conducted business in Illinois, *id.* ¶ 4, and has not made any direct investments in companies in Chicago, R. 95-1 ¶ 2. Plaintiffs nonetheless argue that SBG "transacts business" in the district by producing "golden eggs," that is, investing in Chicago-based companies and helping them grow through its "turbocharger strategy." R. 86 at 1–2, 4 (citing SBG Q3 2020 earnings presentation and materials). The problem is that it is not SBG that invests in those Chicago-based companies. Rather, it is a subsidiary of SBG called SoftBank Vision Fund II-2 L.P. ("Vision Fund II"), which is a separate legal entity. R. 95-1 at ¶ 2.

Plaintiffs argue that corporate distinction is not fatal for two reasons. First, they assert that while Vision Fund II may do the investing, SBG itself provides strategic advice to those Chicago-based "golden eggs." Tr. at 25–26. But that claim is controverted by the fact that SBG's business activities are limited to "making investments and holding its subsidiaries." R. 77-1 ¶ 22. What's more, Vision Fund II is solely managed by a corporate entity that is wholly separate from SBG. R. 95-1 ¶ 3. Put differently, SBG has "no direct role in managing or directing" Vision Fund II's investments. R. 95-1 ¶ 3.

8

Second, Plaintiffs urge the Court to attribute Vision Fund II's contacts with the district to SBG. Generally, Section 12 does not require that a company's transacted business be related to the underlying antitrust violation. But courts outside of this Circuit have held that "looking to the contacts of subsidiaries not involved in the [alleged anticompetitive conduct] would not serve the purpose of Section 12 of the Clayton Act," which was enacted to "hold offending corporations accountable in the areas where their offensive conduct took place." *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 12 (D.D.C. 2003); *see also United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55, 62 (D.D.C. 2004). In this Court's view, that reasoning is sound and applicable here. Indeed, the two Seventh Circuit cases examining whether parent companies "transacted business" under Section 12 involved subsidiaries that were directly involved in the allegedly anticompetitive conduct. *See KM Enters.*, 725 F.3d at 722 (plaintiff sued parent and its subsidiary for allegedly interfering with competitive bidding on public contracts and engaging in other monopolistic activity); *Tiger Trash v. Browning-Ferris Indus., Inc.*, 560 F.2d 818, 821 (7th Cir. 1977) (plaintiff sued parent and its Indiana subsidiary for attempting to monopolize the Evansville-Henderson market). Here, in contrast, Plaintiffs do not allege that Vision Fund II is in any way connected to the merger. As such, to the extent that Vision Fund II transacts business in Chicago, those contacts are irrelevant to the Section 12 inquiry.

Even if the Court were to consider Vision Fund II's contacts, a parent corporation may only be said to "transact business" if "there is enough control and

direction from parent to subsidiary." *Tiger Trash*, 560 F.2d at 823. That assessment "must be made in the total factual setting, i.e., what the subsidiary does itself and what the parent does for the subsidiary." *Id.* A subsidiary need not be "controlled to an ultimate degree," *id.*, but the control must be "extensive," *see KM Enters.*, 725 F. 3d at 731. *See also Scophony*, 333 U.S. at 814 (considering parent's "supervision over and intervention in" subsidiary's affairs); *Tiger Trash*, 560 F.2d at 823 (stating that "a parent-subsidiary relationship consisting of mere investment holding by the parent would not be sufficient").

Here, the record does not indicate that SBG has "extensive" control over Vision Fund II. Instead, it shows that in both corporate structure and in practice, SBG is several steps removed from the operations of Vision Fund II. It is SB Global Advisors Limited that currently manages Vision Fund II, and before June 2022, it was SB Investment Advisors (UK) Limited. R. 95-1 at ¶ 3. Both of those entities are wholly separate from SBG. *Id.*; *see also* R. 77-1 ¶ 22 ("SBG is a holding company that makes investments and that holds subsidiaries that themselves make investments and conduct business."). Further, SBG and Vision Fund II maintain separate corporate records and account separately for their assets. R. 77-1 at ¶¶ 24–25. In sum, even if the Court were to consider Vision Fund II's investments in Chicago, which are unrelated to the alleged anticompetitive conduct, SBG does not exert the degree of control over Vision Fund II that would allow the Court to conclude that SBG transacts business in this district.

Plaintiffs further assert that SBG's "promotional and recruiting efforts" in Illinois show that it "transacts business" in the district. While Plaintiffs assert that SBG presented at a 2022 M&A conference in Chicago and recruits new employees from the University of Chicago business school, SBG apparently did not do either of those things.[3] In any case, even if SBG had undertaken those activities, such activities fall short of "carrying on business of any substantial character." *Scophony*, 333 U.S. at 807; *see, e.g.*, *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 231 (S.D.N.Y. 2019) (attending one bond conference in New York was not sufficient to meet the venue requirement); *American Medicorp, Inc. v. Humana, Inc.*, 445 F. Supp. 573, 579 n.2 (E.D. Pa. 1977) (recruitment visits, advertisements, letters, and attendance at industry meetings were de minimis contacts that did not establish venue); *cf. FTC v. BINT Operations LLC*, 595 F. Supp. 3d 740, 755–56 (E.D. Ark. 2022) (defendants "transacted business" where they spent "vast sums of money" in the district, sent emails and text messages to Arkansas residents about the business, and recruited Arkansas residents in an effort to "expand [its] footprint" in the district).

---

[3] Plaintiffs point to a 2022 M&A conference at the University of Chicago attended by Jonathan Duckles, who is listed as a partner and senior legal counsel at "SoftBank." *See* R. 86 at 6 n.38. Fujimura states that Duckles is not and has never been employed by SBG. R. 95-1 at ¶ 4. Plaintiffs also highlight the listing of "Softbank China Venture Capital" in a list of firms with recruiting affiliations with the University of Chicago Booth School of Business. *See* R. 86 at 6 n.39. Fujimura states that SoftBank China Venture Capital has not been a subsidiary or affiliate of SBG since at least 2016. R. 95-1 at ¶ 5.

Thus, because SBG does not "transact business" in this district, venue is not proper under Section 12.

### B. Minimum Contacts

Under Federal Rule of Civil Procedure 4(k)(1)(A), personal jurisdiction is proper whenever a defendant "would be amenable to suit under the laws of the state in which the federal court sits (typically under a state long-arm statute), subject always to the constitutional due process limitations encapsulated in the familiar 'minimum contacts' test." *KM Enters.*, 725 F.3d at 723 (citations omitted). Illinois's long-arm statute allows its courts to exercise personal jurisdiction to the fullest extent allowed by the Illinois and U.S. Constitutions. *Id.* at 732 (citing 735 ILCS § 5/2-209(c)). To satisfy due process, a foreign defendant "generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Plaintiffs contend that this Court has specific jurisdiction over SBG. Specific jurisdiction is based on "the relationship among the defendant, the forum, and the litigation." *Id.* at 284. There are three "essential requirements":

> (1) the defendant must have purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (quoting

*Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012)) (cleaned up).[4]

### 1. Purposeful Direction

Where a plaintiff's claim is for an intentional tort, the first prong focuses on

whether the conduct underlying the claim was purposefully directed at the forum

state. The purposeful direction inquiry "can appear in different guises" but its point

is to "ensure that an out-of-state defendant is not bound to appear to account for

merely random, fortuitous, or attenuated contacts." *Curry v. Revolution Lab'ys, LLC*,

949 F.3d 385, 398 (7th Cir. 2020) (citations omitted). "The proper question is not

where the plaintiff experienced a particular injury or effect but whether the

defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571

U.S. at 290. The relevant contacts must be "suit-related," and they must be "contacts

that the defendant himself creates with the forum." *Id.* at 284.

With the focus on the defendant's own suit-related contacts with the forum

state, the Supreme Court in *Walden* put an important gloss on the express-aiming

test set forth in *Calder*. *Calder* stands for the proposition that a court can exercise

---

[4] The Seventh Circuit has explained that "the nature of the purposeful-direction/purposeful-availment inquiry depends in large part of the type of claim at issue." *Felland*, 682 F.3d at 674. Citing *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010), SBG argues that *Calder v. Jones*, 465 U.S. 783 (1984) supplies the proper test for antitrust claims. In *Tamburo*, the Court chose the purposeful direction inquiry because the plaintiff brought intentional tort claims. 601 F.3d at 702. But the Seventh Circuit had already affirmed dismissal of the antitrust claims, such that the intentional tort claims were all that were left. *Id.* at 700. Nonetheless, the parties here argue under both the purposeful direction and the purposeful availment inquiries, so this Court addresses both.

specific personal jurisdiction based on intentional and allegedly tortious conduct "expressly aimed" at the forum state with knowledge that its effects would be felt in the forum state. *Felland*, 682 F.3d at 674–75. The Supreme Court in *Walden* made clear that to satisfy this test, the defendant's own allegedly tortious conduct must be directly connected to the forum state itself, not just to the plaintiff who resides there. 571 U.S. at 287–88.

Here, Plaintiffs have not alleged suit-related conduct that creates a "substantial connection" between SBG and Illinois. *Id.* at 284. Plaintiffs focus on SBG's role in executing the merger agreement. But Plaintiffs do not allege that any part of SBG's negotiation or signature of the merger agreement took place in Illinois. Plaintiffs also do not allege that any part of the merger agreement specifically targeted Illinois consumers or pricing of mobile services in Illinois. Instead, Plaintiffs assert that SBG negotiated and signed a merger agreement that reduced competition and catalyzed price increases and store closures in all fifty states, including Illinois.

That link between SBG and Illinois is attenuated, at best. Such a relationship necessarily depends on activities beyond SBG's control. Plaintiffs do not allege that SBG had any role in setting prices for T-Mobile customers in Illinois or in T-Mobile's closure of 96 Sprint stores in Illinois. *See* R. 86-1. Indeed, Fujimura attests that following its signature of the merger agreement, SBG had "no input on, or control over, T-Mobile's operations[,] no role in setting or developing T-Mobile's competitive strategy[,] and . . . no role in setting or developing T-Mobile's prices for national retail mobile wireless telecommunications services." R. 77-1 ¶ 16. But even if SBG signing

the merger agreement caused third party mobile carriers to increase prices or close stores in Illinois, contacts between third parties and the forum do not satisfy the purposeful direction requirement. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014), as corrected (May 12, 2014); *Monco v. Zoltek Corp.*, 342 F. Supp. 3d 829, 834 (N.D. Ill. 2018) (statements that allegedly caused third parties to terminate a business relationship with plaintiffs in Illinois were insufficient to show purposeful direction).

Plaintiffs emphasize SBG's knowledge that the merger would have nationwide effects. Yet, even if SBG knew that the merger would cause T-Mobile, AT&T, and Verizon to increase their prices for customers in Illinois (and many other states) and cause Sprint to close its stores in Illinois (and other states), "knowing about a potential for harm in a particular state is not the same as acting in that state—and it takes the latter to permit personal jurisdiction under state law." *Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018); *see also Monco*, 342 F. Supp. 3d at 834 ("[M]ere foreseeability of harm to plaintiffs who the defendant knows are based in Illinois is insufficient post-*Walden*."). In the end, Plaintiffs' ties to the forum, and those of T-Mobile, AT&T, and Verizon cannot make up for SBG's lack of contacts with Illinois.[5]

---

[5] Plaintiffs also raise the settlement between T-Mobile and Sprint and the State of Illinois. However, while that agreement includes a release of claims for SBG, SBG is not a party or signatory to that agreement. *See* Settlement Agreement at 1, 7. As such, SBG cannot be said to be purposefully directing conduct at Illinois through that agreement.

## 2. Purposeful Availment

The first prong of the specific personal jurisdiction inquiry can also be satisfied by purposeful availment. The defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). As with purposeful direction, "the contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Id.* at 1025. And a plaintiff must show that the defendant "deliberately 'reached out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering a contractual relationship centered there.'" *Id.* (quoting *Walden*, 571 U.S. at 385).

Plaintiffs contend that SBG has purposely availed itself of the privilege of conducting business in Illinois through investing in "golden egg" companies in Chicago. However, as previously discussed, those investments were made and managed by corporate entities that are entirely separate from SBG. Allowing a subsidiary's activities to be used as a basis for personal jurisdiction over a parent violates the principle that each defendant's contacts must be assessed individually and thus runs counter to due process. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000). And even if SBG itself had directly invested in those Chicago-based companies, those contacts would still be insufficient to confer specific jurisdiction because they are wholly unrelated to this suit, which arises out of the allegedly anticompetitive merger between T-Mobile and

16

Sprint. *See Advanced Tactical*, 751 F.3d at 801 (explaining that a defendant's minimum contacts with the forum must be "suit-related").[6]

Plaintiffs also point to the post-trial settlement agreement between T-Mobile and Sprint and the State of Illinois, which includes a release of claims against SBG and pricing commitments covering Illinois. *See* Settlement Agreement. Certainly, in a breach of contract action, an agreement's "'contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' may indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). But this is not an action in contract nor does the agreement indicate purposeful availment to Illinois. As detailed in the background section, the settlement arose out of litigation filed in the New York by several State Attorneys General, and the agreement is governed by New York law. *See Incipio, LLC v. Under Armour, Inc.*, No. 20-cv-04800, 2021 WL 3618277, at *3 (N.D. Ill. Aug. 16, 2021) (choice of law provision in settlement agreement opting for New York law weighed against jurisdiction in Illinois). Those

---

[6] Plaintiffs attempt to analogize this case to *Ford Motor Co.* wherein the Supreme Court held that even though the particular cars that injured the plaintiffs in the forum states were designed, manufactured, and first sold outside of the forum states, because Ford had "cultivate[d] a market" in the forum states for the cars, there was a sufficiently strong connection between the defendant, the forum, and the litigation. 141 S. Ct. at 1019. In Plaintiffs' view, SBG has cultivated a market for "golden eggs" in Illinois and one of SBG's "golden eggs" that was produced in another state, the post-merger T-Mobile, injured them in Illinois. But making cars and investing in companies are two very different things. And the holding in *Ford Motor Co.* entirely derives from its nature as a products liability case.

features, along with the release itself, cut against any foreseeability that SBG would have to litigate in Illinois.[7]

### C. Co-Conspirator Doctrine

Plaintiffs alternatively contend that T-Mobile's acts to generate profits in Illinois can be imputed to SBG under the "co-conspirator doctrine" of personal jurisdiction. "The idea behind this theory is that personal jurisdiction is proper over an out-of-state defendant in a forum where one of his co-conspirators has acted as the defendant's agent in furtherance of the conspiracy." *Smith v. Jefferson Cnty. Bd. of Educ.*, 378 F. App'x 582, 585 (7th Cir. 2010). Plaintiffs argue that SBG entered into a conspiracy with the other Defendants to execute an allegedly anticompetitive merger, where the overt act is T-Mobile's closure of Sprint stores in Illinois.

The first problem with this theory is that it "may not be valid in Illinois." *Id.* (citing *Ploense v. Electrolux Home Products, Inc.*, 377 Ill.App.3d 1091, 882 N.E.2d 653, 666 (Ill. App. Ct. 2007) (stating that an Illinois Supreme Court case "effectively scuttl[ed]" the co-conspirator theory of personal jurisdiction); *Knaus v. Guidry*, 389 Ill.App.3d 804, 906 N.E.2d 644, 659–61 (Ill. App. Ct. 2009) (noting the "articulated hesitancy of our supreme court . . . to adopt the conspiracy theory of jurisdiction in Illinois")). But even if the theory remains viable, it does not help Plaintiffs here because this is not conspiracy case. Indeed, the terms "conspiracy," "conspirator," "overt act" and the like do not appear in the complaint. *See* R. 1; *cf. Bittman v. Fox*,

---

[7] SBG concedes that there would be jurisdiction in New York. *See* Tr. at 6.

No. 14 C 08191, 2015 WL 5612061, at *6 (N.D. Ill. Sept. 23, 2015) ("[E]ven if the conspiracy theory of personal jurisdiction were valid, it would not apply here because the 'conspiracy' is only hinted at."); *In re Honey Transshipping Litig.*, 87 F. Supp. 3d 855, 873 (N.D. Ill. 2015) (holding that conspiracy theory did not confer jurisdiction as to company defendant where class plaintiffs' complaint generally alleged "Defendants" participated in a conspiracy). And while Plaintiffs cite antitrust cases where courts applied the conspiracy theory of jurisdiction, those cases all involved alleged price fixing conspiracies. *See In re Packaged Seafood Prods. Antitrust Litig.*, 2022 WL 3161673, at *2 (S.D. Cal. Aug. 8, 2022); *United States v. Maruyasu Indus. Co.*, 229 F. Supp. 3d 659, 672 (S.D. Ohio 2017). The parties have not identified nor is the Court aware of any case where conspiracy jurisdiction has been applied in the context of a merger. Retrofitting a disfavored theory of jurisdiction to these circumstances is inconsistent with due process.

### D. Jurisdictional Discovery

As an alternative to dismissal, Plaintiffs request leave to seek jurisdictional discovery. In order to obtain jurisdiction discovery, a plaintiff must first make a "colorable" showing of personal jurisdiction. *Reimer*, 230 F.3d at 946.[8] "Generally

---

[8] In *Reimer*, the Seventh Circuit stated that "the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." As several other district courts have noted, since a "prima facie" showing based on the written submissions is sufficient to establish personal jurisdiction, "*Reimer*'s heightening of the standard to secure discovery seems to be unintentional." *See, e.g.*, *Bradford Victor-Adams Mut. Ins. Co. v. Electrolux Home Prod., Inc.*, No. 418CV04167, 2019 WL 3604594, at *4 n.4 (C.D. Ill. Aug. 6, 2019). Therefore, the Court will apply a "colorable" standard to this request for jurisdictional discovery.

courts grant jurisdictional discovery if the factual record is ambiguous or unclear on the issue, but when a lack of personal jurisdiction is clear, jurisdictional discovery would serve no purpose and should not be permitted." *Medline Indus., Inc. v. Diversey, Inc.*, No. 20 C 4424, 2020 WL 5763637, at *4 (N.D. Ill. Sept. 28, 2020) (citations omitted).

Plaintiffs contend that the Fujimura declarations "leave several things unclear." R. 86 at 15. First, Plaintiffs say that the declarations fail to address SBG's activities in the Chicago area. *Id.* But the declarations addressed that topic in ample detail. As discussed earlier in this opinion, the declarations make clear that the Chicago-based investments that Plaintiffs identify belong to Vision Fund II, not SBG; explain the corporate distinction between SBG, Vision Fund II, and other subsidiaries; and confirm that other subsidiaries manage those investments. *See generally* R. 77-1; R. 95-1. Additionally, Plaintiffs seek information on SBG's "influence on and contribution to the effects of the merger in Illinois and nationwide." R. 86 at 15. In other words, Plaintiffs seek information that would support SBG's purposeful direction of suit-related conduct at this forum. But because SBG has never conducted any business in Illinois, any connection between SBG and Illinois in the aftermath of the merger would be through the contacts of third parties like T-Mobile. And the record is clear that SBG had no input on or control over T-Mobile's operations, competitive strategy, or pricing after signing the merger agreement. *See* R. 77-1 ¶¶ 9–21. Plaintiffs do not indicate what other fact could exist that would make a difference here. Because there is no ambiguity, and Plaintiffs do not make out a

colorable basis for personal jurisdiction over SBG, jurisdictional discovery is not warranted.

## II.     Defendants' Motion to Dismiss

T-Mobile and SBG also move for dismissal under Rule 12(b)(6) on the grounds that Plaintiffs lack "antitrust standing," fail to adequately allege direct or indirect evidence of anticompetitive effects, and that laches bars the divestiture claim.

### A. Antitrust Standing

Defendants first urge the Court to dismiss this suit for lack of antitrust standing. Section 4 of the Clayton Act provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent[.]" 15 U.S.C. § 15(a). Though broadly phrased, the Supreme Court has held "'not every person, however tangentially injured by an antitrust violator'" can recover treble damages. *Loeb Indust., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 484 (7th Cir. 2002) (quoting *Blue Shield of Va., Inc. v. McCready*, 457 U.S. 465, 477 (1982)). The doctrines that have arisen to "clarify the circumstances under which a particular person may recover from an antitrust violator" have often been "incautiously lumped together under the umbrella term

'antitrust standing.'"[9] *Id.* at 480. The two most prominent doctrines were set forth in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which held that indirect purchasers are prohibited from seeking damages under federal antitrust law, and *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), which imposed a version of proximate causation on antitrust claims. This case implicates the latter.

In *AGC*, the Supreme Court held that only a person whose antitrust injury has been "proximately caused" by a defendant's antitrust violation may recover damages. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (citing *AGC*, 459 U.S. at 532–33). That inquiry involves "a case-by-case analysis [of] the link between a plaintiff's harm and a defendant's wrongdoing." *Loeb*, 306 F.3d at 484. In conducting that analysis, courts may consider:

> (1) The causal connection between the alleged antitrust violation and the harm to the plaintiff;
> (2) Improper motive;
> (3) Whether the injury was of a type that Congress sought to redress with the antitrust laws;
> (4) The directness between the injury and the market restraint;
> (5) The speculative nature of the damages; and
> (6) The risk of duplicate recovery or complex damage apportionment.

---

[9] The Seventh Circuit has noted its concern with the term "antitrust standing" given "its potential for confusion with Article III standing." *See, e.g.*, *McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*, 937 F.3d 1056, 1063 (7th Cir. 2019) (citing *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 627 (7th Cir. 2003)); *Supreme Auto Transport, LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 743 (7th Cir. 2018) (eschewing the term "antitrust standing" and referring only to "the requirements of bringing a case under the particular statutes involved").

*McGarry*, 937 F.3d at 1065 (citing *Sanner v. Bd. of Trade of City of Chicago*, 62 F.3d 918, 930 (7th Cir. 1995)); *see also AGC*, 459 U.S. at 537–45. "Together, the first three factors relate to what courts commonly refer to as 'antitrust injury.'" *McGarry*, 937 F.3d at 1065 (citations omitted). "The remaining factors address whether the plaintiff is among those who can most efficiently vindicate the purposes of the antitrust laws." *Id.* For injunctive relief, the fifth and sixth factors drop out of the analysis. *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110–11 (1986).

At the outset, Plaintiffs assert that the third *AGC* factor—the type of injury and whether it was one Congress sought to redress—is the "only required" factor. R. 87 at 16. That contention is flawed for two reasons. First, the *AGC* factors are not "strict requirements nor exclusive analytical tools." *McGarry*, 937 F.3d at 1065. Rather they are guides that "illustrate the areas of inquiry that may be relevant to a case-specific evaluation of 'the plaintiff's harm, the alleged wrongdoing by the defendant, and the relationship between them.'" *Id.* Second, Seventh Circuit case law is clear that pleading antitrust injury is not alone sufficient; a plaintiff must also demonstrate that it can "efficiently vindicate the purposes of the antitrust laws." *Id.* (quoting *Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 716 (7th Cir. 2006)).

Defendants argue Plaintiffs are not the proper plaintiffs to bring this suit because their alleged harm is too remote from the antitrust violation, there are more immediate victims, and the damages are impermissibly speculative. The Court takes each argument in turn.

### 1. Chain of Causation

Defendants first argue that Plaintiffs cannot show a direct causal link between the merger and the elevated prices that they allegedly paid because Plaintiffs are not customers of the Merging Entities and AT&T and Verizon set their own prices.

As a preliminary matter, the idea that Plaintiffs cannot satisfy the requisite causal link because they are not customers of the Merging Entities runs headlong into the Seventh Circuit's decision in *Gypsum*. In *Gypsum*, the plaintiff and the defendant joint-venture both bought transport services from interstate pipelines. 350 F.3d at 625–26. The plaintiff alleged that the defendant used its control of a substantial fraction of the transport capacity to monopolize and enabled the pipelines to charge more to the plaintiff. *Id.* at 626. The Seventh Circuit held that the plaintiff adequately alleged antitrust injury at the pleading stage even though it was not a customer of the joint venture, and that *Illinois Brick* did not preclude its claims. *Id.* at 626–27. The Court then stated that when "[a] cartel cuts output, which elevates price throughout the market[,] customers of fringe firms (sellers that have not joined the cartel) pay this higher price, and thus suffer antitrust injury." *Id.* at 627. The Court explained "that the buyers from fringe firms suffer antitrust injury, that their complaints cannot be dismissed at the outset under the *Illinois Brick* doctrine, and that the potential to establish injury through elevation of price in the affected market satisfies any distinct 'antitrust standing' requirement." *Id.* at 627–28. The parties disagree on what the last phrase requires a plaintiff to do to adequately plead

antitrust standing.[10] In this Court's view, it means what it says. In a cartel case, an allegation that a fringe firm customer was injured through the elevation of price in the market where the cartel cut output is sufficient to satisfy antitrust standing.

Unlike *Gypsum*, this is not a cartel case. It does not involve an agreement to cut output, nor an agreement to fix prices. *See Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588, 594–95 (7th Cir. 1984) ("An agreement on output also equates to a price-fixing agreement."). In addition, AT&T and Verizon are not fringe firms to the merged T-Mobile. *See* R. 1 ¶ 50 (alleging that the merger "le[ft] a market landscape of three dominant firms of nearly the same scale"). But at the very least, *Gypsum* makes clear that the fact that Plaintiffs did not transact directly with the Merging Entities is not automatically a basis for dismissal. Rather, the focus remains on Plaintiffs' harm, the alleged wrongdoing by the Merging Entities, and the relationship between them. *See AGC*, 459 U.S. at 535.

Here, taking Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the Court finds that they plausibly allege that their injuries flowed directly from the merger. Plaintiffs do not simply allege in a conclusory fashion that the merger caused them to pay more than they would have otherwise. Rather, Plaintiffs allege *how* the merger reduced competition in the retail mobile wireless market and as a result, market participants AT&T and Verizon charged higher prices

---

[10] Defendants' contention that *Gypsum* did not address antitrust standing is belied by the Seventh's Circuit's explicit reference to "antitrust standing" and *AGC*. 350 F.3d at 627.

than they would have otherwise. R. 1 ¶ 122. The merger consolidated an already highly-concentrated market from four to three mobile network operators. *Id.* ¶¶ 31, 32, 50. The merger also eliminated the two "maverick" firms that were responsible for much of the price competition and innovation among the carriers. *Id.* ¶¶ 35–37, 50. Before the merger, T-Mobile and Sprint aggressively competed with the bigger brands (AT&T and Verizon) through offering discounts and new plans. *Id.* ¶¶ 39–40. As alleged, Sprint was financially viable and would have continued to compete vigorously absent the merger. *Id.* ¶¶ 59–62, 76. Additionally, Plaintiffs allege that by making the newly merged T-Mobile's scale and cost structure more like the other two big players, the merger curtailed its incentive to compete. *Id.* ¶ 57. In a market with high barriers to entry, transparent pricing, and signaling between competitors, these structural changes exacerbated the risk of price coordination. *Id.* ¶¶ 34, 53–57. Moreover, in the two years since the merger, DISH has failed to fill Sprint's role as an active fourth competitor, instead losing hundreds of thousands of subscribers. *Id.* ¶¶ 76, 90–91

Accordingly, Plaintiffs allege, as soon as the merger was signed, AT&T and Verizon began slowing their competitive efforts, including their aggressiveness in responding to prices. *Id.* ¶ 81. This manifested in stagnant pricing, low customer attrition or "churn" rates, increasing wireless service revenue, and decreasing offers of plan changes. *Id.* ¶¶ 82–85. Bureau of Labor Statistics ("BLS") data in the complaint shows a steady decline in quality-adjusted pricing for consumer wireless services in the years leading up to the merger and a sharp jump a few months after

the merger closed. *Id.* ¶ 80. Further, AT&T and Verizon increased their prices in the spring of 2022. *Id.* ¶¶ 106–08.

Defendants argue that the complaint itself attributes the 2022 price increases to other causes. They highlight a handful of the hundreds of footnotes in the complaint that cite news articles and earnings transcripts discussing price increases in the context of inflation, R. 1 ¶¶ 106–08 nn.167–70, and otherwise acknowledge the COVID-19 pandemic and the shift from 4G to 5G, *id.* ¶¶ 82 n.123; 83 n.125. But the Court does not understand Plaintiffs to be alleging that the 2022 price increases were caused by these other factors. Rather, Plaintiffs' allegations—read altogether and drawing all reasonable inferences in their favor—attribute those price increases to the merger. Nor are Plaintiffs required to prove causation (or any other element of their claims) at the pleading stage. "A court's role in evaluating pleadings is to decide whether the plaintiff's allegations are plausible—not which side's version is more probable." *Hughes v. Nw. Univ.*, 63 F.4th 615, 630 (7th Cir. 2023); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[I]t is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences."). For that reason, the mere possibility that other factors affected AT&T and Verizon's pricing decisions does not negate the plausibility that the merger proximately caused those two companies to stop lowering their prices, stop offering new promotions, and start raising their

prices.[11] Defendants likewise argue that the length of time between the date of the merger and the 2022 price increases undermines any contention that the former caused the latter. Perhaps it is true that the plausibility of Plaintiffs' allegations decreases as the length of time increases. But again, Plaintiffs do not have to prove their case in the complaint. Defendants have presented no argument that undermines the *plausibility* of Plaintiffs' allegation that the merger's effects lasted several years. Taking the allegations together, and viewing them in Plaintiffs' favor, Plaintiffs have adequately alleged that their injury (elevated prices) is a direct effect of the merger.

Defendants argue that without a rigid linkage between AT&T, Verizon, and T-Mobile's pricing, Plaintiffs cannot show that their injuries are "surely attributable" to the merger, as described in *Lexmark*. In *Lexmark*, the defendant's counterclaim alleged that the plaintiff's false advertising injured the defendant's customers' business, thereby injuring the defendant. 572 U.S. at 120–21. While acknowledging the "general tendency not to stretch proximate causation beyond the first step," *id.* at 139, the Supreme Court nevertheless held that this indirect injury was sufficiently proximate to state a claim because the defendant's reduced sales "follow[ed] more or less automatically" from its customer's reduced sales, "without the need for speculative proceedings or intricate, uncertain inquiries," *id.* at 140.

---

[11] This conclusion would not change if the Court were to take judicial notice of the full content of the two articles cited in the footnotes about Verizon's price increases that Defendants request. *See* R. 79-1 ¶¶ 5–6.

But Plaintiffs' injury is not analogous to the indirect injury in *Lexmark*. Plaintiffs do not claim, for example, that the merger harmed AT&T and Verizon, which in turn harmed them as customers of those companies. Courts have held that such indirect injuries are too remote. *See*, *e.g.*, *AGC*, 459 U.S. at 533 (Union was not a proper plaintiff because its injuries were an "indirect result" of the harm suffered by select union contractors whose business was diverted to non-union contractors); *cf. McGarry*, 937 F.3d at 1065 (injury was too remote where price-fixing conspiracy allegedly caused an estate to pay a higher fee, which reduced the funds available in the estate to pay claims, which caused creditors to receive a smaller distribution); *Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1378 (7th Cir. 1987) ("Merely derivative injuries sustained by employees, officers, stockholders, and creditors of an injured company do not constitute "antitrust injury" sufficient to confer antitrust standing."). Instead, Plaintiffs allege that the merger curbed competition in the retail wireless market, which caused market-wide prices to be higher than they would have been otherwise. And they allege that as consumers in that market, Plaintiffs themselves were injured by paying those elevated prices.

By the same token, Defendants' reliance on *Loeb* for a rigid price linkage requirement is unavailing. In *Loeb*, purchasers of copper on the cash market alleged that copper merchants and brokers conspired to manipulate the price of copper on the futures market. 306 F.3d at 474–78. Applying *AGC*, the Seventh Circuit held that one of the purchasers established that its injury was sufficiently direct because the price it paid to its suppliers was "directly and explicitly linked" to the price the

29

defendants manipulated in the futures market. *Id.* at 489. But the Court reached that conclusion after a close examination of the record following discovery, and there is no such record in this case as of yet. Further, *Loeb* addressed whether anticompetitive conduct in one market (copper futures) proximately caused injury in another market (copper wire). In that scenario, it was important that "one market tends to move in lockstep with the other." *Sanner*, 62 F.3d at 929. Here, however, Plaintiffs are direct purchasers in the same market that was allegedly affected by the merger. *Loeb*'s facts and holdings do not warrant dismissal here.[12]

Defendants' reliance on several out-of-circuit cases fares no better. The one bearing the closest resemblance to this case also involved an antitrust claim in the merger context. In *Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*, operators of laser eye clinics who did not purchase equipment from the merging parties, alleged that a merger caused them to pay higher prices for certain equipment to a non-merging supplier in the same market. 116 F. Supp. 2d 1159, 1167 (C.D. Cal. 2000) The Court held that any injury suffered was indirect due to the "necessary intervening actions" taken by the non-defendant supplier, which had no part in the merger. *Id.* at 1169. However, *Garabet* was decided on summary judgment. Likewise, Defendants cite other cases where courts granted summary judgment to defendants who did not transact directly with plaintiffs. *E.g.*, *In re Aluminum Warehousing*

---

[12] *Marion Diagnostic Ctr. LLC v. Becton Dickinson & Co.* also does not help Defendants on this point because although the Seventh Circuit affirmed dismissal for lack of antitrust standing, it did so on *Illinois Brick* grounds. 29 F.4th 337, 347–48 (7th Cir. 2022).

*Antitrust Litig.*, 520 F. Supp. 3d 455, 486 (S.D.N.Y. 2021); *In re Online DVD Rental Antitrust Litig.*, No. M 09–2029, 2011 WL 1629663, at *7 (N.D. Cal. Apr. 29, 2011). To the extent there is factual similarity between these cases and this suit, the fact that they were decided on summary judgment suggests that Plaintiffs' claims require discovery and should survive this Rule 12(b)(6) motion. It may be that discovery reveals that the prices paid by AT&T and Verizon customers following the merger were wholly independent of and unaffected by the merger. But that is a question of fact, and taking the allegations as true and drawing all reasonable inferences, the Court cannot reach that conclusion at this juncture.

Relatedly, *In re American Express Anti-Steering Rules Antitrust Litig.* was an antitrust suit brought against American Express ("Amex") by a class of merchants who did not accept Amex credit cards. 19 F.4th 127, 135 (2021). They alleged the "anti-steering" rules in Amex's contracts with Amex-accepting merchants, combined with Amex's higher fees, created a price umbrella under which other credit card companies increased their fees. *Id.* at 136, 138. The Second Circuit held that the antitrust violation was a remote cause, not a direct cause, of their injuries. *Id.* at 141. The court explained that "at the first step, Amex restrained trade to raise its own prices; only later did its competitors follow suit." *Id.* at 135. Amex "enabling" other companies to raise their own fees was insufficient to establish a direct causal link. *Id.* at 141. However, *American Express* did not involve a merger. Plaintiffs do not allege that at the "first step," the newly merged T-Mobile raised prices, which then "enabled" AT&T and Verizon to raise their prices too. Rather, Plaintiffs allege that at the "first

31

step," the merger consolidated and reduced competition in the entire market, which drove the remaining firms, including AT&T and Verizon, to stop lowering their prices, stop offering new promotions, and then subsequently increase their prices. That is sufficient to plead a causal link at this stage.

## 2. More Immediate Victims

Defendants further argue that T-Mobile customers are the more immediate victims of the alleged antitrust violation, and therefore better-situated enforcers. In *AGC*, the Supreme Court explained that "the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party . . . to perform the office of a private attorney general." 459 U.S. at 542.

The problem for Defendants is that T-Mobile customers were not any more directly injured by the merger than AT&T or Verizon customers. As alleged, customers of these three companies were all injured at the "first step." *Lexmark*, 572 U.S. at 139 (citation omitted). All are direct consumers in the market where the merger allegedly increased concentration and reduced competition. *Cf. Loeb*, 306 F.3d at 484 (scrap dealers were not proper plaintiffs because they were "quintessential examples of indirect victims" who were further down an "exceedingly complex" distribution chain); *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 598 (7th Cir. 1995) (suppliers of rental space to grocery stores were not proper plaintiffs to challenge alleged monopolistic activities in retail grocery market as compared to grocery consumers); *Leeder v. Nat'l Ass'n of Realtors*, 601 F. Supp. 3d 301, 313 (N.D. Ill. 2022)

(home buyers were not proper plaintiffs because home sellers, "as the direct purchasers of buyer-broker services," were necessarily more directly injured by defendants' alleged antitrust violations).[13] Plaintiffs have alleged that they are sufficiently immediate victims.

### 3. Speculative Nature of Damages

Defendants also contend that damages are speculative. Given that antitrust litigation necessarily involves a level of complexity, this factor turns on whether damages are "inherently speculative." *Loeb*, 306 F.3d at 493. Put differently, the question is whether a claim "'rests at bottom on some abstract conception or speculative measure of harm.'" *AGC*, 459 U.S. at 543 (quoting *Blue Shield*, 457 U.S. at 475 n.11). That is not the circumstance presented here. Plaintiffs allege that they paid higher prices than they would have paid had the merger not occurred. Both parties can offer proof concerning the pricing of retail wireless services vis-à-vis the merger. Calculating damages may not be an easy exercise. It will likely involve

---

[13] Plaintiffs' argument that they are the *only* enforcers of this antitrust action because T-Mobile customers are subject to an arbitration agreement is without merit. The fact that T-Mobile customers would have to arbitrate their claims may explain why they are not the plaintiffs in this suit, but it does not disqualify them as enforcers. As the Supreme Court explained in *American Express Co. v. Italian Colors Restaurant*, "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." 570 U.S. 228, 236 (2013) (emphasis in original). The class-action waiver "no more eliminates the parties' right to pursue their statutory remedy than did federal law before its adoption of the class action relief." *Id.* In other words, "the individual suit that was considered adequate to ensure 'effective vindication' of a federal right before adoption of class action procedures did not suddenly become 'ineffective vindication' upon their adoption." *Id.* at 236–37. However, the fact that T-Mobile customers may appear the more logical enforcers does not mean they are the only eligible ones.

parsing various factors that played into the pricing decisions of AT&T and Verizon, and considering how the absence of the merger would have affected the prices Plaintiffs paid. But the fact that a damages calculation may require complex analysis does not render it inherently speculative as to warrant dismissal. *Sanner*, 62 F.3d at 930 (rejecting claim that damages analysis requiring expert analysis was "beyond the ken of the federal courts"); *see also Loeb*, 306 F.3d at 493 (rejecting claim that damages were unduly speculative notwithstanding the difficulty in discerning how much of the overcharge was attributable to the price manipulation). As such, this factor does not weigh in favor of dismissal. Even if it did, the "potential difficulty in ascertaining damages is not . . . an *independent* basis for denying standing where it is adequately alleged that a defendant's conduct has proximately injured an interest of the plaintiff's that the statute protects." *Lexmark*, 572 U.S. at 135 (emphasis in original).[14]

In sum, Plaintiffs have adequately alleged antitrust standing.

## B. Anticompetitive Conduct

To state a Section 1 claim, Plaintiffs must plausibly allege that the challenged restraint had "substantial anticompetitive effect[s]." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018). Likewise, to state a Section 7 claim, Plaintiffs must plausibly

---

[14] Defendants also raised in reply and at oral argument that the complexity of this case generally weighs in favor of dismissal. But the *AGC* factors refer to the complexity of damages apportionment, not the complexity of a case generally. *See Loeb*, 305 F.3d at 486, 489. Therefore, to the extent that this case will involve third party discovery, that fact does not contribute one way or the other to whether Plaintiffs have adequately alleged antitrust standing here.

allege "an appreciable danger" of anticompetitive effects in the relevant market. *Fed. Trade Comm'n v. Advoc. Health Care Network*, 841 F.3d 460, 467 (7th Cir. 2016) (quoting *Hosp. Corp. of Am. v. Federal Trade Comm'n*, 807 F.2d 1381, 1389 (7th Cir. 1986)). A plaintiff can allege either "direct evidence" or "[i]ndirect evidence" of anticompetitive effects. *Ohio*, 138 S. Ct. at 2284. "Direct evidence" in this context refers to "actual detrimental effects on competition, such as reduced output, increased prices, or decreased quality in the relevant market." *Id.* "Indirect evidence" here refers to "proof of market power plus some evidence that the challenged restraint harms competition." *Id.*

Here, Plaintiffs have adequately alleged direct evidence of anticompetitive effects. First, relying on the BLS data, Plaintiffs point to the steady decline in quality-adjusted pricing leading up to the merger and the sharp jump just a few months after its close. R. 1 ¶ 80. They further allege that AT&T and Verizon slowed their aggressiveness in responding to prices after the merger's announcement and closure, and then increased their prices in 2022. *Id.* ¶¶ 89, 107–08. Further, while Plaintiffs acknowledge the regulatory commitments not to raise the prices of T-Mobile and Sprint legacy plans until certain conditions were met, they allege how T-Mobile took advantage of "loopholes" to increase taxes, fees, and surcharges; pass through increases in the cost of third-party benefits; modify or cancel third-party benefits; and increase the cost of device and headset offerings and protection plans. *Id.* at ¶¶ 89, 102–05.

35

"Even in a concentrated market," however, "the occurrence of a price increase does not in itself permit a rational inference of . . . supracompetitive pricing." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 237 (1993). A plaintiff must allege that a price increase is traceable to a restraint on trade. *Intel Corp. v. Fortress Inv. Grp. LLC*, No. 21-16817, 2022 WL 16756365, at *2 (9th Cir. Nov. 8, 2022). In Defendants' view, Plaintiffs do not plausibly allege that the elevated prices were caused by the merger because they ignore alternative explanations for the price increases. True, "[i]f the allegations give rise to an obvious alternative explanation then the complaint may stop short of the line between possibility and plausibility of entitlement to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (cleaned up) (citing *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 557, 567). Defendants offer a variety of alternative explanations, and in so arguing, ask this Court to take judicial notice of 22 documents either cited in the complaint or part of the public record. *See* R. 79-1. But even if this Court were to consider all of those documents in their entirety, the alternative explanations proffered are not so obvious that they render the inference that the merger caused elevated prices unreasonable. *See Hughes*, 63 F.4th at 629 ("[W]hether a claim survives dismissal necessarily depends on the strength or obviousness of the alternative explanation that the defendant provides.").

Beginning with the BLS data, Defendants emphasize that the data does not account for the shift from 4G to 5G. In their view, the observed price jump is entirely explained by the increases in quality from the 5G services. It may be that, as a general

matter, higher-quality goods are more expensive, but it is not at all clear that the same axiom applies in the context of 4G versus 5G cell services, or that the timing or magnitude of that shift corresponds with the observable jump in the BLS data. Nor does the proposed explanation overcome the close temporal connection between the merger closing and the jump in price. That Plaintiffs did not include allegations detailing specific price increases by each of the carriers during this time does not negate the reasonable inference that market-wide price increases flowed from the merger.

Relatedly, Defendants highlight how regulatory commitments prevent T-Mobile from raising prices on legacy rate plans until 2025. But that does not mean that T-Mobile customers did not pay higher prices, whether by having to separately pay taxes and fees that were previously included in the plan prices, paying new fees and surcharges, or paying more for device protection plans or accessories. The fact that certain of T-Mobile's actions may have been allowed under the FCC's order does not mean that T-Mobile consumers did not pay more as a result of the merger or preclude private enforcement. Likewise, Defendants contend that the AT&T and Verizon's price increases in 2022 are explained by inflation and increasing cost pressures. But, as described above, AT&T and Verizon representatives publicly discussing increasing prices in the context of inflation and cost pressures does not make it implausible that those price increases derived from the merger. Defendants also contend that the length of time between the 2022 price increases and the merger undermine any plausible causal connection between the two. As this Court explained

previously, Defendants point to no rule—legal, economic, or otherwise—that limits the anticompetitive effects of a merger to certain period of time less than two years. And given the large structural changes effectuated by the merger, it is reasonable to infer that the effects would continue in the years that followed its close.

Defendants lastly contend that Plaintiffs fail to account for the COVID-19 pandemic, which began in March 2020. But as with prior alternative explanations, it is far from obvious that COVID-19 would have caused consumers to pay higher prices for wireless services. At bottom, "[a]sking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough factual matter to suggest" that the alleged effects are traceable to merger. *Twombly*, 550 U.S. at 545. Plaintiffs have provided sufficient factual matter here.

The cases relied upon by Defendants do not support a different outcome. Both *Ohio* and *Brooke* involved jury trials with the benefit of a full evidentiary record; neither addressed what a plaintiff must allege at the pleading stage. Similarly, while *In re AMR* challenged plaintiffs' reliance on the timing of events to prove causation, that case also arose after a trial on the merits and dealt with evidence, not allegations. 625 B.R. 215, 266 (Bank. S.D.N.Y. 2021). Lastly, while *Fortress* involved a challenge to anticompetitive effects at the pleading stage, the plaintiff failed to point to any instance where it actually paid more after the alleged antitrust violation. 2022 WL 16756365, at *2. As detailed above, that is not the case here. Therefore, Plaintiffs plausibly allege direct evidence of anticompetitive effects. As such, the Court need

not reach the parties' arguments regarding indirect evidence of anticompetitive effects.

### C. Laches

Defendants further argue that Plaintiffs' claim for divestiture is barred by laches. Laches "bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002). Accordingly, Defendants must demonstrate "(1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999).

Beginning with the issue of reasonable diligence, many courts use the Clayton Act's four-year statute of limitations as a "guideline" for evaluating whether a plaintiff acted with reasonable diligence in bringing the suit. *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014); *see also New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 35 (D.D.C. 2021) (citing cases). That practice is "particularly appropriate" here because the typical remedy of divestiture, "if ordered well after the merger has closed, will usually prejudice the defendant by inflicting substantial 'hardship and competitive disadvantage,' especially where its 'business operations [have been] combined' with those of the acquired company." *Facebook*, 549 F. Supp. 3d at 35 (quoting *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1235 (8th Cir. 2010)).

Plaintiffs are well within the statute of limitations. Plaintiffs filed this suit in June 2022, a little over two years after the merger was executed. Defendants urge

this Court to calculate the time to file from the date of the merger's announcement, April 2018, not its consummation, April 2020. But generally, "[a] Section 7 action challenging the initial acquisition of another company's stocks or assets accrues at the time of the merger or acquisition," *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1050 (8th Cir. 2000), giving a plaintiff four years from that time to sue. *See also Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 604 (6th Cir. 2014) (same); Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application, ¶ 320c5 (agreeing with this rule on policy grounds).

That the merger was publicly announced, or was subject to agency and federal court review, does not persuade this Court otherwise. Indeed, as Defendants recount, the Merging Entities made various commitments over the course of two years of review. And Plaintiffs' suit is focused on the effects of the merger, subject to those conditions, after it was effectuated in April 2020. For those reasons, the Court respectfully disagrees with those cases finding a lack of reasonable diligence where there were delays shorter than four years. *E.g.*, *Ginsburg*, 623 F.3d at 1235 (suit filed two months after merger announcement and before closing); *Garabet*, 116 F. Supp. 2d at 1173 (suit filed six months after merger announcement); *Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118, 1124 (N.D. Cal. 2011) (suit filed one day after closing). Because the Court finds that Plaintiffs have acted with reasonable diligence in bringing this suit, the Court leaves for another time the issue of the prejudice that would result from divestiture.

## Conclusion

For the foregoing reasons, SBG's motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(3) [76] is granted, and Defendants' motion to dismiss pursuant to Rule 12(b)(6) [78] is denied.


ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: November 2, 2023

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY   DALE,   BRETT   JACKSON,
JOHNNA  FOX,  BENJAMIN  BORROWMAN,
ANN  LAMBERT,  ROBERT  ANDERSON, and
CHAD   HOHENBERY,   on   behalf   of
themselves  and  all  others  similarly
situated,

                Plaintiffs,

      v.

DEUTSCHE TELEKOM AG, et al.,

              Defendants.

No. 22 C 3189

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

The Court denied T-Mobile's motion to dismiss on November 2, 2023. T-Mobile now asks the Court to certify that order for interlocutory appeal. For the following reasons, T-Mobile's motion [120] is granted.

**Background**

In April 2018, T-Mobile and Sprint announced their plans to merge. Two years later, after close scrutiny by the Federal Communications Commission, the U.S. Department of Justice Antitrust Division, 14 State Attorneys General, two federal judges, and others, the merger closed. And two years after that, Plaintiffs brought this putative class action on behalf of themselves and other AT&T and Verizon customers alleging that the merger reduced competition and caused them to pay billions more for wireless services than they would have had to pay otherwise. With

1

this action, Plaintiffs seek to unwind the merger, create a new fourth competitor in the market, and recover damages for overcharges they allegedly paid.

T-Mobile filed a motion to dismiss for lack of antitrust standing and on other grounds, which the Court denied. *See* R. 114 ("Order"). T-Mobile now moves to certify the issue of antitrust standing for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Chamber of Commerce of the United States of America and the CTIA – The Wireless Association filed amicus briefs. *See* R. 135, 141.[1]

## Discussion

T-Mobile seeks to challenge on interlocutory appeal this Court's holding that Plaintiffs adequately alleged standing under the antitrust laws. Specifically, Defendant seeks to certify the question of whether Plaintiffs, who are customers of AT&T and Verizon, plausibly alleged antitrust standing to challenge the merger of T-Mobile and Sprint.

A district court follows "four statutory criteria" in determining whether a section 1292(b) petition should be granted: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the

---

[1] Plaintiffs challenge the impartiality of the *amici*. But "the fiction that an *amicus* acts as a neutral information broker, and not an advocate, is long gone," and "even a friend of the court interested in a particular outcome can contribute in clear and distinct ways[.]" *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 976 F.3d 761, 763 (7th Cir. 2020). Here, the Chamber of Commerce and the CTIA "[p]rovid[e] practical perspectives on the consequences of potential outcomes," *id.*, namely the discovery expense to non-parties and the pressure to settle antitrust litigation. The Court granted the motions for leave to file the amicus briefs on that basis, but ultimately, neither brief sways the Court one way or the other on the contested issues. Moreover, to the extent CTIA offers facts about the wireless market that go beyond the facts alleged in the complaint, the Court declines to consider them.

litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original).

Plaintiffs do not contest that the question is controlling, in that "interlocutory reversal might save time for the district court, and time and expense for the litigants." *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (quoting 16 Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, Federal Practice and Procedure § 3930, at pp. 159–60 (1977)). Nor do Plaintiffs dispute that the question's resolution will speed up the litigation; if the Seventh Circuit reverses, "the entirety of the litigation in the district court is almost certain to end." *Boone v. Illinois Dep't of Corr.*, 71 F.4th 622, 625 (7th Cir. 2023). As such, the Court examines whether the question is a contestable question of law.

I.     Question of Law

For the purposes of section 1292(b), a "question of law" means a "pure question of law," i.e., "something the court of appeals could decide quickly and cleanly without having to study the record," such as "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz*, 219 F.3d at 677. Whether Plaintiffs have plausibly alleged antitrust standing is such a question.

A motion to dismiss tests the legal sufficiency of a complaint, *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020), and it is well-settled that antitrust standing can be resolved on a motion to dismiss, *Associated Gen. Contractors v. Carpenters* ("*AGC*"), 459 U.S. 519, 545–46 (1983) (district court did not err in dismissing complaint for lack of antitrust standing); *McGarry & McGarry, LLC v.*

*Bankr. Mgmt. Sols., Inc.*, 937 F.3d 1056, 1066 (7th Cir. 2019) (affirming dismissal for lack of antitrust standing).

It is true that, generally, "routine applications of well-settled legal standards to facts alleged in a complaint are [not] appropriate for interlocutory appeal." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010). But here, whether Plaintiffs have plausibly alleged antitrust standing "requires the interpretation, not merely the application, of a legal standard." *Id.* at 625; *see also Boone*, 71 F.4th at 625. Specifically, it requires an interpretation of the "directness" *AGC* factor in the context of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Indeed, *Twombly* "is designed to spare defendants the expense of responding to bulky, burdensome discovery unless the complaint provides enough information to enable an inference that the suit has sufficient merit." *Text Messaging*, 630 F.3d at 625. As in *Text Messaging*, that concern counsels in favor of an interlocutory appeal here. *Id.*

Plaintiffs urge that antitrust standing is not a "pure" question of law, but a mixed question of fact and law. The Court did not make any factual findings in denying T-Mobile's motion to dismiss. Instead, the Court ruled, as a matter of law, that Plaintiffs had antitrust standing based on the factual allegations in the complaint. The Court's remark that discovery might reveal that the higher prices paid by Plaintiffs following the merger were wholly independent of the merger "merely acknowledges the different standards that apply to a Rule 12(b)(6) motion to dismiss and a Rule 56(a) motion for summary judgment." *Hanson v. LeVan*, 967 F.3d

584, 591 (7th Cir. 2020). Accordingly, the question presented is a question of law for the purposes of section 1292(b).

II.     Contestable Question

A question is "contestable" when substantial grounds for a difference of opinion exist. *Ahrenholz*, 219 F.3d at 675. Put differently, "[a] question of law is contestable if there are substantial, conflicting decisions regarding the claimed controlling issue of law or the question is not settled by controlling authority, and there is a substantial likelihood that the district court ruling will be reversed on appeal." *Yost v. Carroll*, No. 20 C 5393, 2022 WL 180153, at *4 (N.D. Ill. Jan. 20, 2022) (citations omitted).

Although the Court believes the Order is rightly decided, there are substantial grounds for a difference of opinion on whether Plaintiffs have plausibly alleged antitrust standing, i.e., a direct link between their harm (higher prices) and the market restraint (the merger), where Plaintiffs are not customers of the merging entities and AT&T and Verizon set their prices. The Court's ruling was based on its interpretation of relevant authority. Section 4 of the Clayton Act limits the class of plaintiffs who can bring actions under that statute to those "whose injuries were proximately caused by a defendant's antitrust violations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (citing *AGC*, 459 U.S. at 532–33). The "general tendency" is "not to stretch proximate causation beyond the first step." *Id.* at 140. On the Court's read, the complaint set forth a plausible theory that AT&T and Verizon customers were injured at the "first step" as direct consumers in the

market where the merger allegedly restrained competition and raised prices. *See generally* Order at 24–32.

According to T-Mobile, the Order misapplies the "first step" principle. In its view, because AT&T and Verizon set their own prices, Plaintiffs' injuries are several steps removed from the T-Mobile-Sprint merger. The higher prices suffered by Plaintiffs are not "surely attributable" to the merger, but instead "purely derivative" of AT&T and Verizon's pricing decisions. *Lexmark*, 572 U.S. at 133, 140. T-Mobile relates this case to *AGC*, where the Supreme Court explained that a union was not a proper plaintiff because its injuries were an "indirect result" of the harm suffered by select union contractors whose business was diverted to non-union contractors. 459 U.S. at 533. Additionally, T-Mobile contends intervening economic factors and business decisions are "obvious alternative explanations" that undermine the plausibility of the direct causal link alleged by Plaintiffs. R. 147 at 9 (quoting *Twombly*, 555 U.S. at 567). This Court found the derivative injuries at issue in *AGC* and other cases distinguishable from the injuries in this case, and explained that the alternative explanations offered by T-Mobile were not so obvious that they undermined the plausibility of the merger directly causing the elevated prices. Order at 27–29, 36–38. The Court believes its interpretation of the relevant standards is the most reasonable, but there is plenty of room for debate.

In fact, both the Second and Eleventh Circuits have taken a different approach at the pleading stage. In *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 136–38 (2d Cir. 2021), merchants who did not accept American Express

("Amex") credit cards alleged that "anti-steering" rules in Amex's contracts with Amex-accepting merchants, along with Amex's higher fees, caused other credit card companies increase their fees. The Second Circuit reasoned that the plaintiffs' fees were set by third parties, not Amex, and held that Amex "enabling" other credit card companies to raise the plaintiff's fees was not a sufficiently direct link to plausibly allege antitrust standing. *Id.* at 140–41. Similarly, in *Austin v. Blue Cross & Blue Shield of Ala.*, 903 F.2d 1385, 1392 (11th Cir. 1990), hospital patients sued an insurer for extracting price concessions from hospitals, which then charged higher prices to other insurers and their policy-holders. The Eleventh Circuit affirmed the dismissal for lack of antitrust standing because the claimed injuries were too remote from the misconduct and dependent on the pricing decisions of third parties. *Id.* at 1392–93. The fact that both the Second and Eleventh Circuits held that similarly-situated plaintiffs could not plausibly allege the requisite direct link shows that reasonable minds could differ on this issue.

Plaintiffs insist that *Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623 (7th Cir. 2003) controls this question. But *Gypsum*'s holding is a narrow one: "[i]n a cartel case, an allegation that a fringe firm customer was injured through the elevation in price in the market where the cartel cut output is sufficient to satisfy antitrust standing." Order at 25. As the Court explained, this is not a cartel case, and AT&T and Verizon are not fringe firms. *Id.* That *Gypsum* did not foreclose the possibility that a plaintiff who does not transact directly with a merging entity has antitrust standing does not mean that *Gypsum* expressly authorizes Plaintiffs' claims here. Additionally, *Gypsum*

was decided years before the clarification of the pleading standard in *Twombly*. The Seventh Circuit has never had occasion to consider whether *Gypsum*'s brief statement that "the potential to establish injury through elevation of price in the affected market satisfies any distinct 'antitrust standing' requirement," 350 F.3d at 628, has continuing force under the modern pleading standard or when applied outside the cartel context. Thus, while *Gypsum* counsels in favor of finding that Plaintiffs have plausibly alleged antitrust standing, it does not preclude reasonable debate.

Because there are substantial grounds for a difference of opinion, and the Seventh Circuit may very well join the Second and Eleventh Circuits and side with T-Mobile, the question posed is contestable for the purpose of section 1292(b).

## Conclusion

For the foregoing reasons, the Court grants T-Mobile's motion and certifies for interlocutory appeal the question of whether Plaintiffs have plausibly alleged antitrust standing.

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: March 27, 2024

8

# EXHIBIT C

# United States District Court
## Northern District of Illinois - CM/ECF NextGen 1.7.1.1 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:22-cv-03189

| | |
|---|---|
| Dale et al v. Deutsche Telekom AG et al | Date Filed: 06/17/2022 |
| Assigned to: Honorable Thomas M. Durkin | Jury Demand: Plaintiff |
| Cause: 15:15 Antitrust Litigation | Nature of Suit: 410 Anti-Trust |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Anthony Dale**    represented by    **Brendan P. Glackin**
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street
29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
Fax: Pro Hac Vice
Email: bglackin@lchb.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric L. Cramer**
Berger Montague PC
1818 Market Street
Suite 3600
Philadelphia, PA 19103
(215) 875-3009
Fax: Pro Hac Vice
Email: ecramer@bm.net
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gary Ivan Smith , Jr.**
Hausfeld
600 Montgomery Street
Ste 3200
San Francisco, CA 94111
415-633-1908
Fax: 415-633-4980
Email: GSmith@hausfeld.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremy Gradwohl**

Berger Montague PC
1818 Market Street
Suite 3600
Philadelphia, PA 19103
(215) 875-5801
Fax: Pro Hac Vice
Email: jgradwohl@bm.net
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua P. Davis**
Berger Montague PC
59A Montford Avenue
Mill Valley, CA 94941
415-215-0962
Fax: 215-875-4604
Email: jdavis@bm.net
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jules A. Ross**
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery St
29th Floor
San Francisco, CA 94111
(415) 956-1000
Fax: Pro Hac Vice
Email: jross@lchb.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyla J Gibboney**
Berger Montague PC
505 Montgomery Street
Suite 625
San Francisco, CA 94111
415-906-1522
Email: kgibboney@bm.net
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lin Yee Chan**
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street
29th Floor
San Francisco, CA 94111
415-956-1000
Fax: Pro Hac Vice
Email: lchan@lchb.com
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marcus Hill Brakefield**
Hausfeld LLP
888 16th St NW
Suite 300
Washington, DC 20006
(202) 953-8190
Fax: Pro Hac Vice
Email: hbrakefield@hausfeld.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Najah Jacobs**
Berger Montague PC
1818 Market Street
Suite 3600
Philadelphia, PA 19103
(215) 875-3059
Fax: Pro Hac Vice
Email: njacobs@bm.net
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas W. Lee**
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street
29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
Fax: Pro Hac Vice
Email: nlee@lchb.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Pollock Julie**
Berger Montague PC
505 Montgomery Street
Suite 625
San Francisco, CA 94111
(415) 906-0684
Fax: Pro Hac Vice
Email: jpollock@bm.net
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert E. Litan**
Berger Montague PC
1001 G Street, NW

Suite 400 East
Washington DC, DC 20001
202-559-9745
Email: rlitan@bm.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah D. Zandi**
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street
29th Floor
San Francisco, CA 94111
(415) 956-1000
Fax: Pro Hac Vice
Email: szandi@lchb.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Swathi Bojedla**
Hausfeld LLP
888 16th Street, NW
Suite 300
Washington, DC 20006
United Sta
(202) 540-7200
Fax: Pro Hac Vice
Email: sbojedla@hausfeld.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth N Flaxman**
Kenneth N. Flaxman, P.C.
200 South Michigan Avenue
Suite 201
Chicago, IL 60604-6107
(312) 427-3200
Fax: Active
Email: knf@kenlaw.com
*ATTORNEY TO BE NOTICED*

**Joel A. Flaxman**
Kenneth N. Flaxman P.C.
200 S Michigan Ave Ste 201
Chicago, IL 60604
(312) 427-3200
Fax: Active
Email: jaf@kenlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brett Jackson**                          represented by **Brendan P. Glackin**
                                           (See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric L. Cramer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremy Gradwohl**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua P. Davis**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jules A. Ross**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyla J Gibboney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lin Yee Chan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marcus Hill Brakefield**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Najah Jacobs**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas W. Lee**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Pollock Julie**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert E. Litan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah D. Zandi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Swathi Bojedla**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth N Flaxman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel A. Flaxman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Johnna Fox**                     represented by **Brendan P. Glackin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric L. Cramer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremy Gradwohl**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua P. Davis**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jules A. Ross**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyla J Gibboney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lin Yee Chan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marcus Hill Brakefield**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Najah Jacobs**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas W. Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Pollock Julie**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert E. Litan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah D. Zandi**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Swathi Bojedla**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth N Flaxman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel A. Flaxman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Benjamin Borrowman**                    represented by  **Brendan P. Glackin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric L. Cramer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremy Gradwohl**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua P. Davis**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jules A. Ross**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyla J Gibboney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lin Yee Chan**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marcus Hill Brakefield**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Najah Jacobs**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas W. Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Pollock Julie**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert E. Litan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah D. Zandi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Swathi Bojedla**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth N Flaxman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel A. Flaxman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ann Lambert**                          represented by  **Brendan P. Glackin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric L. Cramer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremy Gradwohl**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua P. Davis**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jules A. Ross**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyla J Gibboney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lin Yee Chan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marcus Hill Brakefield**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Najah Jacobs**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas W. Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Pollock Julie**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert E. Litan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah D. Zandi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Swathi Bojedla**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth N Flaxman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel A. Flaxman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Anderson**                    represented by **Brendan P. Glackin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric L. Cramer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremy Gradwohl**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua P. Davis**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jules A. Ross**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyla J Gibboney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lin Yee Chan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marcus Hill Brakefield**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Najah Jacobs**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas W. Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Pollock Julie**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert E. Litan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah D. Zandi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Swathi Bojedla**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth N Flaxman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel A. Flaxman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chad Hohenbery**                    represented by **Brendan P. Glackin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric L. Cramer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremy Gradwohl**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua P. Davis**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jules A. Ross**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyla J Gibboney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Lin Yee Chan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marcus Hill Brakefield**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Najah Jacobs**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas W. Lee**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Pollock Julie**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert E. Litan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah D. Zandi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Swathi Bojedla**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth N Flaxman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel A. Flaxman**

(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Deutsche Telekom AG**                    represented by    **Kenneth Michael Kliebard**
*TERMINATED: 03/28/2024*                                     Morgan Lewis & Bockius LLP
                                                             110 N. Wacker Drive
                                                             Suite 2800
                                                             Chicago, IL 60606
                                                             312-324-1000
                                                             Fax: Active
                                                             Email: kenneth.kliebard@morganlewis.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Zachary M. Johns**
                                                             Morgan, Lewis & Bockius LLP
                                                             2222 Market Street
                                                             Philadelphia, PA 19103
                                                             215-963-5340
                                                             Email: zjohns@morganlewis.com
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Elizabeth Brooke Herrington**
                                                             Morgan, Lewis & Bockius LLP
                                                             110 N. Wacker Dr.
                                                             Suite 2800
                                                             Chicago, IL 60606
                                                             (312) 324-1000
                                                             Fax: Active
                                                             Email: beth.herrington@morganlewis.com
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**T-Mobile US, Inc.**                      represented by    **Daniel G. Swanson**
                                                             Gibson Dunn & Crutcher LLP
                                                             333 South Grand Avenue
                                                             46th Floor
                                                             Los Angeles, CA 90071
                                                             (213) 229-7430
                                                             Fax: Pro Hac Vice
                                                             Email: dswanson@gibsondunn.com
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Josh A. Krevitt**
                                                             Gibson Dunn & Crutcher LLP
                                                             200 Park Avenue

New York, NY 10166
212 351 2490
Fax: Pro Hac Vice
Email: jkrevitt@gibsondunn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel Susan Brass**
Gibson, Dunn & Crutcher LLP
One Embarcadero Center
Suite 2600
San Francisco, CA 94111-3715
415-393-8293
Fax: 415-393-8306
Email: rbrass@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rod Stone**
Gibson, Dunn & Crutcher LLP
333 S. Grand Avenue
Suite 4600
Los Angeles, CA 90071
213-229-7256
Fax: Not a member
Email: rstone@gibsondunn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rodney J. Stone**
Moved, No Forwarding Address
Fax: Not a member
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Joseph Smith**
K&l Gates, Llp
70 W. Madison Street
Chicago, IL 60602
(312) 807-4202
Fax: Not a member
Email: brian.j.smith@klgates.com
*ATTORNEY TO BE NOTICED*

**Clifford Charles Histed**
K&L Gates LLP
70 W. Madison Street
Suite 3100
Chicago, IL 60602
(312) 807-4448
Fax: Active
Email: clifford.histed@klgates.com
*ATTORNEY TO BE NOTICED*

**Michael Edward Martinez**
K&L Gates LLP
70 West Madison
Suite 3300
Chicago, IL 60602
(312) 372-1121
Fax: Active
Email: michael.martinez@klgates.com
*ATTORNEY TO BE NOTICED*

**Theodore Joseph Boutrous , Jr.**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
213-229-7804
Fax: 213-229-6804
Email: tboutrous@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Softbank Group Corp.**                    represented by    **Michael B. Miller**
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
(212) 468-8000
Fax: Pro Hac Vice
Email: MBMiller@mofo.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Henry Liu**
Federal Trade Commission
600 Pennsylvania Ave NW
Washington, DC 20580
202-326-3300
Email: hliu@cov.com
*TERMINATED: 07/28/2023*
*PRO HAC VICE*

**Rachel S Morse**
Massey & Gail LLP
50 East Washington Street
Suite 400
Chicago, IL 60602
312-379-0801
Fax: Not a member
Email: rmorse@masseygail.com
*TERMINATED: 10/19/2023*

**Robert Wick**
Covington & Burling Llp

850 Tenth Street, Nw
Washington, DC 20001
(202) 662-5487
Fax: Not a member
Email: rwick@cov.com
*ATTORNEY TO BE NOTICED*

**Suyash Agrawal**
Massey & Gail LLP
50 E Washington Street
Suite 400
Chicago, IL 60602
(312)379-0949
Fax: Active
Email: sagrawal@masseygail.com
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**U.S Chamber of Commerce**          represented by   **Gilbert Dickey**
*U.S. Chamber of Commerce*                            Consovoy McCarthy PLLC
                                                      1600 Wilson Blvd
                                                      Arlington, VA 22209
                                                      (703) 243-9423
                                                      Fax: Pro Hac Vice
                                                      Email: gilbert@consovoymccarthy.com
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Kathleen Smithgall Lane**
                                                      Consovoy McCarthy PLLC
                                                      1600 Wilson Blvd
                                                      Arlington, VA 22209
                                                      (703) 243-9423
                                                      Fax: Pro Hac Vice
                                                      Email: katie@consovoymccarthy.com
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Taylor A. R. Meehan**
                                                      Consovy McCarthy PLLC
                                                      1600 Wilson Blvd.
                                                      Suite 700
                                                      Arlington, VA 22209
                                                      703-243-9423
                                                      Email: taylor@consovoymccarthy.com
                                                      *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**CTIA - The Wireless Association**   represented by   **Melanie Elizabeth Walker**
                                                      DLA Piper LLP US
                                                      2000 Avenue of the Stars
                                                      Suite 400, North Tower

Los Angeles, CA 90067
(310) 595-3130
Fax: Active
Email: melanie.walker@dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter Karanjia**
DLA Piper LLP (US)
500 8th Street, NW
Washington, DC 20004
(202) 799-4135
Fax: Pro Hac Vice
Email: peter.karanjia@dlapiper.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/17/2022 | 1 | COMPLAINT filed by Robert Anderson, Johnna Fox, Chad Hohenbery, Brett Jackson, Benjamin Borrowman, Anthony Dale, Ann Lambert; Jury Demand. Filing fee $ 402, receipt number AILNDC-19574250.(Flaxman, Joel) (Entered: 06/17/2022) |
| 06/17/2022 | 2 | CIVIL Cover Sheet (Flaxman, Joel) (Entered: 06/17/2022) |
| 06/17/2022 | 3 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Joel A. Flaxman (Flaxman, Joel) (Entered: 06/17/2022) |
| 06/17/2022 | | CASE ASSIGNED to the Honorable Thomas M. Durkin. Designated as Magistrate Judge the Honorable Jeffrey Cole. Case assignment: Random assignment. (kra, ) (Entered: 06/17/2022) |
| 06/17/2022 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (kra, ) (Entered: 06/17/2022) |
| 06/17/2022 | 4 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Kenneth N Flaxman (Flaxman, Kenneth) (Entered: 06/17/2022) |
| 06/17/2022 | 5 | MINUTE entry before the Honorable Thomas M. Durkin: By 8/26/2022, the parties are to file a joint status report. The parties may refer to the format detailed on the Court's website under New and Reassigned cases. Mailed notice. (ecw, ) (Entered: 06/17/2022) |
| 06/24/2022 | 6 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19594278. (Chan, Lin) (Entered: 06/24/2022) |
| 06/24/2022 | 7 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19594440. (Zandi, Sarah) (Entered: 06/24/2022) |

| 06/24/2022 | 8 | MINUTE entry before the Honorable Thomas M. Durkin: Motions to appear pro hac vice 6 7 are granted. Attorneys Lin Yee Chan and Sarah D. Zandi for plaintiffs added. Mailed notice. (ecw, ) (Entered: 06/24/2022) |
|---|---|---|
| 06/27/2022 | 9 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19596761. (Litan, Robert) (Entered: 06/27/2022) |
| 06/27/2022 | 10 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to appear pro hac vice 9 is granted. Attorney Robert E. Litan for plaintiffs added. Mailed notice. (ecw, ) (Entered: 06/27/2022) |
| 06/27/2022 | 11 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Lin Yee Chan (Chan, Lin) (Entered: 06/27/2022) |
| 06/27/2022 | 12 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Sarah D. Zandi (Zandi, Sarah) (Entered: 06/27/2022) |
| 06/27/2022 | 13 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Robert E. Litan (Litan, Robert) (Entered: 06/27/2022) |
| 07/01/2022 | 14 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19616826. (Lee, Nicholas) (Entered: 07/01/2022) |
| 07/01/2022 | 15 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to appear pro hac vice 14 is granted. Attorney Nicholas W. Lee for plaintiffs added. Mailed notice. (ecw, ) (Entered: 07/01/2022) |
| 07/01/2022 | 16 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19616976. (Glackin, Brendan) (Entered: 07/01/2022) |
| 07/01/2022 | 17 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to appear pro hac vice 16 is granted. Attorney Brendan P. Glackin for plaintiffs added. Mailed notice. (ecw, ) (Entered: 07/01/2022) |
| 07/01/2022 | 18 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Brendan P. Glackin (Glackin, Brendan) (Entered: 07/01/2022) |
| 07/01/2022 | 19 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Nicholas W. Lee (Lee, Nicholas) (Entered: 07/01/2022) |
| 07/05/2022 | 20 | AFFIDAVIT of Service filed by Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert regarding Complaint; Waiver of the Service of Summons (Copy 1); Waiver of the Service of Summons (Copy 2); Notice of Lawsuit and Request to Waive Service of Summons; and Civil Cover Sheet. served on T-Mobile US, Inc. on June 22, 2022 (Zandi, Sarah) (Entered: 07/05/2022) |
| 07/08/2022 | | SUMMONS Issued as to Defendant Softbank Group Corp. (emc, ) (Entered: 07/08/2022) |
| 07/22/2022 | | SUMMONS Issued as to Defendant T-Mobile US, Inc. (ak, ) (Entered: 07/22/2022) |
| 08/11/2022 | 21 | MOTION by Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann LambertMotion to Appoint International |

| | | |
|---|---|---|
| | | Process Server (Attachments: # 1 Declaration of Brendan P. Glackin)(Glackin, Brendan) (Entered: 08/11/2022) |
| 08/11/2022 | 22 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to Appoint International Process Server 21 is granted. Mailed notice. (ecw, ) (Entered: 08/11/2022) |
| 08/11/2022 | 23 | ORDER Appointing International Process Server. Signed by the Honorable Thomas M. Durkin on 8/11/2022. Mailed notice. (ecw, ) (Entered: 08/11/2022) |
| 08/12/2022 | | SUMMONS Issued as to Defendants Deutsche Telekom AG, (mbh, ) Modified on 8/12/2022 (sxh, ). (Entered: 08/12/2022) |
| 08/12/2022 | | ENTERED IN ERROR Modified on 8/12/2022 (sxh, ). (Entered: 08/12/2022) |
| 08/12/2022 | 24 | NOTICE of Correction regarding SUMMONS ISSUED entry. (sxh, ) (Entered: 08/12/2022) |
| 08/15/2022 | 25 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19744507. *for T-Mobile, Inc.* (Brass, Rachel) (Entered: 08/15/2022) |
| 08/15/2022 | 26 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19744574. *for T-Mobile, Inc.* (Stone, Rod) (Entered: 08/15/2022) |
| 08/15/2022 | 27 | ATTORNEY Appearance for Defendant T-Mobile US, Inc. by Michael Edward Martinez (Martinez, Michael) (Entered: 08/15/2022) |
| 08/15/2022 | 28 | ATTORNEY Appearance for Defendant T-Mobile US, Inc. by Clifford Charles Histed (Histed, Clifford) (Entered: 08/15/2022) |
| 08/15/2022 | 29 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19744696. *for T-Mobile, Inc.* (Swanson, Daniel) (Entered: 08/15/2022) |
| 08/17/2022 | 30 | MINUTE entry before the Honorable Thomas M. Durkin: Motions to appear pro hac vice 25 26 29 are granted. Attorneys Daniel G. Swanson, Rodney J. Stone, Rachel Susan Brass for T-Mobile US, Inc. added. Mailed notice. (ecw, ) (Entered: 08/17/2022) |
| 08/17/2022 | 31 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19752845. *for T-Mobile US, Inc.* (Krevitt, Josh) (Entered: 08/17/2022) |
| 08/18/2022 | | SUMMONS Issued as to Defendants Deutsche Telekom AG, Softbank Group Corp., T-Mobile US, Inc. (smb, ) (Entered: 08/18/2022) |
| 08/18/2022 | 32 | Stipulated Motion Regarding Extension of Deadline to Respond to Complaint and Briefing Schedule and Page Limits for Defendant T-Mobile US, Inc.'s Motion to Dismiss by T-Mobile US, Inc. (Attachments: # 1 Exhibit Text of Proposed Order)(Histed, Clifford) (Entered: 08/18/2022) |
| 08/18/2022 | 33 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to appear pro hac vice 31 is granted. Attorney Josh A. Krevitt for T-Mobile US, Inc. added. Mailed notice. (ecw, ) (Entered: 08/18/2022) |
| 08/18/2022 | 34 | MINUTE entry before the Honorable Thomas M. Durkin: The parties have agreed that T-Mobile is to answer or otherwise respond to the Complaint by 9/26/2022. The parties have further agreed that T-Mobile's Motion to Dismiss is limited to 40 pages and that Plaintiffs' Opposition to T-Mobile's Motion to Dismiss is due by 11/22/2022 and is limited to 40 pages. T-Mobile's Reply in Support of its Motion to Dismiss is due by 12/22/2022 and is limited to 20 pages. The 8/26/2022 joint status report deadline is extended to 10/11/2022. Mailed notice. (ecw, ) (Entered: 08/18/2022) |
| 08/19/2022 | 35 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC- |

| | | |
|---|---|---|
| | | 19762449. *for T-Mobile US, Inc.* (Boutrous, Theodore) (Entered: 08/19/2022) |
| 08/19/2022 | 36 | ATTORNEY Appearance for Defendant T-Mobile US, Inc. by Josh A. Krevitt (Krevitt, Josh) (Entered: 08/19/2022) |
| 08/19/2022 | 37 | ATTORNEY Appearance for Defendant T-Mobile US, Inc. by Rachel Susan Brass (Brass, Rachel) (Entered: 08/19/2022) |
| 08/19/2022 | 38 | ATTORNEY Appearance for Defendant T-Mobile US, Inc. by Rod Stone (Stone, Rod) (Entered: 08/19/2022) |
| 08/19/2022 | 39 | ATTORNEY Appearance for Defendant T-Mobile US, Inc. by Daniel G. Swanson (Swanson, Daniel) (Entered: 08/19/2022) |
| 08/22/2022 | 40 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to appear pro hac vice 35 is granted. Attorney Theodore Joseph Boutrous, Jr for T-Mobile US, Inc. added. Mailed notice. (ecw, ) (Entered: 08/22/2022) |
| 08/22/2022 | 41 | ATTORNEY Appearance for Defendant T-Mobile US, Inc. by Theodore Joseph Boutrous, Jr (Boutrous, Theodore) (Entered: 08/22/2022) |
| 08/23/2022 | 42 | MOTION by Defendant T-Mobile US, Inc. to transfer case (Attachments: # 1 Agreed Briefing Schedule)(Krevitt, Josh) (Entered: 08/23/2022) |
| 08/23/2022 | 43 | MEMORANDUM by T-Mobile US, Inc. in support of motion to transfer case 42 (Krevitt, Josh) (Entered: 08/23/2022) |
| 08/23/2022 | 44 | DECLARATION of Rachel S. Brass regarding motion to transfer case 42 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13)(Krevitt, Josh) (Entered: 08/23/2022) |
| 08/24/2022 | 45 | MINUTE entry before the Honorable Thomas M. Durkin: The parties have agreed to the following briefing schedule as to the motion to transfer venue 42 : response is due by 9/19/2022; reply is due by 9/30/2022. Mailed notice. (ecw, ) (Entered: 08/24/2022) |
| 08/24/2022 | 46 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19771742. (Cramer, Eric) (Entered: 08/24/2022) |
| 08/24/2022 | 47 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19772004. (Jacobs, Najah) (Entered: 08/24/2022) |
| 08/24/2022 | 48 | MINUTE entry before the Honorable Thomas M. Durkin: Motions to appear pro hac vice 46 47 are granted. Attorneys Eric L. Cramer and Najah Jacobs for Anthony Dale, et al. and the proposed Class added. Mailed notice. (ecw, ) (Entered: 08/24/2022) |
| 08/24/2022 | 49 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Eric L. Cramer (Cramer, Eric) (Entered: 08/24/2022) |
| 08/24/2022 | 50 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Najah Jacobs (Jacobs, Najah) (Entered: 08/24/2022) |
| 08/26/2022 | 51 | MOTION by Defendant T-Mobile US, Inc. to stay *pending service of process on all defendants* (Attachments: # 1 Agreed Briefing Schedule)(Krevitt, Josh) (Entered: 08/26/2022) |
| 08/26/2022 | 52 | MEMORANDUM by T-Mobile US, Inc. in support of motion to stay 51 *pending service of process on all defendants* (Krevitt, Josh) (Entered: 08/26/2022) |

| 08/26/2022 | 53 | DECLARATION of Rachel S. Brass regarding motion to stay 51 *pending service of process on all defendants* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Krevitt, Josh) (Entered: 08/26/2022) |
|---|---|---|
| 08/29/2022 | 54 | MINUTE entry before the Honorable Thomas M. Durkin: The parties have agreed to the following briefing schedule for T-Mobile's Motion to Stay Pending Service of Process on All Defendants 51 : Response is due by 9/30/2022; Reply is due by 10/18/2022. The 10/11/2022 joint status report deadline is vacated. Mailed notice. (ecw, ) (Entered: 08/29/2022) |
| 08/30/2022 | 55 | MINUTE entry before the Honorable Thomas M. Durkin: A telephonic status hearing is set for 9/6/2022 at 9:00 a.m. To join the telephone conference, dial 877-402-9757, Access Code 4410831. Members of the public and media will be able to call in to listen to this hearing. Please be sure to keep your phone on mute when you are not speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ecw, ) (Entered: 08/30/2022) |
| 09/06/2022 | 56 | MINUTE entry before the Honorable Thomas M. Durkin: Telephonic status hearing held on 9/6/2022. Defendants will not be required to file their responsive pleading to plaintiffs' complaint while the motion to transfer is pending. The 9/26/2022 deadline is vacated. Prior orders regarding briefing on the motion to dismiss and motion to stay and on page limitations are vacated. The Court will not order discovery while the motion to transfer is pending. Plaintiffs are permitted to serve subpoenas on non-parties to preserve documents. Mailed notice. (ecw, ) (Entered: 09/06/2022) |
| 09/14/2022 | 57 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19839183. (Smith, Gary) (Entered: 09/14/2022) |
| 09/14/2022 | 58 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to appear pro hac vice 57 is granted. Attorney Gary I. Smith for Anthony Dale et al. added. Mailed notice. (exr, ) (Entered: 09/14/2022) |
| 09/19/2022 | 59 | RESPONSE by Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambertin Opposition to MOTION by Defendant T-Mobile US, Inc. to transfer case 42 (Glackin, Brendan) (Entered: 09/19/2022) |
| 09/19/2022 | 60 | DECLARATION of Brendan P. Glackin regarding response in opposition to motion 59 (Glackin, Brendan) (Entered: 09/19/2022) |
| 09/30/2022 | 61 | MEMORANDUM by T-Mobile US, Inc. in support of motion to transfer case 42 (Attachments: # 1 Declaration of R. Brass, # 2 Exhibit 1 to Brass Decl., # 3 Exhibit 2 to Brass Decl, # 4 Exhibit 3 to Brass Decl)(Krevitt, Josh) (Entered: 09/30/2022) |
| 10/04/2022 | 62 | TRANSCRIPT OF PROCEEDINGS held on 09/06/2022 before the Honorable Thomas M. Durkin. Status Hearing. Order Number: 44228. Court Reporter Contact Information: Elia E. Carrion, EECarrionOfficialTranscript@gmail.com, 312-408-7782.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. |

| | | |
|---|---|---|
| | | Redaction Request due 10/25/2022. Redacted Transcript Deadline set for 11/4/2022. Release of Transcript Restriction set for 1/2/2023. (Carrion, Elia) (Entered: 10/04/2022) |
| 10/07/2022 | 63 | MEMORANDUM Opinion and Order: For the reasons set forth in the accompanying Memorandum Opinion and Order, T-Mobile's motion to transfer this case to the Southern District of New York 42 is denied. Signed by the Honorable Thomas M. Durkin on 10/7/2022. Mailed notice. (ecw, ) (Entered: 10/07/2022) |
| 10/11/2022 | 64 | MINUTE entry before the Honorable Thomas M. Durkin: A telephonic status hearing is set for 10/21/2022 at 9:45 a.m. To join the telephone conference, dial 877-402-9757, Access Code 4410831. Members of the public and media will be able to call in to listen to this hearing. Please be sure to keep your phone on mute when you are not speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ecw, ) (Entered: 10/11/2022) |
| 10/18/2022 | 65 | ATTORNEY Appearance for Defendant Softbank Group Corp. by Rachel Sandel Morse (Morse, Rachel) (Entered: 10/18/2022) |
| 10/18/2022 | 66 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Softbank Group Corp. (Morse, Rachel) (Entered: 10/18/2022) |
| 10/19/2022 | 67 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19960838. (Liu, Henry) (Entered: 10/19/2022) |
| 10/19/2022 | 68 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19960911. *on Behalf of Defendant Softbank Group Corp.* (Miller, Michael) (Entered: 10/19/2022) |
| 10/19/2022 | 69 | MINUTE entry before the Honorable Thomas M. Durkin: Motions to appear pro hac vice 67 68 are granted. Attorneys Michael B. Miller and Henry Liu for Softbank Group Corp. added. Mailed notice. (ecw, ) (Entered: 10/19/2022) |
| 10/21/2022 | 70 | MINUTE entry before the Honorable Thomas M. Durkin: Telephone status hearing held on 10/21/2022. Defendant Deutsche Telekom AG is expected to be served through the Hague Convention by January 2023. Parties reported that they have reached an agreement in principle regarding a schedule for the next few months. Parties are to submit an agreed proposed order or a joint status report setting forth the agreement they reached. A telephone status hearing is set for 1/27/2023 at 9:00 a.m., or when Deutsche Telekom has entered the case. To join the telephone conference, dial 877-402-9757, Access Code 4410831. Members of the public and media will be able to call in to listen to this hearing. Please be sure to keep your phone on mute when you are not speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ecw, ) (Entered: 10/21/2022) |
| 11/03/2022 | 71 | ORDER signed by the Honorable Thomas M. Durkin on 11/3/2022. Mailed notice. (ecw, ) (Entered: 11/03/2022) |
| 11/17/2022 | 72 | TRANSCRIPT OF PROCEEDINGS held on 10/21/22 before the Honorable Thomas M. Durkin. Order Number: 44405. Court Reporter Contact Information: Joseph Rickhoff, 312-435-5562, joseph_rickhoff@ilnd.uscourts.gov. |

| | | |
|---|---|---|
| | | IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 12/8/2022. Redacted Transcript Deadline set for 12/19/2022. Release of Transcript Restriction set for 2/15/2023. (Rickhoff, Joseph) (Entered: 11/17/2022) |
| 12/01/2022 | 73 | CERTIFICATE of Service by Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert *(formal Hague Certificate of Service issued by Japan) served on Softbank Group Corp. on September 21, 2022* (Zandi, Sarah) (Entered: 12/01/2022) |
| 12/02/2022 | 74 | ATTORNEY Appearance for Defendant Softbank Group Corp. by Robert Wick (Wick, Robert) (Entered: 12/02/2022) |
| 12/05/2022 | 75 | ATTORNEY Appearance for Defendant T-Mobile US, Inc. by Brian Joseph Smith (Smith, Brian) (Entered: 12/05/2022) |
| 12/05/2022 | 76 | MOTION by Defendant Softbank Group Corp. to dismiss for lack of jurisdiction *and improper venue* (Morse, Rachel) (Entered: 12/05/2022) |
| 12/05/2022 | 77 | MEMORANDUM by Softbank Group Corp. in support of motion to dismiss/lack of jurisdiction 76 (Attachments: # 1 Declaration of Mamoru Fujimura in support of SBG Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue)(Morse, Rachel) (Entered: 12/05/2022) |
| 12/05/2022 | 78 | MOTION by Defendants T-Mobile US, Inc., Softbank Group Corp. to dismiss *the Complaint* (Krevitt, Josh) (Entered: 12/05/2022) |
| 12/05/2022 | 79 | MEMORANDUM by Softbank Group Corp., T-Mobile US, Inc. in support of motion to dismiss 78 (Attachments: # 1 Request for Judicial Notice, # 2 Declaration of R. Brass, # 3 Exhibit 1 to Brass Decl., # 4 Exhibit 2 to Brass Decl., # 5 Exhibit 3 to Brass Decl., # 6 Exhibit 4 to Brass Decl., # 7 Exhibit 5 to Brass Decl., # 8 Exhibit 6 to Brass Decl., # 9 Exhibit 7 to Brass Decl., # 10 Exhibit 8 to Brass Decl., # 11 Exhibit 9 to Brass Decl., # 12 Exhibit 10 to Brass Decl., # 13 Exhibit 11 to Brass Decl., # 14 Exhibit 12 to Brass Decl., # 15 Exhibit 13 to Brass Decl., # 16 Exhibit 14 to Brass Decl., # 17 Exhibit 15 to Brass Decl., # 18 Exhibit 16 to Brass Decl., # 19 Exhibit 17 to Brass Decl., # 20 Exhibit 18 to Brass Decl., # 21 Exhibit 19 to Brass Decl., # 22 Exhibit 20 to Brass Decl.)(Krevitt, Josh) (Entered: 12/05/2022) |
| 12/12/2022 | 80 | NOTICE by T-Mobile US, Inc. re MOTION by Defendant T-Mobile US, Inc. to stay *pending service of process on all defendants* 51 *Notice of Withdrawal of Motion to Stay* (Krevitt, Josh) (Entered: 12/12/2022) |
| 12/13/2022 | 81 | MINUTE entry before the Honorable Thomas M. Durkin: A notice of withdrawal has been filed. The Motion to Stay Pending Service of Process On All Defendants (Dkt. 51 ) is withdrawn without prejudice. Mailed notice. (ecw, ) (Entered: 12/13/2022) |
| 12/29/2022 | 82 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is |

| | | |
|---|---|---|
| | | to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/29/2022: Mailed notice. (tg, ) (Entered: 12/29/2022) |
| 01/17/2023 | 83 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Softbank Group Corp. - *Defendant Softbank Group Corp.'s Supplemental Corporate Disclosure Statement and Notification as to Affiliates* (Morse, Rachel) (Entered: 01/17/2023) |
| 01/19/2023 | 84 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by T-Mobile US, Inc. . - *Defendant T-Mobile US, Inc.'s Corporate Disclosure Statement and Notification of Affiliates* (Histed, Clifford) (Entered: 01/19/2023) |
| 01/19/2023 | 85 | MINUTE entry before the Honorable Thomas M. Durkin: Deutsche Telekom has not yet entered the case. The telephone status hearing set for 1/27/2023 is reset for 2/24/2023 at 9:15 a.m. To join the telephone conference, dial 877-402-9757, Access Code 4410831. Members of the public and media will be able to call in to listen to this hearing. Please be sure to keep your phone on mute when you are not speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ecw, ) (Entered: 01/19/2023) |
| 02/03/2023 | 86 | RESPONSE by Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambertin Opposition to MOTION by Defendant Softbank Group Corp. to dismiss for lack of jurisdiction *and improper venue* 76 (Attachments: # 1 Declaration of Brendan P. Glackin)(Glackin, Brendan) (Entered: 02/03/2023) |
| 02/03/2023 | 87 | RESPONSE by Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambertin Opposition to MOTION by Defendants T-Mobile US, Inc., Softbank Group Corp. to dismiss *the Complaint* 78 (Attachments: # 1 Opposition to Request for Judicial Notice, # 2 Attachment A to Opposition to Request for Judicial Notice)(Glackin, Brendan) (Entered: 02/03/2023) |
| 02/06/2023 | 88 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-20319565. (Brakefield, Marcus) (Entered: 02/06/2023) |
| 02/06/2023 | 89 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to appear pro hac vice 88 is granted. Attorney Marcus Hill Brakefield for Anthony Dale et al and the proposed class added. Mailed notice. (ecw, ) (Entered: 02/06/2023) |
| 02/06/2023 | 90 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Marcus Hill Brakefield (Brakefield, Marcus) (Entered: 02/06/2023) |
| 02/17/2023 | 91 | MINUTE entry before the Honorable Thomas M. Durkin: Deutsche Telekom has not yet entered the case. The telephone status hearing set for 2/24/2023 is reset for 3/31/2023 at 9:15 a.m. To join the telephone conference, dial 877-402-9757, Access Code 4410831. Members of the public and media will be able to call in to listen to this hearing. Please be sure to keep your phone on mute when you are not speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may |

| | | |
|---|---|---|
| | | result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ecw, ) (Entered: 02/17/2023) |
| 02/28/2023 | 92 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-20389662. (Ross, Jules) (Entered: 02/28/2023) |
| 02/28/2023 | 93 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to appear pro hac vice 92 is granted. Attorney Jules A. Ross for Anthony Dale et al. and the Proposed Class added. Mailed notice. (ecw, ) (Entered: 02/28/2023) |
| 02/28/2023 | 94 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Jules A. Ross (Ross, Jules) (Entered: 02/28/2023) |
| 03/10/2023 | 95 | RESPONSE by Softbank Group Corp.in Support of MOTION by Defendant Softbank Group Corp. to dismiss for lack of jurisdiction *and improper venue* 76 (Attachments: # 1 Declaration - Second Decl. of M. Fujimura iso SoftBank Group Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue)(Morse, Rachel) (Entered: 03/10/2023) |
| 03/10/2023 | 96 | REPLY by Defendants Softbank Group Corp., T-Mobile US, Inc. to response in opposition to motion, 87 , motion to dismiss 78 (Krevitt, Josh) (Entered: 03/10/2023) |
| 03/10/2023 | 97 | REPLY by Defendants Softbank Group Corp., T-Mobile US, Inc. *in support of Request for Judicial Notice* (Krevitt, Josh) (Entered: 03/10/2023) |
| 03/23/2023 | 98 | AGREED CONFIDENTIALITY ORDER. Signed by the Honorable Thomas M. Durkin on 3/23/2023. Mailed notice. (ecw, ) (Entered: 03/23/2023) |
| 03/23/2023 | 99 | STATUS Report *(Joint)* by Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert (Glackin, Brendan) (Entered: 03/23/2023) |
| 03/23/2023 | 100 | MINUTE entry before the Honorable Thomas M. Durkin: The telephone status hearing set for 3/31/2023 is reset for 7/19/2023 at 9:15 a.m. To join the telephone conference, dial 877-402-9757, Access Code 4410831. Members of the public and media will be able to call in to listen to this hearing. Please be sure to keep your phone on mute when you are not speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ecw, ) (Entered: 03/23/2023) |
| 04/21/2023 | 101 | MINUTE entry before the Honorable Thomas M. Durkin: Oral argument on the motions to dismiss 76 78 is set for 7/20/2023 at 2:00 p.m. in courtroom 1441. Mailed notice. (ecw, ) (Entered: 04/21/2023) |
| 05/11/2023 | 102 | MINUTE entry before the Honorable Thomas M. Durkin: Members of the public and media will be able to call in to listen to the hearing set for 7/20/2023 at 2:00 p.m. To join the telephone conference, dial 877-402-9757, Access Code 4410831. Please be sure to keep your phone on mute. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ecw, ) (Entered: 05/11/2023) |

| | | |
|---|---|---|
| 05/11/2023 | 103 | Notice of Supplemental Authority by Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert *87* (Attachments: # 1 Exhibit A)(Glackin, Brendan) (Entered: 05/11/2023) |
| 05/16/2023 | 104 | RESPONSE by Defendants Softbank Group Corp., T-Mobile US, Inc. to other 103 *Plaintiffs' Notice of Supplemental Authority* (Krevitt, Josh) (Entered: 05/16/2023) |
| 06/20/2023 | 105 | MINUTE entry before the Honorable Thomas M. Durkin: The telephone status hearing set for 7/19/2023 is reset for 7/20/2023 at 2:00 p.m., to take place immediately prior to the oral argument scheduled for that time. The dial-in information will remain the same. Mailed notice. (ecw, ) (Entered: 06/20/2023) |
| 07/20/2023 | 106 | MINUTE entry before the Honorable Thomas M. Durkin: Oral argument on the motions to dismiss 76 78 held on 7/20/2023. Mailed notice. (ecw, ) (Entered: 07/20/2023) |
| 07/28/2023 | 107 | MOTION by Attorney Henry B. Liu to withdraw as attorney for Softbank Group Corp.. No party information provided<br><br>(Liu, Henry) (Entered: 07/28/2023) |
| 07/28/2023 | 108 | NOTICE of Motion by Henry Liu for presentment of motion to withdraw as attorney 107 before Honorable Thomas M. Durkin on 8/3/2023 at 09:00 AM. (Liu, Henry) (Entered: 07/28/2023) |
| 07/28/2023 | 109 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to withdraw as attorney 107 is granted. Attorney Henry Liu terminated. Mailed notice. (ecw, ) (Entered: 07/28/2023) |
| 07/28/2023 | 110 | TRANSCRIPT OF PROCEEDINGS held on 07/20/2023 before the Honorable Thomas M. Durkin. Oral Argument. Order Number: 46384. Court Reporter Contact Information: Elia E. Carrion, EECarrionOfficialTranscript@gmail.com, 312.408.7782.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 8/18/2023. Redacted Transcript Deadline set for 8/28/2023. Release of Transcript Restriction set for 10/26/2023. (Carrion, Elia) (Entered: 07/28/2023) |
| 10/18/2023 | 111 | ATTORNEY Appearance for Defendant Softbank Group Corp. by Suyash Agrawal (Agrawal, Suyash) (Entered: 10/18/2023) |
| 10/18/2023 | 112 | MOTION by Attorney Rachel S. Morse to withdraw as attorney for Softbank Group Corp.. No party information provided<br><br>(Morse, Rachel) (Entered: 10/18/2023) |
| 10/19/2023 | 113 | MINUTE entry before the Honorable Thomas M. Durkin: Attorney's motion to withdraw as attorney 112 is granted; Attorney Rachel S Morse terminated. Mailed notice. (kp, ) (Entered: 10/19/2023) |
| 11/02/2023 | 114 | MEMORANDUM Opinion and Order: For the reasons set forth in the accompanying Memorandum Opinion and Order, SoftBank Group's motion to dismiss for lack of jurisdiction and improper venue 76 is granted, and T-Mobile and SoftBank Group's |

| | | |
|---|---|---|
| | | motion to dismiss for failure to state a claim 78 is denied. Signed by the Honorable Thomas M. Durkin on 11/2/2023. Mailed notice. (kp, ) (Entered: 11/02/2023) |
| 11/03/2023 | 115 | MINUTE entry before the Honorable Thomas M. Durkin: By or before November 28, 2023, the parties are to file a joint written report setting forth proposed discovery deadlines. The parties may refer to the format detailed on the Court's website under New and Reassigned cases. Mailed notice. (kp, ) (Entered: 11/03/2023) |
| 11/27/2023 | 116 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-21362664.<br><br>(Gradwohl, Jeremy) (Entered: 11/27/2023) |
| 11/27/2023 | 117 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to appear pro hac vice 116 is granted. Attorney Jeremy Gradwohl for Anthony Dale added. Mailed notice. (ecw, ) (Entered: 11/27/2023) |
| 11/28/2023 | 118 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Jeremy Gradwohl (Gradwohl, Jeremy) (Entered: 11/28/2023) |
| 11/28/2023 | 119 | STATUS Report *(Joint)* by Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert<br><br>(Glackin, Brendan) (Entered: 11/28/2023) |
| 11/28/2023 | 120 | MOTION by Defendant T-Mobile US, Inc.to Certify the Court's November 2 Order for Interlocutory Appeal<br><br>(Attachments: # 1 Agreed Briefing Schedule)(Boutrous, Theodore) (Entered: 11/28/2023) |
| 11/28/2023 | 121 | MEMORANDUM by T-Mobile US, Inc. in support of motion for miscellaneous relief 120 *(Motion to Certify the Court's November 2 Order)* (Boutrous, Theodore) (Entered: 11/28/2023) |
| 11/29/2023 | 122 | MINUTE entry before the Honorable Thomas M. Durkin: The parties have agreed to the following briefing schedule as to T-Mobile's Motion to Certify the Court's November 2 Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b) 120 : Plaintiffs' Opposition is to be filed by 12/14/2023; Defendant's Reply is to be filed by 12/22/2023. Mailed notice. (ecw, ) (Entered: 11/29/2023) |
| 11/29/2023 | 123 | MINUTE entry before the Honorable Thomas M. Durkin: The Court is in receipt of the joint status report ans enters the following schedule. Amended pleadings are due by 10/24/2024. Discovery is to be completed by 11/13/2025. By 1/30/2024, the parties to file a joint status report on the progress of discovery. A telephone status hearing is set for 2/6/2024 at 9:00 a.m. To join the telephone conference, dial 877-402-9757, Access Code 4410831. Throughout the hearing, each speaker will be expected to identify themselves for the record before speaking. Counsel must be in a quiet area while on the line. Please be sure to keep your phone on mute when you are not speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ecw, ) (Entered: 11/29/2023) |
| 12/04/2023 | 124 | MOTION by Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert for Appointment of Interim Co-Lead Class Counsel |

| | | (Glackin, Brendan) (Entered: 12/04/2023) |
|---|---|---|
| 12/04/2023 | [125](#) | MEMORANDUM by Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert in support of motion for miscellaneous relief [124](#) *Motion for Appointment of Interim Co-Lead Class Counsel* (Attachments: # [1](#) Declaration of Brendan P. Glackin, # [2](#) Declaration of Joel A. Flaxman) (Glackin, Brendan) (Entered: 12/05/2023) |
| 12/05/2023 | [126](#) | ORDER Appointing Interim Co-Lead Counsel. Signed by the Honorable Thomas M. Durkin on 12/5/2023. Mailed notice. (ecw, ) (Entered: 12/05/2023) |
| 12/05/2023 | [127](#) | ATTORNEY Appearance for Amicus U.S Chamber of Commerce by Taylor A. R. Meehan (Meehan, Taylor) (Entered: 12/05/2023) |
| 12/05/2023 | [128](#) | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-21393031. *(Gilbert Dickey)* <br><br> (Meehan, Taylor) (Entered: 12/05/2023) |
| 12/05/2023 | [129](#) | MOTION by Amicus U.S Chamber of Commerce for leave to file *Amicus Brief* <br><br> (Attachments: # [1](#) Amicus Brief)(Meehan, Taylor) (Entered: 12/05/2023) |
| 12/05/2023 | [130](#) | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by U.S Chamber of Commerce (Meehan, Taylor) (Entered: 12/05/2023) |
| 12/06/2023 | [131](#) | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-21394129. <br><br> (Smithgall, Kathleen) (Entered: 12/06/2023) |
| 12/06/2023 | [132](#) | MINUTE entry before the Honorable Thomas M. Durkin: Motions to appear pro hac vice [128](#) [131](#) are granted. Attorneys Gilbert Dickey and Kathleen Lynn Smithgall for U.S Chamber of Commerce added. Motion for Leave to File Amicus Curiae Brief [129](#) is granted. Mailed notice. (ecw, ) (Entered: 12/06/2023) |
| 12/06/2023 | [133](#) | ATTORNEY Appearance for Amicus U.S Chamber of Commerce by Kathleen Lynn Smithgall (Smithgall, Kathleen) (Entered: 12/06/2023) |
| 12/06/2023 | [134](#) | ATTORNEY Appearance for Amicus U.S Chamber of Commerce by Gilbert Dickey (Dickey, Gilbert) (Entered: 12/06/2023) |
| 12/06/2023 | [135](#) | MEMORANDUM *U.S. Chamber of Commerce Amicus Brief in Support of Motion to Certify November 2 Order for Interlocutory Appeal* (Smithgall, Kathleen) (Entered: 12/06/2023) |
| 12/11/2023 | [136](#) | ATTORNEY Appearance for Amicus CTIA - The Wireless Association by Melanie Elizabeth Walker (Walker, Melanie) (Entered: 12/11/2023) |
| 12/11/2023 | [137](#) | MOTION by Amicus CTIA - The Wireless Association for leave to file *Brief of Amicus Curiae CTIA-The Wireless Association* <br><br> (Attachments: # [1](#) Brief of Amicus Curiae CTIA - The Wireless Associate ISO Def T-Mobile US, Inc.'s Motion to Certify the Court's November 2 Order for Interlocutory Appeal)(Walker, Melanie) (Entered: 12/11/2023) |
| 12/11/2023 | [138](#) | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by CTIA - The Wireless Association *Corporate Disclosure Statement and Notification of Affiliates* (Walker, Melanie) (Entered: 12/11/2023) |

| | | |
|---|---|---|
| 12/12/2023 | 139 | MINUTE entry before the Honorable Thomas M. Durkin: The Wireless Association's Motion for leave to file Brief of Amicus Curiae CTIA 137 is granted. Mailed notice. (ecw, ) (Entered: 12/12/2023) |
| 12/12/2023 | 140 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-21412801. - *on behalf of CTIA - The Wireless Association, Amicus Curiae -*<br><br>(Karanjia, Peter) (Entered: 12/12/2023) |
| 12/12/2023 | 141 | MEMORANDUM motion for miscellaneous relief 120 by CTIA - The Wireless Association - *Brief Of Amicus Curiae CTIA - The Wireless Association In Support Of Defendant T-Mobile US, Inc.'s Motion To Certify The Court's November 2 Order For Interlocutory Appeal* - (Walker, Melanie) (Entered: 12/12/2023) |
| 12/12/2023 | 142 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to appear pro hac vice 140 is granted. Attorney Peter Karanjia for CTIA - The Wireless Association added. Mailed notice. (ecw, ) (Entered: 12/12/2023) |
| 12/12/2023 | 143 | ATTORNEY Appearance for Amicus CTIA - The Wireless Association by Peter Karanjia (Karanjia, Peter) (Entered: 12/12/2023) |
| 12/14/2023 | 144 | RESPONSE by Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambertin Opposition to MOTION by Defendant T-Mobile US, Inc.to Certify the Court's November 2 Order for Interlocutory Appeal<br><br>120 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Smith, Gary) (Entered: 12/14/2023) |
| 12/18/2023 | 145 | NOTICE by Rachel Susan Brass of Change of Address (Brass, Rachel) (Entered: 12/18/2023) |
| 12/18/2023 | 146 | ANSWER to Complaint by T-Mobile US, Inc.(Krevitt, Josh) (Entered: 12/18/2023) |
| 12/22/2023 | 147 | REPLY by T-Mobile US, Inc. to MOTION by Defendant T-Mobile US, Inc.to Certify the Court's November 2 Order for Interlocutory Appeal<br><br>120 (Boutrous, Theodore) (Entered: 12/22/2023) |
| 12/28/2023 | 148 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/28/2023: Mailed notice. (tg, ) (Entered: 12/29/2023) |
| 01/17/2024 | 149 | MOTION by Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert for discovery - *Unopposed Motion to Compel Discovery of Pre-Merger Trial Exhibits and Deposition Transcripts From T-Mobile* |

| | | (Attachments: # 1 Declaration of Lin Y. Chan in Support of Plaintiffs' Unopposed Motion to Compel Discovery From T-Mobile, # 2 Exhibit A - to Chan Decl., # 3 Exhibit B - to Chan Decl., # 4 Exhibit C - to Chan Decl., # 5 Exhibit D - to Chan Decl., # 6 Exhibit E - to Chan Decl.)(Chan, Lin) (Entered: 01/17/2024) |
|---|---|---|
| 01/18/2024 | 150 | MINUTE entry before the Honorable Thomas M. Durkin: The Court is in receipt of Plaintiffs' unopposed motion to compel discovery of the pre-trial merger trial exhibits and deposition transcripts from T-Mobile. R. 149 . The motion includes a proposed briefing schedule. By or before January 24, 2024, the parties are to jointly submit a brief statement, no longer than two pages, explaining the need for briefing on this unopposed motion. Mailed notice. (ecw, ) (Entered: 01/18/2024) |
| 01/24/2024 | 151 | JOINT STATEMENT by Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert (Glackin, Brendan) (Entered: 01/24/2024) |
| 01/25/2024 | 152 | MINUTE entry before the Honorable Thomas M. Durkin: The Court is in receipt of the parties' joint statement 151 regarding the need for a briefing schedule for the unopposed motion to compel discovery 149 . Responses to that motion, if Defendant or non-parties choose to file them, are due on 2/1/2024, and Plaintiffs' reply, if rendered necessary by the filing of a response, is due on 2/8/2024. Mailed notice, ) (Entered: 01/25/2024) |
| 01/25/2024 | 153 | MINUTE entry before the Honorable Thomas M. Durkin: The dial in information for the telephone status hearing set for 2/6/2024 at 9:00 a.m. has changed. To join the telephone conference, dial (650) 479-3207, Access Code 180 815 7648. Mailed notice. (ecw, ) (Entered: 01/25/2024) |
| 01/30/2024 | 154 | STATUS Report *(Joint)* by T-Mobile US, Inc.<br><br>(Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z)(Brass, Rachel) (Entered: 01/30/2024) |
| 02/02/2024 | 155 | MINUTE entry before the Honorable Thomas M. Durkin: As the Court did not receive any responses to the unopposed motion to compel discovery by the prescribed deadline of 2/1/2024, the briefing schedule set forth in 152 is vacated and the motion 149 is granted. Mailed notice. (ecw, ) (Entered: 02/02/2024) |
| 02/06/2024 | 156 | MINUTE entry before the Honorable Thomas M. Durkin: Telephone status hearing held on 2/6/2024. The fact discovery cut-off is 11/13/2025. Each of the parties may take ninety total depositions. Of the ninety total, the limit on depositions of T-Mobile employees will be no more than thirty, absent a showing of good cause. A joint proposed expert discovery schedule is due by 2/9/2024. A telephone status hearing is set for 4/5/2024 at 9:15 a.m. To join the telephone conference, dial (650) 479-3207, Access Code 180 815 7648. Throughout the hearing, each speaker will be expected to identify themselves for the record before speaking. Counsel must be in a quiet area while on the line. Please be sure to keep your phone on mute when you are not speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (ecw, ) (Entered: 02/06/2024) |

| | | |
|---|---|---|
| 02/09/2024 | 157 | STATUS Report *(Joint Status Report)* by Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert (Smith, Gary) (Entered: 02/09/2024) |
| 02/14/2024 | 158 | MINUTE entry before the Honorable Thomas M. Durkin: The Court enters the following agreed schedule for combined class and merits expert discovery. Opening expert reports on class and merits issues for which a party bears the burden of proof to be served by 1/15/2026. Opposing expert reports are due by 3/26/2026. Rebuttal expert reports are due by 6/4/2026. Expert depositions are to be completed by 7/16/2026. Mailed notice. (ecw, ) (Entered: 02/14/2024) |
| 03/04/2024 | 159 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-21704254. (Davis, Joshua) (Entered: 03/04/2024) |
| 03/04/2024 | 160 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-21704338. (Julie, Pollock) (Entered: 03/04/2024) |
| 03/05/2024 | 161 | MINUTE entry before the Honorable Thomas M. Durkin: Motions to appear pro hac vice 159 , 160 are granted. Attorneys Joshua P. Davis and Julie Pollock for Anthony Dale, et al., and the proposed Class added. Mailed notice. (ecw, ) (Entered: 03/05/2024) |
| 03/05/2024 | 162 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-21709116. (Gibboney, Kyla) (Entered: 03/05/2024) |
| 03/05/2024 | 163 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to appear pro hac vice 162 is granted. Attorney Kyla J. Gibboney for Anthony Dale, et al., and the proposed Class added. Mailed notice. (ecw, ) (Entered: 03/05/2024) |
| 03/08/2024 | 164 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Joshua P. Davis (Davis, Joshua) (Entered: 03/08/2024) |
| 03/08/2024 | 165 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Kyla J Gibboney (Gibboney, Kyla) (Entered: 03/08/2024) |
| 03/08/2024 | 166 | ATTORNEY Appearance for Plaintiffs Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert by Pollock Julie (Julie, Pollock) (Entered: 03/08/2024) |
| 03/14/2024 | 167 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-21745443. (Bojedla, Swathi) (Entered: 03/14/2024) |
| 03/14/2024 | 168 | MINUTE entry before the Honorable Thomas M. Durkin: Motion to appear pro hac vice 167 is granted. Attorney Swathi Bojedla for Anthony Dale et al. and the Proposed Class added. Mailed notice. (ecw, ) (Entered: 03/14/2024) |
| 03/19/2024 | 169 | ATTORNEY Appearance for Defendant Deutsche Telekom AG by Kenneth Michael Kliebard (Kliebard, Kenneth) (Entered: 03/19/2024) |

| 03/19/2024 | [170](#) | ATTORNEY Appearance for Defendant Deutsche Telekom AG by Elizabeth Brooke Herrington (Herrington, Elizabeth) (Entered: 03/19/2024) |
|---|---|---|
| 03/19/2024 | [171](#) | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-21760722.<br><br>(Johns, Zachary) (Entered: 03/19/2024) |
| 03/19/2024 | [172](#) | Stipulated Motion for Extension of Time for Defendant Deutsche Telekom AG to Respond to the Complaint by Deutsche Telekom AG (Kliebard, Kenneth) (Entered: 03/19/2024) |
| 03/19/2024 | [173](#) | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Deutsche Telekom AG (Kliebard, Kenneth) (Entered: 03/19/2024) |
| 03/19/2024 | [174](#) | MINUTE entry before the Honorable Thomas M. Durkin: Motion to appear pro hac vice [171](#) is granted. Attorney Zachary M. Johns for Deutsche Telekom AG added. Mailed notice. (ecw, ) (Entered: 03/19/2024) |
| 03/21/2024 | [175](#) | MINUTE entry before the Honorable Thomas M. Durkin: Stipulated motion for extension of time for Defendant Deutsche Telekom AG to respond to the complaint [172](#) is granted. The period for Deutsche Telekom AG to file its Motion to Dismiss is extended to 4/9/2024. Mailed notice. (ecw, ) (Entered: 03/21/2024) |
| 03/27/2024 | [176](#) | MEMORANDUM Opinion and Order: For the reasons stated in the attached Memorandum Opinion and Order, the Court grants T-Mobile's motion [120](#) and certifies for interlocutory appeal the question of whether Plaintiffs have plausibly alleged antitrust standing. Signed by the Honorable Thomas M. Durkin on 3/27/2024. Mailed notice. (ecw, ) (Entered: 03/27/2024) |
| 03/27/2024 | [177](#) | STIPULATION of Dismissal *with Prejudice as to Defendant Deutsche Telekom AG* (Kliebard, Kenneth) (Entered: 03/27/2024) |
| 03/28/2024 | [178](#) | STIPULATED Order of Dismissal with Prejudice as to Defendant Deutsche Telekom AG. Signed by the Honorable Thomas M. Durkin on 3/28/2024. Mailed notice. (ecw, ) (Entered: 03/28/2024) |
| 03/29/2024 | [179](#) | STATUS Report *(Joint)* by Robert Anderson, Benjamin Borrowman, Anthony Dale, Johnna Fox, Chad Hohenbery, Brett Jackson, Ann Lambert<br><br>(Glackin, Brendan) (Entered: 03/29/2024) |
| 04/03/2024 | [180](#) | MINUTE entry before the Honorable Thomas M. Durkin: The telephone status hearing set for 4/5/2024 is vacated. A joint written status report is due by 6/3/2024. Mailed notice. (ecw, ) (Entered: 04/03/2024) |
| 04/03/2024 | [181](#) | ORDER Re Protocol for the Production of Electronically Stored Information (ESI). Signed by the Honorable Thomas M. Durkin on 4/3/2024. Mailed notice. (ecw, ) (Entered: 04/03/2024) |

**PACER Service Center**

**Transaction Receipt**

04/08/2024 19:25:14

| **PACER Login:** | gd0044SF | **Client Code:** | 92761-00107 |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-03189 |

| Billable Pages: | 30 | Cost: | 3.00 |