No. 24-8013

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

T-MOBILE US, INC.,

*Petitioner*,

v.

ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROW-MAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY on behalf of themselves and all others similar situated,

*Respondents*.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT

OF ILLINOIS, EASTERN DIVISION, NO. 22-cv-3189

THE HONORABLE THOMAS M. DURKIN, JUDGE PRESIDING

**BRIEF OF *AMICUS CURIAE* THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF PETITIONER**

Jennifer B. Dickey
Tyler S. Badgley
U.S. CHAMBER LITIGATION CENTER
1615 H St., NW
Washington, DC 20062

Gilbert C. Dickey
Kathleen S. Lane
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22201
(703) 243-9423
taylor@consovoymccarthy.com
gilbert@consovoymccarthy.com
katie@consovoymccarthy.com

Counsel for *Amicus Curiae* the Chamber of Commerce of the
United States of America

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-8013

Short Caption: T-Mobile USA, Inc. v. Anthony Dale, et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
U.S. Chamber of Commerce

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Consovoy McCarthy PLLC

(3) If the party, amicus or intervenor is a corporation:

   i) Identify all its parent corporations, if any; and
      None

   ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
      None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: s/ Gilbert C. Dickey      Date: 4/9/2024

Attorney's Printed Name: Gilbert C. Dickey

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✔    No ☐

Address: 1600 Wilson Blvd., Suite 700, Arlington, VA 22209

Phone Number: (703) 243-9423      Fax Number:

E-Mail Address: gilbert@consovoymccarthy.com

rev. 12/19 AK

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-8013

Short Caption: T-Mobile USA, Inc. v. Anthony Dale, et al

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
U.S. Chamber of Commerce

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Consovoy McCarthy PLLC

(3) If the party, amicus or intervenor is a corporation:

   i) Identify all its parent corporations, if any; and
   None

   ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
   None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: s/ Kathleen S. Lane     Date: 4/9/2024

Attorney's Printed Name: Kathleen S. Lane

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ✔

Address: 1600 Wilson Blvd., Suite 700, Arlington, VA 22209

Phone Number: (703) 243-9423     Fax Number:

E-Mail Address: katie@consovoymccarthy.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

Interest of Amicus Curiae ................................................................................................ 1

Introduction ..................................................................................................................... 2

Argument ......................................................................................................................... 3

I.    It Is Contestable Whether Plaintiffs Met the *Twombly* Standard..................... 3

II.   *Twombly*'s Policy Justifications Are Especially Relevant in Antitrust Class actions .................................................................................................... 7

III.  *Twombly*'s Application to Antitrust Standing Must Be Reinforced. ............... 10

Conclusion ..................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
   219 F.3d 674 (7th Cir. 2000) ............................................................................... 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 4

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ................................................................................... 3, 4, 7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................ 9

*Austin v. Blue Cross & Blue Shield of Ala.*,
   903 F.2d 1385 (11th Cir. 1990) ......................................................................... 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................ 1, 2, 3, 4, 5, 6, 7, 9, 10, 12

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
   441 U.S. 1 (1979) ......................................................................................... 5, 10

*Coopers & Lybrand v. Livesay*,
   437 U.S. 463 (1978) ............................................................................................ 9

*District of Columbia v. Amazon.com, Inc.*,
   2021-CA-001775-B (D.C. Super. Ct. 2021) ....................................................... 1

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   19 F.4th 127 (2d Cir. 2021) .............................................................................. 11

*In re Text Messaging Antitrust Litig.*,
   630 F.3d 622 (7th Cir. 2010) ............................................................................... 8

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
   725 F.3d 718 (7th Cir. 2013) ............................................................................. 11

*Lupia v. Stella D'Oro Biscuit Co.*,
   586 F.2d 1163 (7th Cir. 1978) ............................................................................. 7

*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011). .............................................................................. 6

*New York v. Deutsche Telekom AG*,
   439 F. Supp. 3d 179 (S.D.N.Y. 2020) ............................................................... 10

*New York v. Meta Platforms Inc.*,
   No. 21-7078 (D.C. Cir. argued Sep. 19, 2022) ................................................... 1

*S. Austin Coal. Comm. Council v. SBC Comm'ns Inc.*,
   191 F.3d 842 (7th Cir. 1999) ............................................................................... 5

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp.*,
    22 F.4th 103 (2d Cir. 2021) ................................................................................. 11

*Smith v. Duffey*,
    576 F.3d 336 (7th Cir. 2009) ................................................................................. 7

*United States Gypsum Co. v. Indiana Gas Co.*,
    350 F.3d 623 (7th Cir. 2003) ................................................................................. 6

*United States v. Deutsche Telekom AG*,
    Civ. No. 19-2232, 2020 WL 1873555 (D.D.C. Apr. 14) ...................................... 5, 10

**Statutes**

15 U.S.C. § 15 ............................................................................................................ 3, 8
15 U.S.C. § 22 ............................................................................................................ 3, 11

**Other Authorities**

Edward D. Cavanagh, *Contribution, Claim Reduction, and Individual Treble
    Damage Responsibility; Which Path to Reform of Antitrust Remedies?*, 40 Vand. L.
    Rev. 1277 (1987) ..................................................................................................... 8

Edward D. Cavanagh, *The Private Antitrust Remedy: Lessons from the American
    Experience*, 41 Loy. U. Chi. L.J. 629 (2010) .......................................................... 8

Henry J. Friendly, *Federal Jurisdiction: A General View* 120 (1973) ......................... 9

Thomas Hazlett & Robert Crandall, *Competitive Effects of T-Mobile/Sprint:
    Analysis of a "4-3" Merger* (Feb. 20, 2024) ......................................................... 12

# INTEREST OF AMICUS CURIAE[1]

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus* briefs in cases that raise issues of vital concern to the Nation's business community. In particular, the Chamber has participated as an *amicus* in numerous cases around the country regarding pleading standards in antitrust cases, including *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *District of Columbia v. Amazon.com, Inc.*, 2021-CA-001775-B (D.C. Super. Ct. 2021), *appeal docketed*, No. 22-CV-657 (D.C. Aug. 8, 2022); and *New York v. Meta Platforms Inc.*, No. 21-7078 (D.C. Cir. argued Sep. 19, 2022).

The Chamber believes that the fair and equitable enforcement of the Sherman Act and the Clayton Act is good for business: it promotes fair competition that is at the heart of a market economy. In the Chamber's experience, however, the goals of both are undermined by permitting antitrust claims based on attenuated and speculative allegations to proceed. Discovery in such lawsuits is typically burdensome and enormously expensive, and rarely yields any actual evidence of an antitrust violation.

---

[1] *Amicus curiae* states that no counsel for any party authored this brief in whole or in part and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

1

Worse, the cost of such discovery frequently drives defendants to settle meritless cases. Such lawsuits stifle, rather than promote, competition, by forcing companies to spend money on litigation costs that would otherwise be put to productive use.

The Chamber and its members have a strong interest in this case. The Chamber's members are frequently named as defendants in civil suits, including antitrust suits. Its members have an interest in ensuring that federal courts adhere to the plausibility standard set forth by the Supreme Court in *Twombly*. That standard protects businesses by ensuring that they will not face costly discovery unless plaintiffs can plead facts plausibly demonstrating their entitlement to relief and by deterring forum-shopping. The plausibility standard also protects our court system by preventing its resources from being overwhelmed by frivolous litigation. And adherence to *Twombly* is particularly important in antitrust cases like this one, in which denial of a motion to dismiss based on flimsy allegations could open the door to extraordinarily broad discovery.

**INTRODUCTION**

This Court should grant interlocutory review of the district court's denial of Defendant's motion to dismiss. As the district court itself recognized, its decision involves a controlling and debatable question of law—how district courts should apply *Twombly* to standing in antitrust cases brought by a competitor's consumers. *Twombly* requires a plaintiff to allege facts that "raise a right to relief above the speculative level." 500 U.S. at 555-56. For antitrust claims, a plaintiff cannot show a right to relief without making plausible allegations of a direct harm proximately caused by the alleged antitrust violation. *See Associated Gen. Contractors v. Cal. State Council*

*of Carpenters*, 459 U.S. 519, 535-37 (1983). Whether Plaintiffs' allegations of harm based on a competitor's increased prices meet this standard, especially in light of *Twombly*'s dismissal of allegations with an "obvious alternative explanation," 550 U.S. at 567, is at least a debatable question. And this case should be over if Plaintiffs' allegations are not enough.

The question is important too. As *Twombly* itself noted, the "unusually high cost of discovery in antitrust cases" demands rigorous enforcement of pleading standards. *Id.* at 558. Once a claim has survived a motion to dismiss, these litigation costs might force a defendant to "settle even anemic cases." *Id.* at 559. The pressure to settle is made worse in cases like this one by the prospect of treble damages on behalf of a nationwide class. *See* 15 U.S.C. § 15. These pressures should be especially concerning when antitrust standing is at issue: too lax an approach would allow plaintiffs to create pressure for a substantial settlement without even plausibly alleging a statutorily cognizable harm. And since antitrust plaintiffs can rely on unusually generous venue provisions, they will often be able to sue in a district that makes surviving a motion to dismiss—and creating pressure to settle—easiest. *See* 15 U.S.C. § 22.

For these reasons, the Chamber respectfully asks this Court grant interlocutory review.

## ARGUMENT

### I. IT IS CONTESTABLE WHETHER PLAINTIFFS MET THE *TWOMBLY* STANDARD.

In its landmark *Twombly* decision, the Supreme Court clarified what is required for an antitrust claim to survive a motion to dismiss. *Twombly* held that allegations of parallel conduct and a bare assertion of a conspiracy were not enough. 550

3

U.S. at 557-78. It rejected the use of "labels and conclusions" as well as a "formulaic recitation of the elements of a cause of action." *Id.* at 555. A plaintiff must allege "something beyond the mere possibility" of anticompetitive conduct. *Id.* at 557.

But the *Twombly* Court did not stop there. It went on to explain what that "something" *is* at the pleading stage. *Twombly*, 550 U.S. at 557-58. The allegations must include facts sufficient "to raise a right to relief above the speculative level" and "raise a reasonable expectation that discovery will reveal evidence" of harmful anti-competitive conduct. *Id.* at 555-56. As with any underlying claim, Plaintiffs must provide *plausible* allegations entitling them to relief, not simply *possible* allegations. *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("*Twombly* expounded the pleading standard for 'all civil actions'"). Even more helpful for the present case, *Twombly* itself was an antitrust case, and the Supreme Court was concerned with ensuring that the expensive discovery associated with antitrust cases would plausibly reveal evidence of unlawful conduct. *See* 550 U.S. at 557–58. By applying this standard, courts and parties could avoid costly and burdensome litigation over meritless claims.

For antitrust cases like this one, Plaintiffs must ultimately show that Defendants engaged in anticompetitive conduct that caused direct harm to Plaintiffs. *See Associated Gen. Contractors*, 459 U.S. at 535-37. Thus, at the pleading stage, *Twombly* requires Plaintiffs to plausibly allege both unlawful conduct *and* direct harm proximately caused by the alleged antitrust violation. Plaintiffs attempt to meet this burden by alleging that reduced competition caused by the T-Mobile-Sprint merger allowed AT&T and Verizon to raise their prices, even though two federal

4

judges, the DOJ, and the FCC already concluded that the merger did not run afoul of the law. *See Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 13 (1979) (noting that when "the Federal Executive and Judiciary have carefully scrutinized" the challenged conduct, "we have a unique indicator that the challenged practice may have redeeming competitive virtues"). Indeed, the agencies and the court determined not only that the merger complied with federal antitrust laws but that the merger would be in the public interest. *See United States v. Deutsche Telekom AG*, Civ. No. 19-2232, 2020 WL 1873555, at *5 (D.D.C. Apr. 14); Exhibit 1 ("FCC Order"), ECF No. 79-3. Plaintiffs' bare allegations of harm are undermined by each of these final judgments, which serve as "unique indicator[s] that the challenged practice may have redeeming competitive virtues." *Broad. Music, Inc.*, 441 U.S. at 13; *see also S. Austin Coal. Comm. Council v. SBC Comm'ns Inc.*, 191 F.3d 842, 844 (7th Cir. 1999) (the government's views on a merger are "informative" in follow-on antitrust suits).

Plaintiffs' reliance on competitors' increased prices, and alleged harm to competitors' customers, raises an important and contestable question. *Twombly* instructs that a plaintiff cannot push his claim across the line from possible to plausible when there is an "obvious alternative explanation" for the alleged conduct. 550 U.S. at 567. The district court recognized that the Second and Eleventh Circuits held that "plaintiffs could not plausibly allege the requisite direct link" for standing based on competitors' price changes. Interlocutory Appeal Order, ECF No. 176 at 6-7. It recognized too that plaintiffs are "similarly-situated" since they argue that they were injured by competitors' price increases. *Id.* at 7. The Second and Eleventh Circuit decisions

5

illustrate that, at a minimum, "reasonable minds could differ on" whether that is enough after *Twombly*. *Id*.

Here, there are alternative explanations for AT&T's and Verizon's price increases that have nothing to do with the merger. *See Twombly*, 550 U.S. at 567; *see also McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). They could have raised their prices due to supply-chain disruptions during the COVID-19 pandemic, changes in demand, inflation, product development costs, or myriad other reasons. Yet the district court rejected these possibilities based on allegations that AT&T and Verizon were not as responsive to prices after the merger was announced and then increased their respective prices in 2022.

No decision from this Court answers whether an antitrust plaintiff can establish standing based on a competitor's increased price. *United States Gypsum Company v. Indiana Gas Company* narrowly held that customers of a fringe firm could show standing based on raised prices in a cartel case. 350 F.3d 623, 628 (7th Cir. 2003). As the district court recognized, that decision has not reached "outside the cartel context." Interlocutory Appeal Order, ECF No. 176 at 8. But more importantly, the decision predates *Twombly*'s recognition that alleged conduct is not enough when there is an "obvious alternative explanation." 550 U.S. at 567. This Court has never addressed whether allegations based on a competitor's pricing satisfy "the modern pleading standard." Interlocutory Appeal Order, ECF No. 176 at 8.

It is thus debatable whether Plaintiffs' allegations plausibly show that the merger itself proximately caused the third parties to raise their prices, as opposed to

6

independent third-party business and pricing decisions after the merger was concluded. This Court should grant review and clarify how the *Twombly* standard applies in these circumstances. *See generally Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675-76 (7th Cir. 2000).

## II. *TWOMBLY*'S POLICY JUSTIFICATIONS ARE ESPECIALLY RELEVANT IN ANTITRUST CLASS ACTIONS.

The Supreme Court's *Twombly* decision emphasized not only Rule 8, but also the burdens imposed on defendants once an antitrust claim survives a motion to dismiss. The Court warned that "proceeding to antitrust discovery can be expensive." *Twombly*, 550 U.S. at 558; *see also Lupia v. Stella D'Oro Biscuit Co.*, 586 F.2d 1163, 1167 (7th Cir. 1978) (acknowledging that "antitrust trials often encompass a great deal of expensive and time consuming discovery"). It recognized that, unfortunately, district courts' success in "checking discovery abuse has been on the modest side." *Twombly*, 550 U.S. at 559. Thus, "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases." *Id.*; *see also Smith v. Duffey*, 576 F.3d 336, 340 (7th Cir. 2009) (Discovery costs "can be so steep as to coerce a settlement on terms favorable to the plaintiff even when his claim is very weak."). To avoid unwarranted and abusive discovery, the Supreme Court counseled that a district court should require "some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558 (quoting *Assoc. Gen. Contractors of Cal.*, 459 U.S. at 528 n.17).

Following *Twombly*, this Court has recognized that the discovery expense and pressure to settle antitrust litigation support certification under § 1292. "*Twombly* …

is designed to spare defendants the expense of responding to bulky, burdensome discovery unless the complaint provides enough information to enable an inference that the suit has sufficient merit." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625 (7th Cir. 2010). A misapplication of Twombly in a "complex case" that would "immerse the parties in the discovery swamp … create[s] irrevocable as well as unjustifiable harm to the defendant that only an immediate appeal can avert." *Id.* at 626.

The pressure to settle is compounded by the threat of massive antitrust liability. A defendant must pay "threefold the damages" if found liable for an antitrust violation. 15 U.S.C. § 15. The resulting damages can be "economically devastating." Edward D. Cavanagh, *The Private Antitrust Remedy: Lessons from the American Experience*, 41 Loy. U. Chi. L.J. 629, 633-34 (2010). As a result, antitrust "[d]efendants frequently face a Hobson's choice: either pay some amount to settle even though they believe in their innocence, or try the matter and risk uncapped liability." Edward D. Cavanagh, *Contribution, Claim Reduction, and Individual Treble Damage Responsibility; Which Path to Reform of Antitrust Remedies?*, 40 Vand. L. Rev. 1277, 1284 (1987). The threat of treble damages creates intense pressure to settle even weak claims.

These pressures to settle are further exacerbated in cases, like this one, where plaintiffs seek certification of a nationwide class. As the Supreme Court has recognized, the "[c]ertification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon meritorious defenses." *Coopers & Lybrand v. Livesay*, 437 U.S.

8

463, 476 (1978); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (noting "the risk of 'in terrorem' settlements that class actions entail"). Judge Friendly described the settlements that result from this pressure as "blackmail settlements." Henry J. Friendly, *Federal Jurisdiction: A General View* 120 (1973). This threat, present in all class actions, is especially powerful in antitrust class actions where a class could recover treble damages.

*Twombly* dealt with the allegations needed to plausibly allege a conspiracy, but the risk of unwarranted discovery and other litigation costs is particularly concerning when standing is in dispute. To begin, *Twombly* applies to all the allegations needed to "state a claim to relief that is plausible on its face," 550 U.S. at 570, and a plaintiff cannot obtain relief without showing standing. More importantly, antitrust standing asks whether a plaintiff has suffered a statutorily cognizable injury causally linked to the defendant's conduct. For example, the antitrust standing dispute here focuses on whether plaintiffs have alleged an injury proximately caused by Defendant's purportedly anticompetitive merger. The consequences of failing to enforce *Twombly*'s plausibility requirement on that question would be particularly stark: defendants would face immense pressure to settle claims with plaintiffs even though they had failed to plausibly allege a harm necessary to get them through the courthouse door.

The extensive scrutiny this merger has already undergone further compounds the need to faithfully apply *Twombly* here. Before T-Mobile and Sprint's merger, the FCC found that the merger would have "competitive benefits" under conditions

imposed by the FCC. FCC Order, ECF No. 79-3 at 169 ¶ 385. The Department of Justice and the United States District Court for the District of Columbia concluded similarly that the merger did not run afoul of the law. *See* DOJ Complaint, ECF No. 79-4; DOJ Response to Public Comments, ECF No. 79-14; *United States v. Deutsche Telekom AG*, 2020 WL 1873555, at *7. The district court found that a proposed judgment approving the merger was "in the public interest" after reviewing an extensive record including public comments, amicus briefs, and government submissions. *Deutsche Telekom*, 2020 WL 1873555, at *7. Even after that, the merger survived a challenge from thirteen states and the District of Columbia. The Southern District of New York found that the merger was "not reasonably likely" to reduce competition. *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 248 (S.D.N.Y. 2020).

In this context, permitting a suit to proceed without ensuring *Twombly* has been satisfied would discourage mergers that benefit consumers. Although by no means necessary to dismissal of a suit like this one under *Twombly*, the merger's survival of extensive review serves as a "unique indicator" that it has "redeeming competitive virtues." *Broad. Music, Inc.*, 441 U.S. at 13. Subjecting a defendant to the costs of antitrust discovery without first ensuring that plaintiffs have satisfied *Twombly* would deter mergers despite these "redeeming competitive virtues." *Id*. Such deterrence would be harmful for not just the companies involved, but for the consumers and employees who rely upon them and for the economy as a whole.

### III. *TWOMBLY*'S APPLICATION TO ANTITRUST STANDING MUST BE REINFORCED.

Searching review of the standing question is necessary to avoid creating an incentive to forum shop. As the district court itself acknowledged, other courts have

10

taken a more demanding approach to antitrust standing. The Second Circuit, for example, has affirmed dismissal of suits brought by third parties who did not transact with the defendants because plaintiffs' alleged injuries were too remote to be attributed to the alleged anticompetitive conduct. *See, e.g., Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp.*, 22 F.4th 103, 109 (2d Cir. 2021); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 136, 140-41 (2d Cir. 2021). Likewise, the Eleventh Circuit dismissed a similar suit where the plaintiffs claimed an injury stemming from pricing decisions made by a third party. *Austin v. Blue Cross & Blue Shield of Ala.*, 903 F.2d 1385, 1392-93 (11th Cir. 1990).

But a plaintiff class will often be able to opt out of jurisdictions that more rigorously enforce *Twombly*'s plausibility standard and the requirements of antitrust standing. Antitrust claims involve unusually expansive venue rules. The Clayton Act provides that an antitrust suit can be brought "not only in the judicial district whereof [the defendant] is an inhabitant, but also in any district wherein it may be found or transacts businesses." 15 U.S.C. § 22. While this provision "falls well short of providing universal venue," "it has been more generous than the general venue statute, at least in the case of out-of-state domestic corporations." *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 725 (7th Cir. 2013). And for the kinds of corporations often involved in post-merger antitrust litigation, the inclusion of districts where they "transact[] business" means that a number of venues will be available to a plaintiff class. 15 U.S.C. § 22.

As a result, companies will often be subject to suit in jurisdictions where the courts have imposed less stringent antitrust standing requirements at the pleading stage. For example, whereas the Second Circuit held that "independent decisions [of third parties] snap the chain of causation," *Schwab*, 22 F.4th at 116, the district court here held that a competitor's consumers could sue over pricing decisions of the non-defendant competitor because the consumers are "in that market," ECF No. 114 at 29. And whereas the Eleventh Circuit found "a remote and tenuous connection" between the plaintiff and the defendant based on third-party decisions, *Austin*, 903 F.2d at 1393, this Court found that a similar legal theory provided a "sufficient" causal link, ECF No. 114 at 32. In the face of differences like these, plaintiffs will be incentivized to sue in venues whose approach to antitrust standing makes it easier to survive a motion to dismiss. And these pleading-stage differences will not be without consequence. As *Twombly* warned, antitrust discovery is especially burdensome and expensive. 550 U.S. at 558. Defendants will be sued in districts where they (and non-party companies) are more likely to confront these expenses—and the pressure to settle even meritless claims that goes with them.

If upheld, the district court's approach could make the Seventh Circuit the forum of choice for plaintiffs looking to challenge mergers based on competitors' post-merger price increases. That risk is particularly acute in a high-inflation environment where post-merger prices attributable to economy-wide factors, rather than the merger itself, will be common. *Cf.* Thomas Hazlett & Robert Crandall, *Competitive Effects of T-Mobile/Sprint: Analysis of a "4-3" Merger*, at 18–20 (Feb. 20, 2024)

(finding that, adjusted for inflation, prices declined in the U.S. mobile market following the T-Mobile-Sprint merger), perma.cc/EB5W-4VBY. This case provides an excellent opportunity for this Court to consider these issues and weigh in before the Seventh Circuit becomes a destination for these types of antitrust class actions.

## CONCLUSION

For the foregoing reasons, the Court should grant interlocutory review of the district court's denial of Defendant's motion to dismiss.

Respectfully submitted,

By: *s/ Gilbert C. Dickey*

| | |
|---|---|
| Jennifer B. Dickey | Gilbert C. Dickey |
| Tyler S. Badgley | Kathleen S. Lane |
| U.S. CHAMBER LITIGATION CENTER | CONSOVOY MCCARTHY PLLC |
| 1615 H St., NW | 1600 Wilson Blvd., Suite 700 |
| Washington, DC 20062 | Arlington, VA 22201 |
| | (703) 243-9423 |
| | gilbert@consovoymccarthy.com |
| | katie@consovoymccarthy.com |
| Dated: April 10, 2024 | *Counsel for Amicus Curiae the Chamber of Commerce of the United States of America* |

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Circuit Rule 29 because it contains 3,366 words, excluding the portions exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook font.

Dated: April 10, 2024                  Respectfully submitted,

                                     /s/ *Gilbert C. Dickey*
                                       Gilbert C. Dickey