# IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

T-MOBILE US, INC.,

*Petitioner,*

v.

ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY on behalf of themselves and all others similarly situated,

*Respondents.*

On Petition To Appeal From The United States District Court For The Northern District Of Illinois Case No. 22-cv-3189 | The Honorable Thomas M. Durkin

## BRIEF OF *AMICUS CURIAE* CTIA – THE WIRELESS ASSOCIATION IN SUPPORT OF T-MOBILE'S PETITION FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(B)

Melanie Walker
DLA PIPER LLP (US)
444 West Lake Street Suite 900
Chicago, Illinois 60606
Tel: (312) 368-4000
melanie.walker@us.dlapiper.com

Peter Karanjia
DLA PIPER LLP (US)
500 8th Street, NW
Washington, D.C. 20004
Tel: (202) 799-4135
peter.karanjia@dlapiper.com

*Counsel for Amicus Curiae, CTIA – The Wireless Association*

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>24-8013</u>

Short Caption: <u>T-Mobile v. Dale et al.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>CTIA - The Wireless Association</u>

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>DLA Piper LLP (US)</u>

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and
    <u>None</u>

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
    <u>None</u>

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
<u>N/A</u>

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
<u>N/A</u>

Attorney's Signature: <u>/s/ Peter Karanjia</u>     Date: <u>4/15/2024</u>

Attorney's Printed Name: <u>Peter Karanjia</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☑     **No** ☐

Address: <u>500 8th Street, NW</u>

Phone Number: <u>(202) 799-4135</u>     Fax Number: <u>(202) 799-5000</u>

E-Mail Address: <u>peter.karanjia@dlapiper.com</u>

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>24-8013</u>

Short Caption: <u>T-Mobile v. Dale et al.</u>

　　To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

　　The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

<table>
<tr><td>☐</td><td>**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**</td></tr>
</table>

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>CTIA - The Wireless Association</u>

_____

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>DLA Piper LLP (US)</u>

_____

(3)　　If the party, amicus or intervenor is a corporation:

　　i)　　Identify all its parent corporations, if any; and

　　<u>None</u>

　　ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

　　<u>None</u>

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

　<u>N/A</u>

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

　<u>N/A</u>

Attorney's Signature: <u>/s/ Melanie Walker</u>　　　　Date: <u>4/15/2024</u>

Attorney's Printed Name: <u>Melanie Walker</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: <u>444 West Lake Street Suite 900</u>

_____

Phone Number: <u>(312) 368-4000</u>　　　　Fax Number: <u>(312) 236-7516</u>

E-Mail Address: <u>melanie.walker@us.dlapiper.com</u>

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-8013

Short Caption: T-Mobile v. Dale et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

CTIA - The Wireless Association

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

DLA Piper LLP (US)

(3)     If the party, amicus or intervenor is a corporation:

     i)     Identify all its parent corporations, if any; and

     None

     ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     None

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Colin McGrath      Date: 4/15/2024

Attorney's Printed Name: Colin McGrath

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address: 2000 Avenue of the Stars, Suite 400

Phone Number: (310) 595-3047      Fax Number: (310) 595-3347

E-Mail Address: colin.mcgrath@us.dlapiper.com

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................ii

INTEREST OF AMICUS CURIAE AND
    SUMMARY OF ARGUMENT ......................................................... 1

ARGUMENT ........................................................................................ 3

    I.    Intense Competition in the Wireless Market Following
        the Merger Underscores the Implausible and
        Speculative Nature of Plaintiffs' Theory of Antitrust
        Standing. ............................................................................... 4

    II.   The Antitrust Standing Requirement Provides a
        Critical Guardrail Against Burdensome and Intrusive
        Discovery. .......................................................................... 10

CONCLUSION ................................................................................... 13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................ 4, 12

*AT&T Co. v. Central Office Telephone, Inc.,*
524 U.S. 214, 223 (1998) ....................................................................... 6

*Bastien v. AT&T Wireless Servs.,*
205 F.3d 983 (7th Cir. 2000) ................................................................. 6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................ 4, 10

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC,*
976 F.3d 761 (7th Cir. 2020) ................................................................. 2

## Statutes

28 U.S.C. § 1292 ....................................................................................... 3

## Other Authorities

Bureau of Labor Statistics, *News Release, Consumer Price Index – October 2022* (Nov. 10, 2022), available at https://www.bls.gov/news.release/archives/cpi_11102022.pdf ....................................................................................................... 5

Bureau of Labor Statistics, *News Release, Consumer Price Index – October 2023* (Nov. 14, 2023), available at https://www.bls.gov/news.release/archives/cpi_11142023.pdf ....................................................................................................... 5

Bureau of Labor Statistics, U.S. Department of Labor, *The Economics Daily, Consumer Prices Up 9.1 Percent Over the Year Ended June 2022* (July 18, 2022), available at https://www.bls.gov/opub/ted/2022/consumer-prices-up-9-1-percent-over-the-year-ended-june-2022-largest-increase-in-40-years.htm ................................................................... 8

*Communications Marketplace Report*, FCC No. 22-103, 2022 WL 18110553 (rel. Dec. 30, 2022), available at https://docs.fcc.gov/public/attachments/FCC-22-103A1.pdf ............ 6, 7

U.S. Inflation Calculator, Current US Inflation Rates: 2000-2023, available at https://www.usinflationcalculator.com/inflation/current-inflation-rates/ ................................................................... 8

Frank H. Easterbrook, Discovery as Abuse, 69 B.U. L. Rev. 635 (1989) ........................................................................... 10

# INTEREST OF AMICUS CURIAE
# AND SUMMARY OF ARGUMENT[1]

*Amicus Curiae* CTIA – The Wireless Association ("CTIA") represents the U.S. wireless communications industry and the companies throughout the mobile ecosystem that enable Americans to lead a 21st century connected life. The association's members include wireless providers, device manufacturers, suppliers, as well as application and content companies.

CTIA has a strong interest in this case. Plaintiffs are customers of two CTIA members: AT&T and Verizon, which are not parties to this case. Compl. (Dist. Ct. Dkt. No. 1) ¶¶ 12–18. Plaintiffs' antitrust claims against T-Mobile rest on a boundless theory of antitrust standing, positing a daisy chain of events that Plaintiffs seek to trace to the T-Mobile-Sprint merger. Under Plaintiffs' theory, the merger between *T-Mobile and Sprint* somehow caused third parties *AT&T and Verizon* to charge higher prices for their nationwide wireless plans, thereby

---

[1] No counsel for a party authored CTIA's *amicus* brief in whole or in part; no party or party's counsel contributed money to fund preparing or submitting the brief; and no person other than *amicus curiae* CTIA, its members, or its counsel contributed money to fund preparing or submitting the brief.

supposedly injuring Plaintiffs. Compl. ¶¶ 106–108, 122, 129. This theory raises significant concerns for CTIA, its members, and businesses generally because it weakens the guardrails that courts have established to protect parties from expending significant time and energy to litigate speculative claims.

CTIA submits this *amicus* brief to explain the "broader regulatory or commercial context" of the antitrust standing question raised in T-Mobile's petition, to provide "practical perspectives on the consequences of potential outcomes," and to offer empirical data to aid the Court's analysis. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 976 F.3d 761, 763 (7th Cir. 2020). CTIA describes the intense competitive pressures that the wireless industry has continued to face after the T-Mobile-Sprint merger—a context that underscores the implausibility of Plaintiffs' posited chain of indirect causation here. CTIA also explains the destabilizing effects that a relaxed pleading standard and acceptance of Plaintiffs' speculative theory of antitrust standing and causation would have on the wireless industry and countless other companies.

Antitrust standing is a bedrock requirement that ensures that the antitrust laws properly serve their purpose and helps protect businesses

(including CTIA members) from the burdens of frivolous lawsuits seeking to extract settlement payments for meritless claims. Over-expansive application of antitrust standing rules increases costs for businesses, and can lead to increased prices for consumers. Here, as T-Mobile's petition for interlocutory appellate review ably shows, Plaintiffs' theory of standing—which the District Court's November 2, 2023 order accepted (Petition, Ex. A)—is at the very least highly "contestable." CTIA members therefore have an interest in this Court's review to promote legal certainty and predictability on issues of importance to CTIA members. CTIA's members also have an interest in avoiding the burden of onerous and invasive requests for third-party discovery in this case, where there is at least a substantial question whether it should proceed past the pleading stage.

## ARGUMENT

This Court should grant interlocutory review of the District Court's order denying T-Mobile's motion to dismiss the complaint (Petition, Ex. A) under 28 U.S.C. § 1292(b) to resolve case-dispositive legal questions concerning consumer standing in antitrust litigation that have critical importance to the wireless industry.

## I. Intense Competition in the Wireless Market Following the Merger Underscores the Implausible and Speculative Nature of Plaintiffs' Theory of Antitrust Standing.

Plaintiffs seek to bring claims based on a highly speculative and implausible theory: they allege that the 2020 merger between T-Mobile and Sprint injured them by causing *other* wireless carriers (AT&T and Verizon) to raise their prices. This theory is insufficient, as a matter of law, to establish antitrust standing. And it is entirely implausible when viewed against the backdrop of robust competition that characterizes the market for wireless services in the wake of the merger. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plaintiff must "state a claim to relief that is plausible on its face") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The District Court's decision to allow Plaintiffs' claims to proceed on that speculative basis not only flies in the face of basic principles of antitrust standing (*see* T-Mobile Pet. at 14–22), but is also contrary to common sense. Following the T-Mobile-Sprint merger in 2020, competition among AT&T, Verizon, and T-Mobile remains fierce—as a simple comparison between the price of wireless services and the prices of other consumer goods and services illustrates. Prices consumers pay

for wireless services have *fallen* even while inflation reached historic levels in 2022. The October 2022 Consumer Price Index report issued by the U.S. Bureau of Labor Statistics shows that the nationwide "all items index" increased 7.7% over the prior 12 months (before seasonal adjustment). Bureau of Labor Statistics, *News Release, Consumer Price Index – October 2022* at 1 (Nov. 10, 2022), available at https://www.bls.gov/news.release/archives/cpi_11102022.pdf. Yet at the same time that overall consumer prices increased, the cost to consumers of wireless phone services *fell*. *Id.* at Table 2 (showing 1.4% drop in prices, before seasonal adjustment).

Likewise, the October 2023 Consumer Price Index report shows that while the nationwide "all items index" increased 3.2% over 12 months (before seasonal adjustment), the cost of wireless phone services continued to fall over the same period. Bureau of Labor Statistics, *News Release, Consumer Price Index – October 2023* at 1 (Nov. 14, 2023) (showing fall in prices by 0.4%), available at https://www.bls.gov/news.release/archives/cpi_11142023.pdf; *id.* at Table 2.

At the same time, wireless providers have accelerated their network upgrades: the national rollout of 5G networks progressed at a pace twice as fast as the industry's 4G rollout. *Communications Marketplace Report*, FCC No. 22-103, 2022 WL 18110553 (rel. Dec. 30, 2022) ("*2022 Communications Marketplace Report*") ¶ 5, available at https://docs.fcc.gov/public/attachments/FCC-22-103A1.pdf; *id.* at Figure II.B.39. The industry's investment in wireless networks has driven increases in download speeds and service quality.[2] From the first half of 2020 to the first half of 2021, for example, median download speeds for mobile broadband data services have increased from 28 Mbps to 30.5 Mbps. *2022 Communications Marketplace Report* at Figure II.B.30.

Network investments also have ensured that consumers of wireless services enjoy broad, nationwide coverage. As of December 2021, more than 99 percent of the U.S. population lives in areas with 4G LTE coverage, and 94.5% of Americans' homes were covered by at least three 4G LTE networks. *2022 Communications Marketplace Report* at Figure

---

[2] As this Court has recognized, service quality and price are inextricably linked. *See Bastien v. AT&T Wireless Servs.,* 205 F.3d 983, 988 (7th Cir. 2000) ("[A] complaint that service quality is poor is really an attack on the rates charged") (citing *AT&T Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 223 (1998)).

II.B.37; *id.* ¶ 147. Approximately 98 percent of the U.S. population now lives in areas with 5G coverage. *Id.* ¶ 149; *id.* at Figure II.B.39. The industry's rapid improvements in broadband infrastructure further reflect the intensity of competition among wireless providers.

Against this backdrop, it is unsurprising that Plaintiffs have not identified a plausible causal link between (i) the supposed reduction in competition that they allege followed the T-Mobile-Sprint merger, and (ii) AT&T's and Verizon's independent pricing decisions. Rather, Plaintiffs point to price increases on a subset of wireless plans that occurred more than *two years* after the merger closed *and* while the national economy was still experiencing the aftershocks of the COVID-19 pandemic and record-high levels of inflation. Plaintiffs allege that on May 3, 2022, AT&T announced a rate increase on "older wireless plans by $6 per month for single-line users" and "$12 per month for customers with multiple lines." Compl. ¶ 107. But Plaintiffs make no attempt to draw a plausible connection between the price increases on these "older wireless plans" and the merger—as opposed to other factors impacting AT&T's pricing decisions. Plaintiffs also point to Verizon's announcement that, starting in June 2022, it would raise the administrative fee it charges

postpaid customers by $1.35 per voice line. Compl. ¶ 108. Plaintiffs do not plausibly allege, however, that any increase in Verizon's administrative fees was the result of the merger. Even at the Rule 12(b) stage, these bare allegations do not support an inference that Plaintiffs' asserted injuries are traceable to the merger—in particular, where publicly available data show that consumer wireless prices have fallen since the merger.

Nor is Plaintiffs' attempt to link price adjustments to the merger plausible in light of broader, macroeconomic factors. The very sources on which Plaintiffs rely state that the providers adopted their price adjustments to account for the sharp rates of inflation that have gripped the economy in recent years. *See* Compl. ¶¶ 107 n.168, 108 nn.169–170. In 2022, the U.S. economy endured the highest rates of inflation it had experienced in over forty years, with consumer prices up 9.1% in June 2022, and inflation rates averaging 8.0% for the year.[3] Yet, as discussed

---

[3] *See* Bureau of Labor Statistics, U.S. Department of Labor, *The Economics Daily, Consumer Prices Up 9.1 Percent Over the Year Ended June 2022* (July 18, 2022), available at https://www.bls.gov/opub/ted/2022/consumer-prices-up-9-1-percent-over-the-year-ended-june-2022-largest-increase-in-40-years.htm; U.S. Inflation Calculator, *Current US Inflation Rates: 2000-2023,* available at https://www.usinflationcalculator.com/inflation/current-inflation-rates/.

above, the prices consumers pay for wireless services have fallen while prices for many other consumer goods and services have increased. *See supra* at 4–5.

In sum, publicly available information confirms that the wireless services market is characterized by robust competition, and that prices have continued to fall—even in the face of high inflation. This underscores the highly speculative and implausible nature of Plaintiffs' claims of harm from the merger, as well as their assertion of antitrust standing more broadly.

By accepting Plaintiffs' theory, the District Court's order permits wireless customers to pursue antitrust claims based on bare assertions that a third party increased its prices at some point after a competitor's merger, without alleging any facts showing a plausible causal link between the merger and the subsequent price change. This approach, if allowed to stand, risks exposing businesses to the burden of defending against meritless antitrust suits any time *another* business in the same industry closes a merger, including (as now) during a period of relatively high inflation. Competitors may make independent business decisions to raise prices as inflation drives up costs, and prospective plaintiffs may

rely on alleged timing correlations to pursue antitrust claims against the recently merged business. This risk of liability may discourage competition and pro-consumer mergers, as well as having other destabilizing effects on the economy.

This Court should grant review of the District Court's order allowing Plaintiffs' speculative claims to proceed. The order is inconsistent with the antitrust pleading standard, which is important to all businesses—including those in the wireless industry and throughout the mobile ecosystem.

## II. The Antitrust Standing Requirement Provides a Critical Guardrail Against Burdensome and Intrusive Discovery.

The Supreme Court in *Twombly* recognized that "proceeding to antitrust discovery can be expensive." 550 U.S. at 558. As the Court observed, even careful case management is insufficient to protect against "the problem of discovery abuse," and the threat of discovery expense "will push cost-conscious defendants to settle even anemic cases." *Id.* at 559; *see also* Frank H. Easterbrook, Discovery as Abuse, 69 B.U. L. Rev. 635, 638 (1989) ("Judges can do little about impositional discovery when parties control the legal claims to be presented and conduct the discovery themselves.") (cited in *Twombly*, 550 U.S. at 559).

The Supreme Court's concerns apply with full force here. Plaintiffs will not only continue to seek extensive discovery from T-Mobile if this case is allowed to move forward without the opportunity for interlocutory appellate review on important and case-dispositive questions of law; Plaintiffs' unbounded theory of antitrust standing also threatens to expose other industry participants to burdensome demands for non-party discovery. Indeed, subpoenas seeking reams of data and documents have already been served on non-parties (AT&T, DISH Network, and Verizon). *See* Dist. Ct. Dkt. No. 154. These subpoenas—which contain more than 100 separate requests for documents (many, with numerous subparts)— seek both (i) highly sensitive information concerning each of more than 400 subscribers and (ii) all documents concerning virtually every facet of non-parties' wireless business over the course of almost 15 years. In short, the subpoenas seek hundreds of millions of documents, imposing an astronomical cost on non-parties to this litigation—all based on a highly speculative theory of causation.

By applying a relaxed standard for antitrust standing, the District Court's order permits parties far downstream from an alleged antitrust violation to pursue litigation that would be disruptive and costly to the

entire industry. An interlocutory appeal would allow this Court to examine and provide critical guidance concerning how directly connected a posited harm must be to an alleged violation before plaintiffs are permitted to "unlock the doors of discovery," *Iqbal*, 556 U.S. at 678, from the industry.

An unduly relaxed antitrust standing standard poses numerous threats to the national economy. Permitting customers of competing carriers to pursue antitrust claims against T-Mobile here will incentivize an endless cast of potential plaintiffs to come forward alleging economic harms many steps removed from any consummated merger, even years after the merger has closed. That increased litigation risk threatens to inhibit economically beneficial mergers, burdens industry participants with the massive costs of defending against meritless antitrust claims when plaintiffs unlock the doors to discovery, and embroils non-party businesses in costly disputes as targets of non-party subpoenas—all, ultimately, at the consumer's expense. This Court should grant review of the order given the significant legal and practical ramifications it has for the industry.

## CONCLUSION

For the foregoing reasons, *amicus curiae* CTIA respectfully requests that this Court grant T-Mobile's petition for interlocutory review of the District Court's November 2, 2023 order.


Dated: April 15, 2024                Respectfully submitted,

                                     /s/ *Peter Karanjia*
                                     Peter Karanjia
                                     DLA PIPER LLP (US)
                                     500 8th Street, NW
                                     Washington, D.C. 20004
                                     Tel: (202) 799-4135
                                     Fax: (202) 863-7855
                                     peter.karanjia@dlapiper.com

                                     Melanie Walker
                                     DLA PIPER LLP (US)
                                     444 West Lake Street Suite 900
                                     Chicago, Illinois 60606
                                     Tel: (312) 368-4000
                                     melanie.walker@us.dlapiper.com

                                     *Counsel for Amicus Curiae, CTIA – The*
                                     *Wireless Association*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Seventh Circuit Rule 29 because it contains 2,300 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Century Schoolbook 14-point font.

Date: April 15, 2024

/s/ *Peter Karanjia*
Peter Karanjia

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *Peter Karanjia*
Peter Karanjia