No. 24-8013

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

T-MOBILE US, INC.,

*Petitioner,*

v.

ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY on behalf of themselves and all others similarly situated,

*Respondents,*

---

On Petition To Appeal From The United States District Court For The Northern District of Illinois, No. 1:22-cv-03189
Hon. Thomas M. Durkin, United States District Judge

---

## PLAINTIFFS' ANSWER IN OPPOSITION TO T-MOBILE'S PETITION FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(B)

---

Brendan P. Glackin
Lin Y. Chan
Nicholas W. Lee
Sarah D. Zandi
Jules A. Ross
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Phone: (415) 956-1000

Gary I. Smith Jr.
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (267) 702-2318

Robert Litan
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, D.C. 20006
Phone: (202) 559-9745

Eric L. Cramer
Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (415) 215-0962
Phone: (215)-875-5801

Kenneth N. Flaxman
ARDC No. 830399
Joel Flaxman
ARDC No. 6292818
**LAW OFFICES OF KENNETH N. FLAXMAN P.C.**
200 S Michigan Ave., Suite 201
Chicago, IL 60604
Phone: (312) 427-3200

Swathi Bojedla
Hill Brakefield
**HAUSFELD LLP**
888 16th Street N.W., Suite 300
Washington, D.C. 20006
Phone: (202) 540-7200

Joshua P. Davis
Kyla Gibboney
Julie Pollock
**BERGER MONTAGUE PC**
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Phone: (415) 689-9292

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-8013

Short Caption: T-Mobile v. Dale et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Anthony Dale, Brett Jackson, Johnna Fox, Benjamin Borrowman, Ann Lambert, Robert Anderson, and

Chad Hohenbery

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague PC; Hausfeld LLP; and

Law Offices of Kenneth N. Flaxman P.C.

(3)  If the party, amicus or intervenor is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Brendan P. Glackin          Date: 4/18/2024

Attorney's Printed Name:  Brendan P. Glackin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ✓  **No** ☐

Address:  275 Battery Street, Suite 2900

San Francisco, CA 94111

Phone Number: 1-415-956-1000          Fax Number: 1-415-956-1008

E-Mail Address: bglackin@lchb.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>24-8013</u>

Short Caption: <u>T-Mobile v. Dale et al.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Anthony Dale, Brett Jackson, Johnna Fox, Benjamin Borrowman, Ann Lambert, Robert Anderson, and</u>

<u>Chad Hohenbery</u>

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague PC; Hausfeld LLP; and</u>

<u>Law Offices of Kenneth N. Flaxman P.C.</u>

(3) If the party, amicus or intervenor is a corporation:

    i) Identify all its parent corporations, if any; and

    <u>N/A</u>

    ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    <u>N/A</u>

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>/s/ Lin Y. Chan</u>    Date: <u>4/18/2024</u>

Attorney's Printed Name: <u>Lin Y. Chan</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☐  No ☑

Address: <u>275 Battery Street, Suite 2900</u>

    <u>San Francisco, CA 94111</u>

Phone Number: <u>1-415-956-1000</u>    Fax Number: <u>1-415-956-1008</u>

E-Mail Address: <u>lchan@lchb.com</u>

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-8013

Short Caption: T-Mobile v. Dale et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Anthony Dale, Brett Jackson, Johnna Fox, Benjamin Borrowman, Ann Lambert, Robert Anderson, and

Chad Hohenbery

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague PC; Hausfeld LLP; and

Law Offices of Kenneth N. Flaxman P.C.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Jules A. Ross                Date: 4/18/2024

Attorney's Printed Name: Jules A. Ross

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 275 Battery Street, Suite 2900

San Francisco, CA 94111

Phone Number: 1-415-956-1000                Fax Number: 1-415-956-1008

E-Mail Address: jross@lchb.com

rev. 12/19 AK

Save As        Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-8013

Short Caption: T-Mobile v. Dale et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Anthony Dale, Brett Jackson, Johnna Fox, Benjamin Borrowman, Ann Lambert, Robert Anderson, and

Chad Hohenbery

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague PC; Hausfeld LLP; and

Law Offices of Kenneth N. Flaxman P.C.

(3)     If the party, amicus or intervenor is a corporation:

   i)     Identify all its parent corporations, if any; and

          N/A

   ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

        N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

        N/A

Attorney's Signature: /s/ Eric Cramer          Date: 4/18/2024

Attorney's Printed Name: Eric Cramer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes [ ]   No [✓]

Address: 1818 Market Street, Suite 3600

         Philadelphia, PA 19103

Phone Number: 415-215-0962                    Fax Number:

E-Mail Address: ecramer@bm.net

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-8013

Short Caption: T-Mobile v. Dale et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Anthony Dale, Brett Jackson, Johnna Fox, Benjamin Borrowman, Ann Lambert, Robert Anderson, and

    Chad Hohenberry

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague PC; Hausfeld LLP; and

    Law Offices of Kenneth N. Flaxman P.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Robert Litan      Date: 4/18/2024

Attorney's Printed Name:  Robert Litan

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]  No [✓]

Address:  2001 Pennsylvania Avenue, NW, Suite 300

    Washington, D.C. 2006

Phone Number: 202-559-9745      Fax Number:

E-Mail Address: rlitan@bm.net

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-8013

Short Caption: T-Mobile v. Dale et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Anthony Dale, Brett Jackson, Johnna Fox, Benjamin Borrowman, Ann Lambert, Robert Anderson, and

Chad Hohenbery

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague PC; Hausfeld LLP; and

Law Offices of Kenneth N. Flaxman P.C.

(3)    If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

         N/A

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Joshua Davis      Date: 4/18/2024

Attorney's Printed Name: Joshua Davis

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ☑

Address: 505 Montgomery Street, Sutie 625

San Francisco, CA 94111

Phone Number: 415-689-9292      Fax Number:

E-Mail Address: jdavis@bm.net

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-8013

Short Caption: T-Mobile v. Dale et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Anthony Dale, Brett Jackson, Johnna Fox, Benjamin Borrowman, Ann Lambert, Robert Anderson, and

    Chad Hohenbery

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague PC; Hausfeld LLP; and

    Law Offices of Kenneth N. Flaxman P.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Gary I. Smith Jr.    Date: 4/18/2024

Attorney's Printed Name: Gary I. Smith Jr.

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐  No ☑

Address: 600 Montgomery Street, Suite 3200

    San Francisco, CA 94111

Phone Number: 267-702-2318    Fax Number:

E-Mail Address: gsmith@hausfeld.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-8013

Short Caption: T-Mobile v. Dale et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Anthony Dale, Brett Jackson, Johnna Fox, Benjamin Borrowman, Ann Lambert, Robert Anderson, and

Chad Hohenberry

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Lieff Cabraser Heimann & Bernstein, LLP; Berger Montague PC; Hausfeld LLP; and

Law Offices of Kenneth N. Flaxman P.C.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Swathi Bojedla          Date: 4/18/2024

Attorney's Printed Name: Swathi Bojedla

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ☑

Address: 888 16th Street N.W., Suite 300

Washington, D.C. 20006

Phone Number: 202-540-7200          Fax Number:

E-Mail Address: sbojedla@hausfeld.com

rev. 12/19 AK

## Table of Contents

Page

INTRODUCTION ...................................................................................1

STATEMENT OF THE CASE ..............................................................4

ARGUMENT ..........................................................................................11

I.     This Question Has Been Settled in the Seventh Circuit. .....................11

II.    Market Participants Have Standing. ....................................................16

      A.     The Clayton Act Broadly Protects Consumers. ..........................16

      B.     *Lexmark* and *McCready* Confirm the Correctness of *Gypsum*. ...........................................................................................18

      C.     The Seventh Circuit Follows the Majority Approach. ...............21

III.    T-Mobile Cannot Conjure a Contestable Question out of *Twombly*. ...............................................................................................25

      A.     The Application of *Twombly* Is Not Contestable. ......................25

      B.     The Complaint Pleads Copious Facts, Not Assumptions. .........26

      C.     T-Mobile's Other Arguments Lack Merit. ..................................30

CONCLUSION ......................................................................................32

# Table of Authorities

## Cases

*Ahrenholz v. Bd. of Trs.*,
  219 F.3d 674 (7th Cir. 2000) .................................................................1

*Antoine Garabet, M.D. Inc. v. Autonomous Tech. Corp.*,
  116 F. Supp. 2d 1159 (C.D. Cal. 2000) ...............................................23

*Apple Inc. v. Pepper*,
  139 S. Ct. 1514 (2019) ..........................................................................14

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of
  Carpenters*,
  459 U.S. 519 (1983) ("*AGC*") ...............................................17, 18, 21

*Atl. Richfield Co. v. USA Petrol. Co.*,
  495 U.S. 328 (1990) ("*ARCO*") .........................................................24

*Austin v. Blue Cross & Blue Shield of Ala.*,
  903 F.2d 1385 (11th Cir. 1990) ............................................................24

*Blue Shield of Virginia v. McCready*,
  457 U.S. 465 (1982) .................................................................18, 20, 24

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*,
  429 U.S. 477 (1997) ..............................................................................24

*Cargill v. Monfort of Colo., Inc.*,
  479 U.S. 104 (1986) ..............................................................................24

*Castro v. Sanofi Pasteur Inc.*,
  134 F. Supp. 3d 820 (D.N.J. 2015) ......................................................29

Table of Authorities

(Continued)

Page

*Castro v. Sanofi Pasteur Inc.*,
No. 11-7178, 2012 WL 12516572 (D.N.J. Aug. 6, 2012)................................29

*Dura Pharms. Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................21

*FTC v. PPG Indus., Inc.*,
798 F.2d 1500 (D.C. Cir. 1986)..........................................................28

*Gelboim v. Bank of Am. Corp.*,
823 F.3d 759 (2d Cir. 2016)...............................................................23

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992).....................................................................19, 21

*Hughes v. Nw. Univ.*,
63 F.4th 615 (7th Cir. 2023).............................................................3, 30

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977)............................................................................18

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
19 F.4th 127 (2d Cir. 2021)......................................................23, 24, 31

*In re Ariz. Dairy Prods. Litig.*,
627 F. Supp. 233 (D. Ariz. 1985) .......................................................22

*In re Beef Industries Antitrust Litig.*,
600 F.2d 1148 (5th Cir. 1979).............................................................21

Table of Authorities

(Continued)

Page

*In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.,*
530 F. Supp. 36 (W.D. Wash. 1981) ................................................................22

*In re Broiler Chicken Antitrust Litig.,*
290 F. Supp. 3d 772 (N.D. Ill. 2017) ...............................................................17

*In re: Cathode Ray Tube (CRT) Antitrust Litig.,*
No. 11-cv-05514, 2016 WL 6246736 (N.D. Cal. Oct. 26, 2016) ...................22

*In re Coordinated Pretrial Proc. in Petrol. Prods. Antitrust Litig.,*
691 F.2d 1335 (9th Cir. 1982) ..........................................................................22

*In re Lower Lake Erie Iron Ore Antitrust Litig.,*
998 F.2d 1144 (3d Cir. 1993) ......................................................................21, 22

*In re Modafinil Antitrust Litig.,*
837 F.3d 238 (3d Cir. 2016) .............................................................................22

*In re Namenda Direct Purchaser Antitrust Litig.,*
331 F. Supp. 3d 152 (S.D.N.Y. 2018) .............................................................29

*In re Skupniewitz,*
73 F.3d 702 (7th Cir. 1996) ..............................................................................12

*In re Text Messaging Antitrust Litig.,*
630 F.3d 622 (7th Cir. 2010) ......................................................................25, 26

*J. Truett Payne Co. v. Chrysler Motors Corp.,*
451 U.S. 557 (1981) ...........................................................................................24

Table of Authorities

(Continued)

*Lexmark Intern'l, Inc. v. Static Control Components, Inc.,*
  572 U.S. 118 (2014)................................................................18, 19, 20

*Loeb Indus., Inc. v. Sumitomo Corp.,*
  306 F.3d 469 (7th Cir. 2002)....................................................*passim*

*Loeb v. Eastman Kodak Co.,*
  183 F.3d 704 (3d Cir. 1910) ............................................................18

*Lukis v. Whitepages Inc.,*
  542 F. Supp. 3d 831 (N.D. Ill. 2020)................................................26

*Mid-West Paper Prods. Co. v. Cont'l Grp, Inc.,*
  596 F.2d 573 (3d Cir. 1979) ............................................................22

*New York v. Deutsche Telekom AG,*
  439 F. Supp. 3d 179 (S.D.N.Y. 2020) ........................................28, 29

*Reiter v. Sonotone,*
  442 U.S. 330 (1979)........................................................................17

*Sanner v. Bd. of Trade,*
  62 F.3d 918 (7th Cir. 1995)......................................................*passim*

*Schwab Short-Term Bond Mkt. v. Lloyds Banking Grp. PLC,*
  22 F.4th 103 (2d Cir. 2021)............................................................31

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.,*
  902 F.3d 735 (7th Cir. 2018)..........................................................30

Table of Authorities

(Continued)

Page

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ............................................................ 26

*U.S. Gypsum Co. v. Ind. Gas Co.*,
   350 F.3d 623 (7th Cir. 2003) .................................................... *passim*

*United States v. H&R Block, Inc.*,
   833 F. Supp. 2d 36 (D.D.C. 2011) .................................................. 28

*Viamedia, Inc. v. Comcast Corp.*,
   951 F.3d 429 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 2877 (2021) ................ 17

**Statutes**

15 U.S.C. § 15(a) .................................................................... 16

**Treatises**

Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (5th ed.
   Supp. 2022) ....................................................................... 22, 23

**Other Authorities**

Decision Finding that T-Mobile USA, Inc. Should Be Sanctioned
   by the Commission for Violating Rule 1.1 of the
   Commission's Rules of Practice and Procedure, Nos. 18-07-
   011, 18-07-012, (Cal. Pub. Util. Comm'n Apr. 25, 2022),
   https://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M398/K9
   55/398955746.PDF ................................................................ 10

Table of Authorities

(Continued)

Page

DOJ & FTC, Merger Guidelines (Dec. 18, 2023),
https://www.ftc.gov/system/files/ftc_gov/pdf/P234000-NEW-
MERGER-GUIDELINES.pdf ..........................................................................28

**INTRODUCTION**

T-Mobile must identify a contestable question of law, the answering of which will accelerate this litigation's resolution.[1] Here the district court ruled that T-Mobile's challenge to plaintiffs' antitrust standing "runs headlong into the Seventh Circuit's decision in *Gypsum*."[2] Specifically, the *Gypsum* plaintiffs brought Sherman Act claims against a joint venture of two competitors that, they contended, increased the prices they paid in transactions with non-defendants. The Seventh Circuit rejected the argument mounted by T-Mobile here: that the plaintiffs lacked standing as a matter of law because they did not transact with a defendant. *Gypsum* controls this case.

T-Mobile implicitly concedes this by spending the first eight pages of its substantive argument invoking Second and Eleventh Circuit cases and

---

[1] *Ahrenholz v. Bd. of Trs.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis omitted).

[2] Dkt. 114 at 24 (citing *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623 (7th Cir. 2003)).

mischaracterizing Supreme Court decisions.[3]  When T-Mobile addresses this Circuit's cases, it then mischaracterizes *Gypsum* as a cartel case.[4]  And *Gypsum*, no outlier, follows from the Seventh Circuit's prior decisions in *Loeb Industries, Inc. v. Sumitomo Corp.*[5] and *Sanner v. Board of Trade*.[6]  Both held that a plaintiff who does not transact with a defendant can nevertheless plead and prove proximate cause and standing.  *Gypsum* also accords with the majority position of the Third and Fifth Circuits and the Areeda treatise.

Undaunted, T-Mobile tries to re-write the federal pleading standards. T-Mobile concedes that the merger might "*possibl[y]*" have "led to a reduction in competition that, in turn, prompted AT&T and Verizon to decide to raise their prices," but claims it is "*more plausible*" that prices went up only due to extraneous forces.[7]  But this argument violates the rule against judging the relative probability of the parties' different factual

---

[3] Pet. at 13-21.

[4] *Id.* at 21 ("in a cartel case like *Gypsum*").

[5] 306 F.3d 469, 484 (7th Cir. 2002).

[6] 62 F.3d 918, 927-30 (7th Cir. 1995).

[7] Pet. at 23-24 (second emphasis added).

contentions at the pleadings stage.[8]  The complaint here pleads voluminous,

detailed facts supporting an inference that the merger reduced competition

and harmed consumers.  These facts include direct statements by executives,

increased quality-adjusted prices, decreased customer churn, and less

frequent plan offerings.  Furthermore, these allegations fit the standard

model of merger analysis, which recognizes that greater market

concentration can reduce competition and lead to coordinated pricing.

Last, T-Mobile argues that recognizing the antitrust standing of

Verizon and AT&T customers will incentivize rivals of a merged company

to raise prices *for the sole purpose of generating lawsuits against the merger*.[9]

How ironic.  T-Mobile argues on the one hand that it is *implausible* that

companies would raise prices due to market consolidation.  But it then

contends those same companies would raise prices, and risk losing market

share and billions of dollars in revenue (in a supposedly competitive

market), in hopes that their customers might sue T-Mobile.  Putting it mildly,

---

[8] *Hughes v. Nw. Univ.*, 63 F.4th 615, 630 (7th Cir. 2023).

[9] Pet. at 26-27.

T-Mobile espouses a different understanding of plausibility than the federal courts.

Neither of these arguments, nor the fact that this antitrust lawsuit—as many do—potentially seeks billions of dollars in damages, makes the antitrust standing question here contestable. *Gypsum* dooms T-Mobile's appeal, and this Court need not grant interlocutory appeal merely to confirm *Gypsum*'s continued vitality. The Petition should therefore be denied.

## STATEMENT OF THE CASE

The challenged merger fundamentally changed the structure of the retail wireless market. Before the merger, the smaller, newer T-Mobile and Sprint competed fiercely with each other and with the larger, more entrenched AT&T and Verizon. Their efforts to build share and scale up their businesses resulted in frequent price decreases and plan improvements by all four firms.[10]

---

[10] Compl., Ex. A ¶¶35-40.



But this state of affairs did not suit the long-term interests of T-Mobile parent Deutsche Telekom AG ("DT"). As early as 2010, DT considered combining T-Mobile with Sprint to realize a "4-to-3" merger that, in DT's words, would "reduce price competition."[11] By 2017, T-Mobile CEO Legere told DT executives that the "regulatory environment will never be better than now" for a "four-to-three" merger, adding that "[b]ig prizes" were in store, "[s]o smile and get to the table."[12] Sprint executives also anticipated big prizes from the merger: one of them hypothesized that by 2022 the entire industry could see profit increases of $5 in average revenue per user,

---

[11] *Id.* ¶42.

[12] *Id.* ¶43.

*including Verizon and AT&T customers*: "the most interesting thing is that this value, assuming the same market share for all, is exactly the same for AT&T and VZ, that is, it will also end up accommodating plus $5 ARPU in a three-player scenario."[13]

The deal was announced on April 29, 2018. Experts, consumer groups, news media, and members of Congress criticized the merger, predicting that it would bring an end to the fierce competition that had benefited consumers.[14] Fourteen states and D.C. went to trial to block the merger. They alleged "[t]he cumulative effect of this merger . . . will be to decrease competition in the retail mobile wireless telecommunications services market and increase prices that consumers pay."[15]

The court that tried the merger challenge found that the merger, because of the resulting level of concentration in an already concentrated

---

[13] *Id.* ¶44.

[14] *Id.* ¶¶46-48.

[15] *Id.* ¶67.

market, would presumptively violate the antitrust laws.[16]  Nevertheless, it

approved it, relying principally on the promises of T-Mobile executives.[17]

While the court ultimately found in favor of T-Mobile, it expressed

considerable uncertainty with the ultimate market effects of the merger

because "[d]eciding such cases typically calls for a judicial reading of the

future."[18]

Deutsche Telekom had no such uncertainty.  After the merger, DT CEO

Höttges bragged, "It's harvest time."[19]  The "harvest" unfolded as the states

predicted:  Bureau of Labor Statistics data shows that, after decades of

decline, quality-adjusted prices flat-lined and then markedly increased

immediately after the merger.[20]

---

[16] *Id.* ¶51.

[17] *Id.* ¶68.

[18] *Id.*

[19] *Id*. ¶86.

[20] *Id.* ¶80.



Furthermore, while T-Mobile purportedly committed to hold nominal prices steady, it increased its support fee for activation and upgrades three times between April 2021 and June 2022, from $20 to $35.[21]  It also started including taxes and fees for Magenta and Magenta MAX customers for added or upgraded services in February 2022.[22]  Verizon and AT&T followed

---

[21] *Id.* ¶105.

[22] *Id.* ¶104.

T-Mobile.[23]  AT&T, for example, announced in May 2022 that it would raise rates on older wireless plans by $6 per month for single-line users and as much as $12 per month for customers with multiple lines.[24]  Verizon announced in June 2022 that it would raise its administrative fee for postpaid customers by $1.35 per voice line per month.[25]

The reduction in competition can also be seen in the sharp decline in the introduction of new plans, an important method of competition among the carriers.[26]



[23] *Id.* ¶¶106-08.

[24] *Id.* ¶107.

[25] *Id.* ¶108.

[26] *Id.* ¶¶84-85.

Commitments have not been met. The merger obtained regulatory approval explicitly on the promise that DISH Network would, given divestitures and access to T-Mobile's CDMA network, fill Sprint's shoes as an independent fourth wireless carrier with its own network.[27] But DISH has not been an aggressive competitor "from day one"; it continues to be principally a "virtual" network operator reliant on resale access to the networks of other carriers.[28] It has also lost nearly a million and a half net subscribers.[29] Relatedly, the California Public Utilities Commission *sanctioned* T-Mobile for "false statements, omissions and/or misleading assurances and the related time references [that] were intended to induce the Commission to approve the merger."[30] But neither ex-post regulator

---

[27] *Id.* ¶¶64, 71.

[28] *Id.* ¶¶71, 90-94.

[29] *Id.* ¶¶90-94.

[30] *Id.* ¶¶98-101; *see also* Decision Finding that T-Mobile USA, Inc. Should Be Sanctioned by the Commission for Violating Rule 1.1 of the Commission's Rules of Practice and Procedure at 13-17, Nos. 18-07-011, 18-07-012, (Cal. Pub. Util. Comm'n Apr. 25, 2022), https://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M398/K955/398955746.PDF.

sanctions nor monitoring can provide monetary redress for wireless customers, or any structural or divesture remedies.

On November 2, 2023, the district court denied defendants' motion to dismiss on standing.[31] It held that "*Gypsum* makes clear that the fact that Plaintiffs did not transact directly with the Merging Entities is not automatically a basis for dismissal."[32] The court found: "Plaintiffs allege *how* the merger reduced competition in the retail mobile wireless market and as a result, market participants AT&T and Verizon charged higher prices than they would have otherwise."[33]

## ARGUMENT

### I.    This Question Has Been Settled in the Seventh Circuit.

T-Mobile's Petition should first be denied because the Seventh Circuit has already addressed the exact issue T-Mobile contests—whether plaintiffs

---

[31] Dkt. 114.

[32] *Id.* at 25.

[33] *Id.* at 25-26.

can plead antitrust standing if they are not customers of defendants. The district court did not "br[ea]k[] with [] precedent"[34]; it followed it:

> **[T]he idea that Plaintiffs cannot satisfy the requisite causal link because they are not customers of the Merging Entities runs headlong into the Seventh Circuit's decision in *Gypsum*.** In *Gypsum*, the plaintiff and the defendant joint-venture both bought transport services from interstate pipelines. The plaintiff alleged that the defendant used its control of a substantial fraction of the transport capacity to monopolize and enabled the pipelines to charge more to the plaintiff. **The Seventh Circuit held that the plaintiff adequately alleged antitrust injury at the pleading stage even though it was not a customer of the joint venture**, and that *Illinois Brick* did not preclude its claims. . . . The Court explained "that **the buyers from fringe firms suffer antitrust injury, that their complaints cannot be dismissed at the outset** under the *Illinois Brick* doctrine, and that the potential to establish injury through **elevation of price in the affected market satisfies any distinct 'antitrust standing' requirement.**"[35]

*Gypsum*'s holding is "binding on another [Seventh Circuit] panel unless overruled with the approval of the en banc court."[36]

---

[34] Pet. at 1.

[35] Dkt. 114 at 24-25 (emphasis added; citations omitted).

[36] *In re Skupniewitz*, 73 F.3d 702, 705 (7th Cir. 1996).

T-Mobile first describes *Gypsum* as "a cartel case."[37]  It was not.  In *Gypsum*, "two utilities that supply natural gas . . . formed a *joint venture* (called ProLiance Energy)" and plaintiff "contend[ed] that ProLiance [wa]s an *unlawful combination*" in violation of Sections 1 and 2 of the Sherman Act.[38]  The Seventh Circuit *analogized* to cartels to explain antitrust standing for plaintiffs who did not buy from defendants.[39]

T-Mobile next asserts that *Gypsum*'s discussion of antitrust standing "is dicta" and that this Court declined to resolve the "[p]otentially difficult" issues it claims *Loeb* left open.[40]  But given that *Gypsum* reversed dismissal based on standing, this discussion forms the core of its holding.  And this argument merely highlights that T-Mobile's argument requires this Court to ignore two more Seventh Circuit decisions in which the Seventh Circuit found antitrust standing for buyers from non-defendants:  *Sanner* and *Loeb*.

---

[37] Pet. at 21.

[38] *Gypsum*, 350 F.3d at 625 (emphasis added).

[39] *Id*. at 627.

[40] Pet. at 22.

In *Sanner,* this Court held that plaintiff soybean farmers—sellers in the cash market—had antitrust standing to pursue claims against defendants that manipulated the soybean *futures* market.[41] The *Sanner* defendants made the same arguments as T-Mobile—that the causal chain linking the futures market to the cash market was too attenuated to attribute plaintiffs' harm to defendants' conduct.[42] The Seventh Circuit disagreed. "The reason for this is obvious: . . . . The futures market and cash market for soybeans are . . . 'so closely related' that the distinction between them is of no consequence to antitrust standing analysis."[43]

Similarly, in *Loeb*—cited with approval by the Supreme Court in *Apple Inc. v. Pepper*[44]—the plaintiffs alleged "a conspiracy to rig prices for the entire physical [copper] market, accomplished through manipulation of the Comex [copper] futures market."[45] Because non-party dealers in the physical

---

[41] 62 F.3d at 927-30.

[42] *Id.* at 925.

[43] *Id.* at 929 (citation omitted).

[44] 139 S. Ct. 1514, 1521 (2019) (citing *Loeb*, 306 F.3d at 481-82).

[45] *Loeb*, 306 F.3d at 483 n.4.

market based their prices on the Comex price for copper futures, the court found that "defendants' manipulations [in the futures market] directly and predictably had an impact on [the physical copper] price" plaintiffs paid even though they lacked privity with and transacted in *an entirely separate market* than defendants.[46] The court considered and dismissed the same argument T-Mobile advances here; it held that the antitrust standing jurisprudence "does not stand for the proposition, as the defendants would seem to have it, that a defendant cannot be sued under the antitrust laws by any plaintiff to whom it does not sell (or from whom it does not purchase)."[47]

The *Loeb* panel explained that the same rule would hold beyond price fixing, such as where a company stood accused of "rigging product standards, which affects everyone who tries to participate in a particular product market."[48] "In the latter case," the court observed that "defendants who manipulated the standards cannot be heard to complain that they

---

[46] *Id.* at 489.

[47] *Id.* at 481.

[48] *Id.* at 483 n.4.

should be immune from damages for a product they did not sell."[49]  The

same logic applies to any conduct that changes the market structure in

anticompetitive ways—such as this merger.

## II.    <u>Market Participants Have Standing.</u>

Rather than grapple with these cases, T-Mobile claims that they

conflict with Supreme Court authority supposedly holding (1) that "direct"

injury requires a plaintiff to transact with the defendant, and (2) that

plaintiffs who do not suffer "direct" injury lack standing.[50]  T-Mobile is

wrong.

### A.    <u>The Clayton Act Broadly Protects Consumers.</u>

Section 4 of the Clayton Act provides a broad right of action for

antitrust injuries:  "any person who shall be injured in his business or

property by reason of anything forbidden in antitrust laws may sue

therefore."[51]  Plaintiffs here claim to have paid an overcharge in the very

market restrained by the violation, and the Supreme Court has been

---

[49] *Id.*

[50] Pet. at 14.

[51] 15 U.S.C. § 15(a).

resolute in protecting the claims of such plaintiffs.  In *Reiter v. Sonotone Corp.*, the Court stated that  "where petitioner alleges a wrongful deprivation of her money because the price of the [product] she bought was artificially inflated by reason of respondents' anticompetitive conduct, she has alleged an injury in her 'property' under § 4."[52]  The Court drove the point home four years later in *Associated General Contractors of California, Inc. v. California State Council of Carpenters:*  "our prior cases have emphasized the central interest in protecting the economic freedom of participants in the relevant market."[53]  Unsurprisingly, therefore "'consumer[s] [and] competitor[s] in the market in which trade was restrained,'" i.e., market participants, "generally have antitrust standing."[54]

The Supreme Court more closely scrutinizes claims of those who do not participate in the restrained market.  For example, a consumer who

---

[52] 442 U.S. 330, 342 (1979).

[53] 459 U.S. 519, 538 (1983) ("*AGC*").

[54] *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 814 (N.D. Ill. 2017) (quoting *AGC*, 459 U.S. at 539); *see also Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 482 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 2877 (2021).

buys from an "innocent intermediary" that re-sells a price-fixed product does not have a claim.  The indirect buyer might very well have been injured; but the indirect nature of the injury makes that buyer less well-positioned as an enforcer of the antitrust laws than the direct purchaser.[55] Similarly, in *AGC*, the Court rejected claims by a labor union whose *members* might have been injured by an antitrust violation.[56]  The Court cited "a creditor []or stockholder of a corporation . . . injured by a violation of the antitrust laws," as additional examples of claims going beyond the "first step" of harm to a market participant.[57]  But it did *not* identify purchasers in the restrained market as an excluded class of potential plaintiffs—and never has.

## B. *Lexmark* **and** *McCready* **Confirm the Correctness of** *Gypsum.*

The Supreme Court more recently elaborated the line demarcating the "first step" in cases interpreting the Lanham Act and RICO, using *AGC*

---

[55] *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746-47 (1977).

[56] *AGC*, 459 U.S. at 533.

[57] *Id.* at 533-34 (citation omitted) (citing *Loeb v. Eastman Kodak Co.*, 183 F.3d 704 (3d Cir. 1910)).

as a starting point for the analysis. For instance, in *Lexmark International, Inc. v. Static Control Components, Inc.*,[58] the plaintiff supplied inputs to a remanufacturer of printer cartridges, which competed with brand manufacturer, Lexmark. The plaintiff complained that Lexmark's false advertising had damaged the remanufacturer, and by extension itself, as the supplier. The Court identified this "causal chain" as "not direct" because it included the "intervening link of injury to the remanufacturers."[59] Thus, the complaint "might not support standing under a strict application of the general tendency not to stretch proximate causation beyond the first step."[60] Tellingly, though, the Court in *Lexmark* nevertheless held that the indirect plaintiff *did* have a claim, driving home the principle that limiting damages to the "first step" is at most a "tendency," rather than the absolute rule advanced by T-Mobile.

---

[58] 572 U.S. 118 (2014).

[59] *Id.* at 139.

[60] *Id.* (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 271 (1992)) (interpreting RICO based on AGC) (cleaned up).

In that regard, *Lexmark* agrees with *Blue Shield of Virginia v. McCready*, another antitrust standing decision.[61]  In *McCready*, the Supreme Court held that an employee had standing to bring claims against the health insurer with which her employer had contracted to provide her benefits, even though she never transacted with the insurer herself.[62]

The Supreme Court jurisprudence on antitrust standing, settled for over forty years, thus makes three things clear.  First, as consumers in the restrained market, plaintiffs here have alleged a direct injury, not derivative of any other market participant's.  Second, even if their claims did lay beyond the "first step"—and they do not—the district court could not therefore have dismissed their claims on that basis alone; even plaintiffs beyond the "first step" can sometimes still demonstrate proximate cause and antitrust standing.  Third, *Gypsum*, *Loeb*, and *Sanner* did not spring forth fully grown from the Seventh Circuit's brow:  they simply followed (and, in the case of *Lexmark*, prefigured) Supreme Court

_____

[61] 457 U.S. 465 (1982).

[62] *Id.* at 472.

authority recognizing that a plaintiff need not be in privity with the defendant to state a claim, if that plaintiff participates in a market in which competition has been affected by the violation. The other Supreme Court cases on which T-Mobile relies stand only for the general proposition that standing depends on proximate cause.[63]

### C.   The Seventh Circuit Follows the Majority Approach.

The Second Circuit cases cited by T-Mobile do not state the dominant approach, let alone the law of the Seventh Circuit. The Seventh Circuit accords with the Fifth Circuit, which held in *In re Beef Industries Antitrust Litigation*[64] that plaintiffs alleging a buyer-side cartel who sold to non-defendants had antitrust standing; plaintiffs alleged "the conspirators' activities caused a general depression in wholesale prices" across the entire market.[65] The Third Circuit in *In re Lower Lake Erie Iron Ore Antitrust*

---

[63] Pet. at 14-16 (citing *AGC*, 459 U.S. at 535-37; *Holmes*, 503 U.S. 258; *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 344-45 (2005)).

[64] 600 F.2d 1148 (5th Cir. 1979).

[65] *Id.* at 1153, 1166 n.24.

*Litigation*,[66] similarly held that plaintiffs who transacted with non-defendant suppliers had antitrust standing because defendants' conduct—delaying adoption of more efficient technology—increased market-wide prices. [67] Courts in the Ninth Circuit likewise recognize that market participants who did not transact with the defendants can have antitrust standing.[68] Similarly, the Areeda treatise explains that "purchasers from [] innocent suppliers [may] pay a monopoly overcharge just as certainly as if they had bought from the conspirators." [69] These purchasers' antitrust "injury can be

---

[66] 998 F.2d 1144 (3d Cir. 1993).

[67] *Id.* at 1167-70; *accord In re Modafinil Antitrust Litig.*, 837 F.3d 238, 264-65 (3d Cir. 2016) (rejecting argument that "customer of a non-defendant cannot have antitrust standing" because "all market customers should have antitrust standing to sue those engaged in the allegedly anticompetitive conduct"). *Modafinil* and *Lower Lake Erie* reflect current Third Circuit law in non-cartel cases, as opposed to *Mid-West Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573 (3d Cir. 1979), which pre-dated *AGC* and was limited to cartels.

[68] *See, e.g.*, *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 11-cv-05514, 2016 WL 6246736, at *6 (N.D. Cal. Oct. 26, 2016); *In re Ariz. Dairy Prods. Litig.*, 627 F. Supp. 233, 236 (D. Ariz. 1985); *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 530 F. Supp. 36, 38-39 (W.D. Wash. 1981). *In re Coordinated Pretrial Procedure in Petroleum Products Antitrust Litigation*, 691 F.2d 1335 (9th Cir. 1982), which T-Mobile abandons on appeal, involved a multi-level distribution chain where plaintiffs were not the first buyers.

[69] Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 347 (5th ed. Supp. 2022).

compensated only by allowing them to sue the conspirators."[70]  Areeda characterizes cases such as *Antoine Garabet, M.D. Inc. v. Autonomous Technologies Corp.*,[71] cited by T-Mobile below, as decided "incorrectly."[72]

T-Mobile principally relies on *In re American Express Anti-Steering Rules Antitrust Litigation*, in which the Second Circuit denied standing to plaintiff merchants that did not transact with defendant American Express.[73]  However, the Second Circuit itself acknowledged in *Gelboim v. Bank of America Corp.* that the holding of *Gypsum* would result in a different outcome.[74]  Even then, *Amex* and *Gelboim* both explicitly declined to establish a categorical rule on whether customers of non-defendants may

---

[70] *Id.*

[71] 116 F. Supp. 2d 1159, 1167 (C.D. Cal. 2000).

[72] Areeda & Hovenkamp ¶ 347 (discussing *Garabet*).

[73] 19 F.4th 127, 140-41 (2d Cir. 2021) ("*Amex*").

[74] 823 F.3d 759, 778-79 (2d Cir. 2016) ("The antitrust standing of umbrella purchasers . . . has produced a split in authority among our sister circuits.").

ever satisfy antitrust standing,[75] as did T-Mobile's Eleventh Circuit

authority.[76]

Thus, courts in the Third, Fifth, and Ninth Circuits—like the Seventh—

have, like *Blue Shield v. McCready*, permitted antitrust standing where

plaintiffs did not transact with defendants, as opposed to the outcomes in

the Second and Eleventh Circuits.    And T-Mobile's Supreme Court

authorities concerning a failure to show an antitrust injury are entirely

irrelevant to proximate cause.[77]   The plaintiffs here are not, as in *ARCO*,

competitors alleging that prices are too low[78]—the plaintiffs here allege they

paid too much for a product in the restrained market, the classic "antitrust

injury."

---

[75] *Amex*, 19 F.4th at 139.

[76] *Austin v. Blue Cross & Blue Shield of Ala.*, 903 F.2d 1385 (11th Cir. 1990).

[77] *Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 335 (1990) ("*ARCO*"); *Cargill v. Monfort of Colo., Inc.*, 479 U.S. 104, 113 (1986); *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562 (1981).

[78] *See ARCO*, 495 U.S. at 339 n.8 (discussing *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477 (1977), and *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986)); Pet. at 17 (citing *ARCO*, 495 U.S. at 339 n.8).

## III. **T-Mobile Cannot Conjure a Contestable Question out of *Twombly.*

Deep down, T-Mobile knows it cannot, particularly in the Seventh Circuit, establish that plaintiffs lack standing as a matter of law. Hence, T-Mobile alternatively makes three arguments under *Twombly*: 1) that plaintiffs have not "plausibly" pled proximate causation, 2) that *Gypsum* is no longer good law after *Twombly*, and 3) that the likelihood of significant discovery warrants review.[79] None justifies an interlocutory appeal.

### A. **The Application of *Twombly* Is Not Contestable.**

Whether or not the Complaint satisfies *Twombly* does not qualify as a contestable legal question. The Seventh Circuit already did the work of elaborating on *Twombly* in 2010, in *In re Text Messaging Antitrust Litigation*, wherein it explained that the complaint need only "establish a nonnegligible probability that the claim is valid."[80] In another decision that same year, the Seventh Circuit explained a court may not do as T-Mobile urges and "stack up inferences side by side and allow the case to go forward only if the

---

[79] Pet. at 22-25.
[80] 630 F.3d 622, 629 (7th Cir. 2010).

plaintiff's inferences seem more compelling than [T-Mobile's] inferences."[81] Thirteen years later, *Twombly* now falls into the category of "routine applications of well-settled legal standards," not contestable questions of law.[82] T-Mobile's argument should be rejected on that basis alone.

### B. <u>The Complaint Pleads Copious Facts, Not Assumptions.</u>

But T-Mobile also manifestly fails to show that the complaint does not satisfy *Twombly*. T-Mobile claims that "Plaintiffs' theory depends on the untenable *assumption* that mergers proximately cause every subsequent price increase by every participant in the relevant market."[83] The complaint relies on no such "assumption." The court below noted that Plaintiffs submitted an "extraordinarily detailed complaint,"[84] that explained "*how* the merger reduced competition in the retail mobile wireless market and as a result, market participants AT&T and Verizon charged higher prices than

---

[81] *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

[82] *See In re Text Messaging*, 630 F.3d at 626; *Lukis v. Whitepages Inc.*, 542 F. Supp. 3d 831, 845 (N.D. Ill. 2020) ("The scope and application of *Twombly's* plausibility standard is now settled . . . .").

[83] Pet. at 16 (emphasis added).

[84] Dkt. 110 at 37:7-8.

they would have otherwise."[85]  Specifically, the complaint alleged non-conclusory facts about (1) pre-merger market conditions, (2) T-Mobile's and Sprint's roles as "mavericks," (3) the aggressive competition existing pre-merger, including the financial viability of Sprint to continue as a competitor, (4) the decreased incentives to compete that would result after T-Mobile merged with Sprint, (5) the high barriers to entry in the market, (6) DISH's failure to emerge as a legitimate fourth competitor, (7) that T-Mobile, Verizon, and AT&T began slowing their competitive efforts following the merger, and (8) a stark upward departure from the trend of decreasing quality-adjusted pricing that occurred just a few months after the merger.[86]

And these facts align with the standard model holding that mergers in concentrated markets can lead to reduced competition and increased prices via "coordinated effects," meaning the effect on rivals' incentives.  The 2023 Merger Guidelines explain that "a merger may substantially lessen competition when it meaningfully increases the risk of coordination among

---

[85] Dkt. 114 at 25-26.

[86] *Id.*

the remaining firms in a relevant market or makes existing coordination more stable or effective."[87]  Accordingly, for example, in *United States v. H&R Block, Inc.*, the District Court for the District of Columbia enjoined a merger because there would "not [be] the *same incentives*" post-merger to "develop robust free and low-cost offerings *that can compete with*" rivals.[88]

The pre-merger challenge to this very transaction addressed the merger's "likely effect on competition in the [national mobile wireless telecommunications services] Market"—not just T-Mobile's customers.[89] The court heard and considered evidence that the "three remaining [wireless carriers] would effectively agree, whether explicitly or merely through mutual awareness, that competing less strenuously and thus delivering fewer consumer benefits would be in their collective interests ('coordinated

---

[87] DOJ & FTC, Merger Guidelines 8 (Dec. 18, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/P234000-NEW-MERGER-GUIDELINES.pdf.

[88] 833 F. Supp. 2d 36, 85 (D.D.C. 2011) (emphases added); *see also FTC v. PPG Indus., Inc.*, 798 F.2d 1500, 1503 (D.C. Cir. 1986) (explaining coordinated effects analysis).

[89] *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 198 (S.D.N.Y. 2020).

effects' of the merger)."[90]  According to the states' expert in the trial, the predicted market-wide harm amounted to *$8.7 billion per year* for customers of the three carriers.[91]  And where a defendant's conduct alters the competitive incentives of its rivals in a way that causes the rivals' sales to occur at artificially inflated prices, the defendant can properly be held liable for those damages.[92]

The district court here correctly rejected T-Mobile's arguments that it is "more plausible" that AT&T and Verizon raised prices in response to inflation, COVID, or other factors unrelated to the merger.[93]  It held that "[a] court's role in evaluating pleadings is to decide whether the plaintiff's

---

[90] *Id.* at 233-34.

[91] *Id.* at 235.

[92] *E.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 212-13 (S.D.N.Y. 2018) (non-defendant customers' "injuries are the direct result of the asserted antitrust violation" which "restricted and manipulated generic competition"); *Castro v. Sanofi Pasteur Inc.*, No. 11-7178, 2012 WL 12516572, at *4 (D.N.J. Aug. 6, 2012) (defendant's "conduct removed price cutting as an effective competitive response for [its rival, such that rival's] price was higher than it otherwise would have been as well"); *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820, 849-50 (D.N.J. 2015) (certifying damages class for sales of defendant's *and* rival's products).

[93] Pet. at 23-24.

allegations are plausible—not which side's version is more probable."[94]  The court also correctly rejected T-Mobile's attempt to use judicial and regulatory approval of the merger as a bar to plaintiffs' claims, observing that "this case does not focus on the wisdom of the merger, but rather its consequences."[95]  And, T-Mobile's self-serving portrait of the regulatory landscape cannot be accepted as true at the pleadings stage, and ignores important facts—such as the regulators' sanction order for failing to keep the promises it made to get the merger approved.[96]

## C.    <u>T-Mobile's Other Arguments Lack Merit.</u>

T-Mobile suggests that *Gypsum* is no longer good law following *Twombly*.[97]  But *Twombly* clarified the pleading standard, not the standard for "antitrust standing," which just represents "the requirements [of] bring[ing] a case under the particular statutes involved."[98]  However *Twombly* would

---

[94] Dkt. 114 at 27 (quoting *Hughes*, 63 F.4th at 630).

[95] *Id.* at 4-5.

[96] Sanctions Decision, *supra* note 30.

[97] Pet. at 22-26.

[98] *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 743 (7th Cir. 2018).

have been applied to the complaint in *Gypsum*, the principle holds—that plaintiffs who do not transact with defendants *can* have antitrust standing (consistent with *Sanner* and *Loeb*).  And T-Mobile's cases rejecting antitrust standing did not rely on an altered post-*Twombly* pleading landscape.[99]

T-Mobile argues that interlocutory review of *Twombly's* application is appropriate because "[p]ermitting Plaintiffs' claims to survive a motion to dismiss would clear the path to onerous discovery."  But that argument is untethered from the standard for 1292(b) and, indeed, the pleading standards themselves.[100]  Acceptance of that argument would suggest every defendant facing any significant discovery should be permitted an interlocutory appeal.  There are many important interlocutory decisions in antitrust cases that may lead to onerous discovery, significant damages, or market-wide structural relief.  The Seventh Circuit cannot possibly review them all, and it certainly should not review this one.

---

[99] *See Schwab Short-Term Bond Mkt. v. Lloyds Banking Grp. PLC*, 22 F.4th 103 (2d Cir. 2021); *Amex*, 19 F.4th 127.

[100] Pet. at 25.

## CONCLUSION

Plaintiffs respectfully ask this Court to deny T-Mobile's Petition for interlocutory appeal.

Dated:  April 18, 2024

*/s/ Brendan P. Glackin*

Brendan P. Glackin
Lin Y. Chan
Nicholas W. Lee
Sarah D. Zandi
Jules A. Ross
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Phone: (415) 956-1000
bglackin@lchb.com
lchan@lchb.com
nlee@lchb.com
szandi@lchb.com
jross@lchb.com


Gary I. Smith Jr.
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (267) 702-2318
gsmith@hausfeld.com

Swathi Bojedla
Hill Brakefield
**HAUSFELD LLP**
888 16th Street N.W., Suite 300
Washington, D.C. 20006
Phone: (202) 540-7200
sbojedla@hausfeld.com
hbrakefield@hausfeld.com


Eric L. Cramer
Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (415) 215-0962
Phone: (215)-875-5801
ecramer@bm.net
jgradwohl@bm.net


Robert Litan
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW,
Suite 300
Washington, D.C. 20006
Phone: (202) 559-9745
rlitan@bm.net

Joshua P. Davis

Kyla Gibboney

Julie Pollock

**BERGER MONTAGUE PC**

505 Montgomery Street, Suite 625

San Francisco, CA 94111

Phone: (415) 689-9292

jdavis@bm.net

kgibboney@bm.net

jpollock@bm.net

*Interim Co-Lead Class Counsel for Plaintiffs and the Proposed Class*


Kenneth N. Flaxman

ARDC No. 830399

Joel Flaxman

ARDC No. 6292818

**LAW OFFICES OF KENNETH N. FLAXMAN P.C.**

200 S Michigan Ave., Suite 201

Chicago, IL 60604

Phone: (312) 427-3200

jaf@kenlaw.com

knf@kenlaw.com

*Interim Liaison Counsel for Plaintiffs and the Proposed Class*

# CERTIFICATE OF COMPLIANCE

This answer complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1), because it contains 5,192 words, as determined by Microsoft Word 2010, including the headings and footnotes and excluding the parts exempted by Federal Rule of Appellate 32(f). The answer also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)(a) and (a)(6) because the text appears in 14-point Palatino Linotype, a proportionally spaced serif typeface.

*/s/  Brendan P. Glackin*

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Brendan P. Glackin*